# Exhibit 8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL TREASURY
EMPLOYEES UNION, *et al.*,

        *Plaintiffs,*

    v.

RUSSELL VOUGHT, in his official capacity as
Acting Director of the Consumer Financial
Protection Bureau, *et al.*,

    *Defendants.*

Case No. 25-cv-381-ABJ

## DECLARATION OF SENATOR RICHARD BLUMENTHAL

I, Richard Blumenthal, declare as follows:

1.     I am the Senior United States Senator from Connecticut and have personal knowledge of the following.

2.     Among the core work my office does for the people of Connecticut is "constituent services"—assistance provided to the people of Connecticut who contact my office seeking help on a variety of issues.

3.     Financial products, credit reporting, and debt collection problems are among the frequent issues raised by constituents with my office. For example, constituents contact my office when they are facing foreclosure and when inaccurate information on their credit reports impedes their ability to obtain a loan.

4.     Members of my staff are assigned to cover these types of requests for assistance.

5.     My office receives requests of this nature on a regular basis.

6.     My staff frequently utilizes the Consumer Financial Protection Bureau's ("CFPB" or the "Bureau") "consumer response" operation to assist in handling constituent requests related to financial products, credit reporting, and debt collection.

7.      The CFPB has set up an online portal for members of Congress to use. When my office receives a constituent complaint that is within the CFPB's jurisdiction, members of my staff upload the request onto this portal, and the Bureau assigns a case number to the complaint and a case worker who processes the request for assistance.

8.      The Bureau contacts the relevant company about the constituent complaint, and my office usually receives a response within 30 days, which we pass on to the constituent.

9.      Approximately 50 percent of the time, my constituents consider the resolution of the complaint obtained by the Bureau to be favorable.  (In most of the cases where they are not satisfied, my office continues to help the constituents through other means.)

10.     It has been my office's experience that companies such as credit reporting agencies and banks tend to be highly responsive to the Bureau in resolving problems experienced by my constituents, and the Bureau's system for reaching these entities is streamlined and quick.

11.     This Bureau-run process is highly efficient and effective for my constituents, and also saves my staff time, which they can spend on other services my office provides for the people of Connecticut.

12.     Without the Bureau's centralized reporting portal and the CFPB's enforcement authority, my staff would have to follow up with each entity individually and separately attempt to resolve each constituent complaint through persuasion and other means.

13.     If the Bureau is no longer able to process complaints submitted by my office, both my constituents and my staff will be detrimentally impacted.

14.     In my experience, my constituents see fast and effective results with complaints that my office is able to submit to the Bureau due to the Bureau's subject matter expertise and enforcement authority.

15.     In addition to risking the loss of fast and positive outcomes for my constituents, the elimination of the Bureau's "consumer response" system will detrimentally impact my office by requiring staff who handle constituent complaints to spend more time on complaints that were previously submitted to the Bureau.  This will leave less time for each staff member to spend on other responsibilities, including but not limited to other constituent services.

16.     The shutdown of the Private Education Loan Ombudsman's office would affect my office and my constituents in the same way.

17.     Staff members assigned to constituent requests concerning education loans also regularly receive such requests.  While the number of requests may vary, it is not uncommon for my office to receive half a dozen requests concerning education loans each month.

18.     My office forwards these requests to the Ombudsman's office, who then handles the interaction with the lender.

19.     As with the "consumer response" operations, the Bureau, because of the systems it has set up, is often able to provide fast results for my constituents.

20.     As with the "consumer response" operations, my constituents are often satisfied with the resolution that comes through the Bureau's system (and, again, my office continues to provide assistance if they are not).

21.     As with the Bureau's "consumer response" operations, if the Ombudsman's office remains shuttered, that will detrimentally impact my constituents and my staff.

22. In addition to risking poorer outcomes for my constituents, the loss of the Bureau's ombudsman's office will detrimentally impact my office by requiring staff who handle constituent complaints to spend more time on complaints that were previously submitted to the Bureau. This will leave less time for each staff member to spend on other responsibilities, including but not limited to other constituent services.

23. The closure of the Bureau, in short, will immediately impact the people of Connecticut for the worse, to say nothing of the long-term serious consequences that it would have by leaving unregulated the entities that have had to return billions of dollars wrongfully taken from consumers.


I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed in Washington, DC
February 13, 2025

Senator Richard Blumenthal