**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

NATIONAL TREASURY
EMPLOYEES UNION, *et al.*
    *Plaintiffs*,

       v.                                              Civil Action No. 25-cv-381-ABJ

RUSSELL VOUGHT, in his official capacity
as Acting Director of the Consumer
Financial Protection Bureau, *et al.*
    *Defendants*.

**AMICUS BRIEF OF TZEDEK DC IN SUPPORT OF
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with all the applicable requirements of LCvR 7(o), including all formatting requirements set forth in these rules. Specifically, the undersigned certifies that:

**The brief complies with the applicable page limit set forth in LCvR 7(o).**

It contains 12 pages.

**I acknowledge that my brief may be stricken if it fails to comply with any of the applicable requirements.**

*/s/ Noah Brozinsky*

*Counsel for Amicus Curiae Tzedek DC*

## AMICUS CURAE'S 29(a)(4)(E) STATEMENT

(i) No party's counsel authored this brief, either in whole or in part.

(ii) No party or party's counsel contributed money that was intended to fund preparing or submitting this brief.

(iii) No person other than the amicus curiae, its members, or its counsel contributed money that was intended to fund preparing or submitting this brief.

*/s/ Noah Brozinsky*

*Counsel for Amicus Curiae Tzedek DC*

**TABLE OF CONTENTS**

AMICUS CURIAE'S STATEMENT OF INTEREST ................................................................. 1

ARGUMENT .................................................................................................................................. 2

    I.    The CFPB Bolsters Tzedek DC's Ability to Ensure DC Residents Obtain Legal Protection in Consumer-Related Cases ................................................................... 2

        A.  The CFPB Bolsters Tzedek DC's Ability to Directly Represent Clients ................ 2

        B.  The CFPB's Complaint Database Helps Tzedek DC and the Public Determine Whether Unfair Practices Are Widespread or Outliers ...................................... 4

        C.  The CFPB's Work Strengthens Credit Reporting Outcomes for Tzedek DC's Clients and Client Community ............................................................................. 5

    II.   CFPB Research and Rulemaking Support Tzedek DC Clients ..................................... 7

    III.  CFPB Resources and Materials Support Tzedek DC Clients and Community Members .. 9

        A.  Tzedek DC's Use of CFPB Trainings and Materials Supports the Public Interest. 9

        B.  Without the CFPB's Tailored Materials, Tzedek DC's Ability to Support Underserved Communities Will be Harmed ................................................... 10

        C.  The CFPB Allows Tzedek DC to Offer Information to Residents Ineligible for Tzedek DC Legal Assistance .............................................................................. 10

CONCLUSION ............................................................................................................................ 12

## **TABLE OF AUTHORITIES**

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006)………………..1

## AMICUS CURIAE'S STATEMENT OF INTEREST

Amicus curiae Tzedek DC is a non-profit, 501(c)(3) public interest center headquartered at the University of the District of Columbia David A. Clarke School of Law. Tzedek DC's mission is to safeguard the legal rights and financial health of DC residents with lower incomes dealing with the often-devastating consequences of abusive debt collection practices and other consumer related issues. Tzedek DC's strategic approach combines (i) free, direct services, including legal services for consumer-related issues and financial counseling, including its Medical Debt, Disabilities Community, Returning Citizens, and Economic Exploitation and Fraud Prevention projects; (ii) systemic change through coalition advocacy; and (iii) bilingual community education and outreach on debt collection, identity theft, and credit management, to support low- and moderate-income DC residents. 92% of Tzedek DC's clients are persons of color, over 60% are women, and 23% have a disability. Direct services are generally limited to DC residents with income less than 400% of the federal poverty level.

Tzedek DC submits this brief to highlight how the public interest decisively supports the grant of a preliminary injunction. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). Tzedek DC has a substantial interest in this case because the unconstitutional and illegal closure, work stoppages, and discharges at the Consumer Financial Protection Bureau (CFPB) will result in a negative impact on Tzedek DC's work and clients and the community that we serve, in three main areas. First, the CFPB's work bolsters Tzedek DC's ability to ensure low- and moderate-income DC residents can obtain legal protection in debt-related cases. Second, CFPB research and rulemakings support Tzedek DC clients and the lower and moderate income community Tzedek DC services. Third, CFPB's public-facing resources and materials benefit Tzedek DC clients and the public. The dismantling of the CFPB would end all of this and harm

Tzedek DC, the client community it serves, and the public interest the organization seeks to advance.

## ARGUMENT

### I. The CFPB Bolsters Tzedek DC's Ability to Ensure DC Residents Obtain Legal Protection in Consumer-Related Cases.

#### A. The CFPB Bolsters Tzedek DC's Ability to Directly Represent Clients.

The CFPB's work has assisted Tzedek DC in its direct client representation. Four examples illustrate the point.

First, Tzedek DC has represented multiple clients after Comerica Bank refused to reverse unauthorized charges on their Direct Express cards—cards used by over 3 million people to receive payments for Social Security benefits, veteran pensions, and disability benefits. In one case, an 87-year-old disabled client whose only source of income was Social Security came to Tzedek DC for help disputing charges for alleged online purchases taken out of her Social Security payment. She did not in fact know how to use a computer. Tzedek DC attempted to contact Comerica Bank and was on hold for at least an hour each of the roughly five times they called. To make matters worse, the client relied on a prepaid phone, so each call required the client to spend limited resources. When they could get someone on the line, the agent would sometimes hang up upon learning that an attorney was on the call. After over a month of disputing the fraudulent claims with Comerica, it became too expensive for the client to continue to call on her prepaid phone, so she stopped disputing the final fraudulent charge and assumed liability for the loss. That is why the CFPB—just two months ago—sued Comerica Bank for conduct that includes deliberately disconnecting 24 million customer service calls and mishandling fraud complaints, specifically providing the

support that Tzedek DC was unable to.[1] Work on that case is now halted by the shutdown at issue in this case.

Second, Tzedek DC has represented clients whose former universities withheld their academic transcripts because the clients had outstanding student loans. Tzedek DC was able to point to the CFPB's announcements that this response was an abusive trade practice to argue that the universities should release the transcripts.[2] The universities relented, freeing Tzedek DC's clients from a Catch-22 in which they could not access their transcripts to obtain employment or education because they could not pay off their loan balances, and they could not pay off their loan balances because they could not obtain their transcripts to access employment or education.

Third, another client disputed fraudulent charges on his prepaid card by phone. His dispute was denied days later. Tzedek DC sent a demand letter on his behalf and follow-up seeking a re-investigation but received no response, even though the company was made aware that the identity thief had been criminally charged with stealing his identity. Tzedek DC then assisted this client with submitting a CFPB complaint. One day later, the company sent the client a letter stating that it completed the investigation of his claim, and the money was credited back to his account.

Fourth, a 58-year-old disabled woman whose only income is Social Security contacted what she believed to be a call center for Cash App for assistance with a charge. The call center asked her to use "QuickSupport" to screenshare her phone's screen. In doing so, the individuals

---

[1] Press Release, Consumer Financial Protection Bureau, *CFPB Sues Comerica Bank for Systematically Failing Disabled and Older Americans* (Dec. 6, 2024), https://www.consumerfinance.gov/about-us/newsroom/cfpb-sues-comerica-bank-for-systematically-failing-disabled-and-older-americans/.

[2] Consumer Financial Protection Bureau, *Supervisory Highlights Student Loan Servicing Special Edition* at 8-9 (Sept. 2022), https://files.consumerfinance.gov/f/documents/cfpb_student-loan-servicing-supervisory-highlights-special-edition_report_2022-09.pdf; Consumer Financial Protection Bureau, *Tuition Payment Plans in Higher Education* at 27-28, https://files.consumerfinance.gov/f/documents/cfpb_tuition_payment_plan_report_2023-09.pdf.

3

accessed her account and debit card information. The call center was a scam. In fact, at the time, Cash App did not have a call center. The scammers then used the client's account to send many unauthorized payments to an unknown individual. She immediately contacted her bank and Cash App to report the problem. After having no success resolving the issue with Cash App, Tzedek DC presented the evidence to contacts at her bank to help her receive a refund. Ultimately, based on many similar fact patterns and the CFPB's investigation and enforcement matter, the CFPB ordered Cash App to refund consumers, fix its customer service, and investigate disputes.[3]

### B. The CFPB's Complaint Database Helps Tzedek DC and the Public Determine Whether Unfair Practices Are Widespread or Outliers.

The CFPB's national scope helps Tzedek DC in its direct services client work by providing information that it, as a small, locally focused organization, would likely otherwise not have. The agency's complaint database, which it has helpfully trained Tzedek DC staff to use, has allowed Tzedek DC staff to research whether entities that clients have accused of being bad actors have been accused of similar wrongs before. In one such instance, Tzedek DC discovered that auto dealers had entered numerous consumers into lending agreements with Credit Acceptance Corporation (CAC) on predatory terms after telling those consumers that they could "buy" cars and obtain financing afterward. Tzedek DC relied on that complaint database information to support its client advocacy, leading to CAC agreeing to cancel the client's contract and provide a refund. The CFPB subsequently sued CAC for similar actions.[4]

---

[3] Press, Consumer Financial Protection Bureau, CFPB Orders Operator of Cash App to Pay $175 Million and Fix Its Failures on Fraud (Jan. 16, 2025), https://www.consumerfinance.gov/about-us/newsroom/cfpb-orders-operator-of-cash-app-to-pay-175-million-and-fix-its-failures-on-fraud/.
[4] Consumer Financial Protection Bureau, "CFPB and New York Attorney General Sue Credit Acceptance for Hiding Auto Loan Costs, Setting Borrowers Up to Fail," (Jan. 4, 2023), https://www.consumerfinance.gov/about-us/newsroom/cfpb-and-new-york-attorney-general-sue-credit-acceptance-for-hiding-auto-loan-costs-setting-borrowers-up-to-fail/.

4

### C. The CFPB's Work Strengthens Credit Reporting Outcomes for Tzedek DC's Clients and Client Community.

The CFPB helps Tzedek DC address one of its clients' most significant challenges: the inability to navigate credit reporting. DC residents frequently borrow money on bad terms because they do not understand credit scores, credit reports, or how to dispute inaccurately reported account information. Before engaging with Tzedek DC, DC residents also frequently cannot access their credit reports because they do not know where to look or because consumer reporting agencies ("CRAs") have collected incorrect identifying information about them.

The CFPB helps DC residents locate their credit reports by providing a list of CRAs, including specialty CRAs that provide information for tenant screening, employment screening, and other focused purposes.[5] This allows community members to find and address problems on credit reports that might harm their credit generally or deprive them of something specific like a job or an apartment. It also lets consumers comprehensively search for the improper use of their identities when they fear that they have been victims of identity theft.

Tzedek DC consistently encounters clients who cannot access their credit reports in a timely manner because the CRAs possess incorrect information about them. The CRAs are so often unresponsive to this issue that Tzedek DC regularly refers those clients to the CFPB, which enforces the Fair Credit Reporting Act (FCRA) and investigates improper credit reporting.

Without the CFPB to fill this role, Tzedek DC's clients would often be unable to obtain their credit reports and left unsure of whether they are being offered loans with terms accurately corresponding to their borrowing histories. Indeed, in one case, a client experienced issues accessing credit reports through Equifax and AnnualCreditReport.com, receiving a message with

---

[5] Consumer Financial Protection Bureau, *List of consumer reporting companies*, (last visited Feb. 20, 2025) https://www.consumerfinance.gov/consumer-tools/credit-reports-and-scores/consumer-reporting-companies/companies-list/.

spelling errors, no phone number ("XXX-XXX-XXXX"), and noting hours of operation from "HOOP, DOOP."[6] This error prevented Tzedek DC's client from accessing her free credit report to which she was entitled by law. Tzedek DC was then able to alert the CFPB of this concerning situation for further investigation.[7] As a result of complaints like this one, the CFPB found that "Equifax failed in its basic duty to investigate and resolve consumer disputes about inaccurate information on their credit reports," and ordered Equifax to comply with federal law and pay a penalty to a victims relief fund.[8]

The CFPB ameliorates Tzedek DC's clients' unfamiliarity with the details of credit reporting by publishing easily accessible educational materials that Tzedek DC provides to clients and to the public generally. These materials allow Tzedek DC's client community to understand how credit reporting works and understand how to improve credit scores to ultimately save money when accessing more affordable financial products. This public benefit makes a particular difference for Black and Hispanic consumers, who, statistically, are more likely to report credit disputes, with individuals in majority-Black communities more than twice as likely to report such errors.[9] With the CFPB's support, Tzedek DC has been able to help Hispanic clients with mixed up credit files. This is a particularly common issue for Latino community members who share

---

[6] Tzedek DC (@TzedekDC), X (June 23, 2022, 2:28 PM), https://x.com/TzedekDC/status/1540038980737056770.

[7] Comment from Tzedek DC on Requests for FCRA Rulemaking: Debt Collector Furnishing, Language Access, Credit Reporting Ombudsperson Office, (May 5, 2023), https://downloads.regulations.gov/CFPB-2023-0021-0003/attachment_1.pdf.

[8] Consumer Financial Protection Bureau, *CFPB Orders Equifax to Pay $15 Million for Improper Investigations of Credit Reporting Errors* (Jan. 17, 2025), https://www.consumerfinance.gov/about-us/newsroom/cfpb-orders-equifax-to-pay-15-million-for-improper-investigations-of-credit-reporting-errors/.

[9] Press Release, Consumer Financial Protection Bureau, CFPB Finds Credit Report Disputes Far More Common in Majority Black and Hispanic Neighborhoods (Nov. 2, 2021), https://www.consumerfinance.gov/about-us/newsroom/cfpb-finds-credit-report-disputes-far-more-common-in-majority-black-and-hispanic-neighborhoods/.

common names. Tzedek DC relies on and shares Spanish materials with its Hispanic clients in its direct legal and financial counseling services.

The CFPB also provides sample credit reporting dispute letters that Tzedek DC gives to clients.[10] These letters are a convenient way to contest inaccurate credit reporting without needing to understand the workings of CRAs or the laws and regulations that govern them. This is vital, because credit reporting errors are both frequent and expensive to consumers.[11] Like with the rest of Tzedek DC's direct services, the CFPB's work until the recent attempted shutdown has made a big difference in making those services more effective and, in some instances, possible at all.

## II.     CFPB Research and Rulemaking Support Tzedek DC Clients.

The CFPB has conducted research and implemented rules that support Tzedek DC's clients and the low- and moderate-income community that Tzedek DC serves.

The CFPB provides a vital forum for discussing problems facing consumers. Tzedek DC has participated in CFPB stakeholder meetings on issues such as medical debt, lending practices for Assistive Technology, and employment and tenant screenings. These sessions helped Tzedek to understand the scope and frequency of clients' problems and advocate for solutions.

Tzedek DC also benefited from the opportunity to give input on and learn from the CFPB's understanding of the widespread nature of medical debt and the problems it poses for consumer patients. Research conducted by the CFPB further found that medical debt—which is often out of

---

[10] Consumer Financial Protection Bureau, *Sample Letters to Dispute Information on a Credit Report*, https://www.consumerfinance.gov/consumer-tools/credit-reports-and-scores/sample-letters-dispute-credit-report-information/ (last visited Feb. 20, 2025).

[11] Lisa L. Gill, "More Than a Quarter of People Find Serious Mistakes in Their Credit Reports, Study Shows," Consumer Reports (Apr. 30, 2024), https://www.consumerreports.org/money/credit-scores-reports/serious-mistakes-found-in-credit-reports-a1061511185/ (noting mistake that dropped one credit score from 800 to 500, which would make a typical mortgage cost an extra $150,000 over the life of the loan).

7

patients' control—is a poor predictor of a consumer's credit worthiness.[12] The CFPB accordingly finalized a regulation banning the inclusion of medical debt on credit reports used by lenders and prohibiting lenders from considering medical debt when making lending decisions. Through the notice and comment process, Tzedek DC provided further information and support about the extent of concerns created by medical debt on credit reports for its clients. While that regulation is currently subject to a court-ordered stay, it will, if operative, be very helpful to Tzedek DC's client community by enabling consumers with medical debt to qualify for loans without being hindered by debt that is not reflective of borrowing histories.[13]

Tzedek DC has submitted at least ten APA notice and comment-process comments to the CFPB, including on topics such as tenant background screening, information furnishing under the Fair Credit Reporting Act, and coverage of nonbank financial institutions. Tzedek DC has also co-submitted more than 20 letters to the CFPB, including on topics related to credit card late fees, paycheck advance products, and information related to human trafficking on credit reports. Tzedek DC has collaborated with more than 300 organizations from throughout the United States on these comments and sign-on letters. These moves by the CFPB represent important clarifications that put companies on notice of their obligations and protect consumers.

Residents of the District of Columbia—the jurisdiction of this case—will be uniquely harmed if Tzedek DC and other organizations cannot bring consumer-related issues to the CFPB. District residents have no members of the House or Senate with a right to vote in Congress who

---

[12] Consumer Financial Protection Bureau, *CFPB Finalizes Rule to Remove Medical Bills from Credit Reports* (Jan. 7, 2025), https://www.consumerfinance.gov/about-us/newsroom/cfpb-finalizes-rule-to-remove-medical-bills-from-credit-reports/.

[13] Tzedek DC has separately sought to intervene as a defendant in that case to defend the CFPB's final rule, Prohibition on Creditors and Consumer Reporting Agencies Concerning Medical Information (Regulation V). Mot. to Intervene as Defendants, D.I. 23 in *ACA Int'l v. CFPB*, No. 4:25-CV-00094 (S.D. Tex.).

they can contact when they encounter problems, and thus have more limited means of asking for help from the federal government. They can seek help from the Council of the District of Columbia, the DC Office of Attorney General, or the DC Metropolitan Police Department, all of which have a local jurisdiction. The national—and even international—nature of many consumer issues, particularly financial scams, leaves DC consumer enforcement alone insufficiently equipped to address many of the District's pressing consumer problems. The CFPB fills much of that gap now, and its absence would be keenly felt in the District.

### III. CFPB Resources and Materials Support Tzedek DC Clients and Community Members.

#### A. Tzedek DC's Use of CFPB Trainings and Materials Supports the Public Interest.

Tzedek DC relies on CFPB informational materials, lesson plans, and activities to prepare presentations to community members helping to inform its clients and community members of legal rights and steps toward achieving financial goals. For example, over the last 2 years at over 100 community events, Tzedek DC has shared critical tools such as the CFPB's "Your Money, Your Goals" toolkits, information about how to rebuild credit, know-your-rights resources for when a debt collector calls, the CFPB Financial Wellness Survey, or other CFPB materials.[14] Tzedek DC also uses CFPB reports on scams, fraud, and predatory lending to write newsletters for

---

[14] *See, e.g.*, Consumer Financial Protection Bureau, *Your Money, Your Goals*, https://www.consumerfinance.gov/consumer-tools/educator-tools/your-money-your-goals/ (last visited Feb. 20, 2025); CONSUMER FINANCIAL PROTECTION BUREAU, HOW TO REBUILD YOUR CREDIT (July 2020), https://files.consumerfinance.gov/f/documents/cfpb_how-to-rebuild-your-credit.pdf; CONSUMER FINANCIAL PROTECTION BUREAU, KNOW YOUR RIGHTS WHEN A DEBT COLLECTOR CALLS (Mar. 2022), https://files.consumerfinance.gov/f/documents/cfpb_adult-fin-ed_know-your-rights-when-a-debt-collector-calls.pdf; Consumer Financial Protection Bureau, *Find out your financial well-being* (last visited Feb. 20, 2025), https://www.consumerfinance.gov/consumer-tools/financial-well-being/.

its clients and community members. Without these CFPB reports, Tzedek DC would be less aware of national and emerging trends and therefore unable to fully offer advice on these topics.

The CFPB has also trained Tzedek DC staff on check fraud, debt settlement companies and credit repair, financial exploitation of seniors, setting financial goals, and financial issues relevant to citizens returning from incarceration. This CFPB support helps Tzedek DC staff stay up to date on consumer law topics to better represent clients. Without these trainings, Tzedek DC would be less prepared to represent clients or arm community members with needed information.

### B. Without the CFPB's Tailored Materials, Tzedek DC's Ability to Support Underserved Communities Will be Harmed.

The CFPB community-tailored materials including translated materials, and supplements developed for returning citizens, veterans, Native Americans, and disabled people, are integral to Tzedek DC's ability to serve these communities. These products, which recognize the unique challenges faced by individuals from these diverse backgrounds, are vital for Tzedek DC's clients. Tzedek DC also serves low- and moderate-income DC veterans, who are particularly vulnerable to fraud and scams.[15] Without access to trusted, targeted, and translated materials, Tzedek DC would not be able to serve these underserved communities as easily, and would be required to expend resources to develop new materials or turn community members away.

### C. The CFPB Allows Tzedek DC to Offer Information to Residents Ineligible for Tzedek DC Legal Assistance.

Like all free legal service providers in the District of Columbia, Tzedek DC cannot represent all applicants for assistance. *Supra* at 1 (income eligibility limits). The District has a large amount of unmet legal need, with many applicants for free legal services unable to find

---

[15] Melissa Chan, "Democratic lawmakers warn axing Consumer Financial Protection Bureau will leave troops vulnerable to fraud and scams," NBC News (Feb. 20, 2025), https://www.nbcnews.com/news/us-news/democratic-lawmakers-warn-axing-consumer-financial-protection-bureau-w-rcna192848.

counsel despite having meritorious claims or defenses and unable to afford a private attorney. The CFPB helps close this gap with its complaint portal, template letters, and self-help guides.

District of Columbia residents have made complaints to the CFPB more per capita than all but two states in the nation.[16] Tzedek DC has referred clients to the CFPB on at least 30 recent occasions, for example when the CFPB has superior expertise on an issue or when its enforcement powers are more likely to resolve the matter. Making a CFPB complaint does not require legal counsel. The CFPB allows consumers of all incomes to report unfair, deceptive, and otherwise illegal actions in consumer markets to an agency that will give their problem an expert review, often leading to a resolution in the consumer's favor.

Tzedek DC often provides community members facing harassment or unrecognized debts with the CFPB "debt validation" and "no contact" letter templates.[17] These templates are current, trusted, and include clear directions. Without these letters, Tzedek DC attorneys would be unable to offer any assistance to community members who are ineligible for services.

Tzedek DC gives residents ineligible for services CFPB publications that explain how to negotiate favorable resolutions with debt collectors, open bank and credit union accounts, create a budget for their personal finances, and more. Providing these publications to residents—as well as clients and others—saves Tzedek DC staff the time that it would take to explain the issues at hand and allows staff to instead focus on other client matters. The CFPB's printing and mailing these resources to nonprofits as brochures is particularly helpful, because some of Tzedek DC's prospective clients lack the technology to access digital materials.

---

[16] Consumer Financial Protection Bureau, Consumer Complaint Database at Map tab (last visited Feb. 20, 2025), https://www.consumerfinance.gov/data-research/consumer-complaints/search/.
[17] Consumer Financial Protection Bureau, *What Should I Do When a Debt Collector Contacts Me?* (last visited Feb. 21, 2025), https://www.consumerfinance.gov/ask-cfpb/what-should-i-do-when-a-debt-collector-contacts-me-en-1695/.

11

With the introduction of artificial intelligence, increased use of algorithms in important decisions affecting consumers, and the ever-growing inventiveness of scammers and fraudsters, the need for the CFPB's continued guidance and resources, if not leadership, is greater than ever. Conversely, the shutdown of all or most of the CFPB will cause massive harms to the public, Tzedek DC, and people with low and moderate incomes that Tzedek DC serves.

## CONCLUSION

For these reasons, and those detailed by the Plaintiffs, the motion for a preliminary injunction should be granted.

Dated: February 21, 2025                                              Respectfully Submitted,

/s/  Ariel Levinson Waldman                                           /s/  William Pittard
Ariel Levinson-Waldman (Bar No. 474429)                               William Pittard (Bar No. 482949)
Sarah Hollender (*Pro hac vice app. forthcoming*)                     Noah Brozinsky (Bar No. 1655789)
A.J. Huber (*Pro hac vice app. forthcoming*)
Erik Goodman (*Pro hac vice app. forthcoming*)                        **KAISER PLLC**
Marissa Ditkowsky (*Pro hac vice app. forthcoming*)                   1099 14th St. N.W., 8th Floor West
                                                                      Washington, D.C. 20005
**TZEDEK DC**                                                         Telephone: (202) 640-2850
UDC David A. Clarke School of Law                                     Facsimile: (202)-640-1034
4340 Connecticut Ave NW, Suite 319                                    wpittard@kaiserlaw.com
Washington, DC 20008                                                  nbrozinsky@kaiserlaw.com
Tel: (202) 441-9959
alw@tzedekdc.org
sh@tzedekdc.org
ah@tzedekdc.org
eg@tzedekdc.org
md@tzedekdc.org

*Counsel for Amicus Curiae Tzedek DC*                                 *Counsel for Amicus Curiae Tzedek DC*

12