UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL TREASURY EMPLOYEES UNION, *et. al.*,<br><br>Plaintiffs,<br><br>v.<br><br>RUSSELL VOUGHT, in his official capacity as Acting Director of the Consumer Financial protection Bureau, *et al.*,<br><br>Defendants. | No. 1:25-cv-00381-ABJ |

**MOTION FOR NEW YORK TO PARTICIPATE IN ORAL ARGUMENT AS AMICUS CURIAE ON BEHALF OF THE STATES FOR PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

1. On February 21, 2025, The State of New York, the State of New Jersey, the District of Columbia, and the States of Arizona, California, Colorado, Connecticut, Delaware, Hawaii, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Mexico, North Carolina, Oregon, Rhode Island, Vermont, Washington, and Wisconsin (collectively, the "States"), filed a brief of amici curiae in support of plaintiffs' motion for a preliminary injunction pursuant to Local Civil Rule 7(o)(1). ECF No. 24. New York now moves pursuant to Local Civil Rule 7(o)(6) to participate at the oral argument scheduled on March 3, 2025 for plaintiffs' motion on behalf of the States. *See* ECF No. 19. Counsel for New York conferred with Plaintiffs regarding this motion and Plaintiffs consent to New York's participation. Counsel for New York contacted counsel for Defendants the afternoon of February 26, 2025 by phone and by email to request their consent, and have not received defendants' position as of the time of this filing.

2. When Congress enacted the Dodd-Frank Act, which created the Consumer Financial Protection Bureau ("CFPB"), Congress made explicit its intent that the CFPB partner with States to achieve general efficiencies and to complement work traditionally done by States in

the areas of consumer protection and financial regulation, including by codifying the authority of state attorneys general to enforce various federal consumer financial laws, both independently or in partnership with the CFPB and requiring the CFPB to coordinate with State regulators. 12 U.S.C. §§ § 5552(a); 5515(b)(2).  Consistent with that Congressional mandate, the CFPB has historically partnered with and complemented the work of States in performing a variety of consumer-protection functions. *See* ECF No. 24 at 4-7.

3.  This Court has "broad discretion" to permit amicus curiae participation. *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Engineers*, 519 F. Supp. 2d 89, 93 (D.D.C. 2007).  The Court should exercise that discretion to permit New York's participation as amicus curiae at oral argument here on behalf of the States, given the States' unique insight into how the CFPB's statutorily mandated work, including direct services to consumers, supervision, and enforcement assistance benefit the States' residents, and the ways in which the withdrawal of mandated services, supervision and collaborative assistance will inflict immediate and irreparable harm on the States and their residents as consumers.

4.  As Defendants acknowledge in their opposition papers, CFPB employees have been instructed to "not perform any work tasks." *See* ECF No. 31-1 at Ex. F.  Contrary to Defendants' characterization that the Chief Legal Officer is clearing all work tasks or ensuring that tasks are "in fact, urgently required by law", ECF No. 31 at 29, 31, Acting Director Vought's email to all staff makes no reference to fulfilling statutory mandates or the agency's requirements under the law. *See* ECF No. 31-1 at Ex. F. It instead instructs employees to "stand down." *Id.*

5.  Defendants' opposition miscasts the harms from that sweeping directive as involving employees' "lack of work" and "dismissal or potential dismissal," ECF No. 31 at 34, while minimizing or ignoring the numerous other forms of irreparable harm that their unlawful

2

actions will cause if relief is not granted, including harms to States and their residents. Defendants likewise give short shrift to the public interest that would be served by an injunction, refusing to acknowledge the public's interest in the implementation and enforcement of federal consumer protection laws. *See id.* at 38-39.

6. As partners experienced in working with the CFPB, the States have an interest in relating the harms inflicted on the States and state residents of the abrupt cessation of legally required critical work at the CFPB. These harms are vitally important to the Court's determination of whether the requested injunction is in "accord with the public interest." *See League of Women Voters of United States v. Newby*, 838 F.3d 1, 6, 12 (D.C. Cir. 2016). As outlined in the States' brief of amici curiae, ECF No. 24 at 7-16, the harms to States and their residents include:

7. <u>Supervision</u>. The CFPB is statutorily obligated to supervise very large banks and certain nonbank entities. 12 U.S.C. §§ 5514, 5515. The CFPB's supervisory activities are a key component of protecting consumers from harmful, unlawful conduct. While the concept of supervision by the CFPB may appear to be one-step removed from the consumers it ultimately seeks to protect, the benefits of supervision are in fact direct and significant. Financial products and services are ubiquitous and complex. Consumers often do not know or fully understand their rights, the products, or the back-end calculations when fees are charged or payment is demanded. Supervision of banks and nonbanks entities not only deters risky and unlawful conduct, but also regularly results in finding and resolving violations of the law that are actively harming consumers or may cause imminent harm. For example, as noted in the States' brief of amici curiae, examinations have revealed myriad unlawful fees and failure to provide consumers at risk of foreclosure with mitigation options required by law—violations of laws for which the CFPB's supervisory activities were able to provide consumer remedies. *See* ECF No. 24 at 13-15.

Moreover, a number of the 200-plus very large banks over which the CFPB has supervisory authority are state-chartered banks. Unlike federal banks, the States share supervisory authority with the CFPB over these state-chartered banks, and the CFPB's abrupt lack of supervision forces some States to fill the supervisory void with no notice. And the CFPB coordinates examination of nonbank entities, such as mortgage originators or auto financing companies, with some States. Notably, the shutdown has already disrupted at least one examination that had been jointly scheduled by the CFPB with several States including California, and the CFPB's continued shuttering may impact others scheduled to proceed in the foreseeable future. *See* ECF No. 24 at 13-14.

        8.      <u>Services</u>. CFPB administers a statutorily mandated consumer complaint system, which fields approximately 25,000 consumer complaints each week, many of which involve urgent issues such as imminent home foreclosures that the CFPB prioritizes and refers for immediate assistance. *See* ECF No. 24 at 7-8. The States also collectively refer thousands of consumer complaints to the CFPB each year, which frequently result in consumers receiving redress with the CFPB's assistance. *See id.* at 8. The loss of the CFPB's vast nationwide complaint intake system could not be replaced overnight and would result in immediate and drastic harms to consumers, including the risk of foreclosure. *See id*. In addition, the CFPB maintains a Civil Penalty Fund, which the CFPB distributes to victims whom it determines will not receive compensation from the wrongdoers or any other source of restitution. *See id.* at 9. There are more than a dozen matters for which distributions have been approved, but are outstanding, including several matters on which the States have collaborated with the CFPB. *See id.* at 9-10. Thousands of consumers—whom the CFPB already determined will not receive restitution from any other source—will be deprived of awarded monetary relief on those matters if the Fund remains inactive.

*See id.* For example, Minnesota, Washington, California and eight other States partnered with the CFPB to sue a company called Prehired for deceptive marketing and debt-collection practices; the CFPB allocated $4.3 million from the Civil Penalty Fund to compensate victims but most, if not all, payments remain outstanding, despite the States having provided victim address verifications and other information in early 2025. *See id.* at 10.

9. <u>Enforcement</u>. The CFPB routinely files enforcement actions to stop deceptive, unfair, and abusive conduct that harms the States' residents. The States frequently collaborate with the CFPB on these matters, several of which are in active litigation. *See id.* at 5-6. The CFPB's abrupt cessation of enforcement activity has been extremely disruptive to the ongoing litigations in which it has been an active partner, including by derailing case schedules, causing contracts with retained experts to be terminated, and, in one case, causing a defendant to seek relief from an existing preliminary injunction order on the grounds that "the CFPB may still exist in theory, but it is wholly nonfunctional." *See id.* at 16. In addition to the harm to consumers for whom relief is sought on existing matters, the CFPB's absence removes an indispensable enforcement authority, alongside the States, over consumer financial laws, which will have deleterious effects on consumers across the country.

10. The States respectfully submit that it is important that these harms be considered at oral argument, particularly given Defendants' mischaracterization of the injuries at issue in their opposition papers. The States are, moreover, uniquely well-positioned to address them, given their frequent collaboration with the CFPB on supervision, referrals of consumer complaints, use of the Civil Penalty Fund, and enforcement efforts. Accordingly, the Court should grant this motion for New York to participate in oral argument on plaintiffs' motion for a preliminary injunction on behalf of the States.

Dated: February 27, 2025            Respectfully submitted,

                                          LETITIA JAMES
                                            Attorney General
                                               State of New York

By: <u>/s/ Christian Reigstad</u>
       CHRISTIAN REIGSTAD
       28 Liberty St.
       New York, NY 10005
       Tel.: (212) 416-8321

       CHRISTOPHER M. D'ANGELO
       *Chief Deputy Attorney General, Econ. Justice*
       ANDREA OSER
       *Deputy Solicitor General*
       KARUNA B. PATEL
       *Senior Counsel, Econ. Justice*
       SARAH L. ROSENBLUTH
       *Assistant Solicitor General*
       CHRISTOPHER L. FILBURN
       *Assistant Attorney General*
       CHRISTIAN REIGSTAD
       *Assistant Attorney General*