IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL TREASURY EMPLOYEES UNION, *et al.*,<br>    *Plaintiffs*,<br> v.<br>RUSSELL VOUGHT, in his official capacity as Acting Director of the Consumer Financial Protection Bureau, *et al.*,<br>    *Defendants*. | Case No. 25-cv-0381-ABJ |

**DECLARATION OF ALEX DOE**

I, Alex Doe, declare as follows:

1. I am a federal employee who attended meetings between the Office of Personnel Management and the CFPB. The statements made in this declaration are based on my personal knowledge.

2. I am submitting this declaration pseudonymously because I fear retaliation. But if the Court would like to know my name or job position, I would be willing to provide it ex parte and under seal.

3. Around February 13th, my team was directed to assist with terminating the vast majority of CFPB employees as quickly as possible. The termination was to proceed in phases, to be completed in rapid succession. First, the Bureau fired all probationary and term employees. Next, the Bureau would fire approximately 1,200 additional employees, by eliminating whole offices, divisions, and units. Finally, the Bureau would "reduce altogether" within 60-90 days by terminating most of its remaining staff, leaving a Bureau that could not actually perform any functions, or no Bureau at all.

4. The CFPB sought to effectuate the second step of this large-scale termination—the firing of more than 1,000 employees—within 36 hours. Doing so required bypassing several ordinary procedures, safeguards, and rules. Jordan Wick, a DOGE employee, specifically stated that DOGE wanted formal termination notices to be sent by February 14th. The Bureau intended to comply and fire the vast majority of remaining employees on February 14th. The only reason it did not do so is because of this Court's order temporarily prohibiting it from doing so.

5. We met again after the Court's order. Adam Martinez stated that he asked the CFPB's leadership whether they had been thinking about what agency would inherit the CFPB's administrative portfolios—human resources, FOIA, records management, and data systems—once the CFPB itself was no longer operating. There are statutory requirements to maintain those systems even once an agency no longer exists. The only experience the CFPB had with this was in 2010-2011, when the Dodd-Frank Act dissolved the Office of Thrift Supervision. In that case, Adam explained, the administrative functions were transferred to the Office of the Comptroller of the Currency. And OCC retained the files and records previously held by the Office of Thrift Supervision, along with the funding and staff to support legacy administrative functions like FOIA and record management. Mr. Martinez stated that he did not yet know what agency would perform a similar role for the CFPB or whether the Bureau itself would technically continue to exist with a small staff to perform those functions.

6. Later in the meeting, Mr. Martinez was asked if an agency or department had been identified to perform those legacy administrative functions. He answered that that is exactly what he had just asked the CFPB's Chief Legal Officer and new leadership that morning because he didn't know if DOGE had thought about that. He stated that there are a lot of administrative

functions still left to do after the "wind down" of an agency but CFPB did not yet know who would handle those, and he didn't know if DOGE did.

7. Mr. Martinez stated that during phase 2 of the three-phase termination process (the phase when the CFPB would lay off the vast majority of its employees), the CFPB would keep the specific positions necessary to carry out the "closure of the agency." But that many of those employees would then eventually be fired themselves.

8. During at least one of the meetings in which both I and Mr. Martinez were present, Mr. Martinez referenced Acting Director Vought's "stop work" order.

9. I have worked in federal government for many years, and I have never seen most of an agency's workforce be placed on administrative leave after a change in administration. Nor have I received an email requiring an agency's employees to stop all work tasks.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 26, 2025, in Washington, D.C.

/s/ *Alex Doe*
Alex Doe