IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL TREASURY
EMPLOYEES UNION, *et al.*,
        Plaintiffs,

v.

RUSSELL VOUGHT, in his official capacity
as Acting Director of the Consumer Financial
Protection Bureau, *et al.*,
        Defendants.

Case No. 25-cv-381-ABJ

**DECLARATION OF MATTHEW PFAFF**

I, Matthew Pfaff, declare as follows:

1. I am employed at the Consumer Financial Protection Bureau, where I currently serve as the Chief of Staff for the Office of Consumer Response. Consumer Response is the unit responsible for "the centralized collection of, monitoring of, and response to consumer complaints," as well as sharing data, as required by 12 U.S.C. § 5493(b)(3)(A)-(D). It is also responsible for executing one of the CFPB's primary functions of "collecting, investigating, and responding to consumer complaints" and providing "timely regulator response to consumers" as required by 12 U.S.C. § 5511(c)(2) and 12 U.S.C. § 5534(a), respectively. As the Chief of Staff, I am responsible for leading the Office's efforts to meet its statutory obligations and support CFPB priorities and initiatives. I started serving as the Chief of Staff on February 14, 2021. I have been with the CFPB since October 2013, and I have worked in the Office of Consumer Response the entire time. The following is based on my personal knowledge or information provided to me while performing my duties.

**The CFPB's Consumer Complaint Process**

2. The CFPB's consumer complaint process is the primary way that the CFPB hears from individuals and families about problems they experience with bank accounts, mortgages, credit reporting, and other consumer financial products. These complaints come from active-duty military members, veterans, rural consumers, older Americans, and students. They come from all 50 states. They come from individuals of all backgrounds and all socio-economic statuses.

3. Submitting a complaint is simple. Consumers can submit complaints online, over the phone, and by mail. Other federal agencies (e.g., Office of the Comptroller of the Currency, Federal Deposit Insurance Corporation, Federal Trade Commission, Federal Reserve, National Credit Union Administration), states, congressional offices, and the White House can also refer complaints to the CFPB for processing.

4. Processing complaints at scale, however, is much more complex. Once the CFPB is in receipt of a complaint, it will ensure that the complaint is complete and direct the complaint to a company for a response or to another federal agency for handling. Complaints meeting the CFPB's publication criteria are eligible for inclusion in the public Consumer Complaint Database.

5. The complaint process has proven to be an efficient and effective forum for everyday people to have their problems addressed. Indeed, of the more than 2.7 million complaints published in the CFPB's Consumer Complaint Database last year, companies provided a timely response 99.7% of the time and reported providing money back or other relief (e.g., corrections to consumer reports) in about half of those complaints. Since the CFPB opened its doors, companies have reported returning more than $300 million dollars in response to complaints. Companies have also reported that they discontinued mortgage foreclosure proceedings, cancelled student loans, refunded incorrect late fees, and reversed transactions for consumers who were scammed.

## The Declaration of Adam Martinez

6. I have reviewed the declaration that the CFPB's Chief Operating Officer and Acting Chief Human Capital Officer, Adam Martinez, submitted in this case. ECF No. 31-1. Mr. Martinez summarily concludes that "[t]he Bureau is performing its statutory obligations, including those listed in 12 U.S.C. § 5493(b)(3)(A)." *Id.* at ¶ 22. Mr. Martinez also declares that "[o]perations related to the Consumer Complaint Database are continuing and that "[c]ontracts needed for work related to the Consumer Complaint Database have remained intact and operational." *Id.*

7. Mr. Martinez's statements are misleading, inaccurate, or both.

8. Mr. Martinez's statements further demonstrate a lack of understanding about the consumer complaint program. When individuals or their representatives submit a complaint to the CFPB, the complaint is submitted to and included in a case management system. This case management system allows consumers, companies, and the CFPB to securely share information and engage in the complaint process. This case management system is also how both the CFPB and companies can deliver timely responses to consumers as required by law. Information from the case management system populates other systems to meet data sharing requirements with federal and state agencies, as well as with the public via the Consumer Complaint Database. People—both federal employees and contractors—make this entire operation run successfully.

9. On Monday, February 10, 2025, Acting CFPB Director Russell Vought directed staff to "not perform any work tasks" and to "stand down from performing any work task." *Id.* at Ex. F. Consumer Response staff complied with the Acting Director's order. As a result of this compliance, the "operations related to the Consumer Complaint Database" are *not* "continuing." And many of the "contracts needed for work related to the Consumer Complaint Database" have *not* "remained intact and operational."

3

## Operations Related to the Consumer Complaint Program and Database are Not Continuing

10. Consumer Response is composed of several teams, each tasked with carrying out one (or a set of) the CFPB's statutory obligations. On February 13, 2025, members of the "Department of Government Efficiency" (DOGE) requested that Consumer Response define competitive areas—areas explicitly required by statute—for purposes of a Reduction in Force (RIF). I drafted a memo that provided information about the teams within Consumer Response that align to specific statutory obligations. Mr. Martinez was provided a copy of this memo. A copy of that memo is attached hereto as Exhibit A.

11. None of the teams listed in the memo, which align to statutory obligations, have been activated to work. As a result, the complaint handling operation has experienced a significant disruption.

12. Complaints referred by congressional offices, states, and most federal agencies are not being reviewed and sent to companies. These complaints require federal staff to review and process.

13. Complaints about companies that are not yet participating in the complaint program are not being addressed. These complaints require federal staff review and a manual invitation to participate in the program.

14. Complaints in which consumers misspelled the name of the company are not being sent to companies. These complaints require federal staff review and manual processing.

15. Incomplete complaints are not being processed or worked by anyone. These complaints require federal staff to conduct outreach to consumers for additional information.

16. Taken together, in these categories alone, I expect that more than 10,000 complaints are currently awaiting federal staff review. This is a large and unprecedented backlog.

17. Complaints are not being "monitored." Consumer Response has a team of subject matter experts who monitor complaints to ensure that consumers are receiving timely, accurate, and complete responses to their complaints. Subject matter experts also monitor complaints for emergent issues across market and at companies. This ongoing monitoring provides a necessary check on the complaint program to ensure that consumers receive meaningful responses. Without this work, company responses are likely declining in quality.

18. Complaints are not being "investigated." In addition to monitoring complaints, subject matter experts perform targeted investigations on certain complaints. These investigations typically involve asking companies follow-up questions to ensure rules and regulations have been followed. And often, these targeted investigations yield additional relief for consumers.

19. Escalated issues are not being addressed. Consumer Response's Escalated Case Management team responds to consumers who are facing imminent foreclosure, may be a risk to others or themselves, and other sensitive issues.

20. Complaint systems, including the case management system and systems for sharing data, are not being maintained. Complaint systems require federal and contractor staff to monitor and respond to issues affecting system health. Automatically generated error notices indicate the system has already experienced problems. If these errors are not addressed, at some point, the system will break entirely. Additionally, companies that receive complaints through this system have received error notices that they are unable to export complaints out of the system, which will impede their ability to review and respond to complaints.

21. Stakeholder support tickets are not being resolved. Consumer Response receives hundreds of support tickets every month from company, congressional, and government stakeholders. Support tickets range from companies trying to remedy potential privacy concerns

to resetting passwords. These tickets are not being reviewed and resolved, which is almost certainly frustrating the ability of stakeholders to complete their work.

22. Coordination with other federal regulators is not occurring. Indeed, I am aware of at least one federal agency that has noted the disruption in complaint processing. This disruption in timely referrals mean that other federal agencies will not be able to initiate their investigative processes.

23. Complaints submitted by servicemembers and their families are not being monitored. It is my understanding that no one from the Office of Servicemember Affairs has been activated to work.

24. Student loan complaints are not being reviewed and informally resolved. The Student Loan Ombudsman role is vacant. Mr. Martinez seemingly suggests that the CFPB Ombudsman is an appropriate substitute. Yet again, this reflects a basic misunderstanding of the functions of that office and the authorities granted to the CFPB Ombudsman by the Consumer Financial Protection Act. The CFPB Ombudsman does not assist in resolving any issues between consumers and companies; rather, it merely ensures that the CFPB is following its own internal processes and procedures.

25. Audits and quality controls have halted. Consumer Response maintains an audit function that ensures complaint processes and procedures are being followed, and vendors are appropriately interacting with members of the public. This function also responds to oversight inquiries, such as those from the CFPB Ombudsman and the Office of Inspector General. There is currently no one performing these essential functions.

26. Activities to monitor and safeguard the system to prevent bad actors from misusing it have stopped. This risks overwhelming the system and wastes the CFPB's technical resources and the resources of companies responding to complaints.

### Contracts Needed for Work Related to the Consumer Complaint Program and Database Have Not Remained Intact and Operational

27. On February 11, 2025, the CFPB's Chief Financial Officer, Jafnar Gueye, requested that offices review a list of contracts to determine which, if any, directly supported a statutory requirement. I reviewed the list of contracts managed by Consumer Response and determined that five contracts directly supported a statutory requirement. All five contracts were nevertheless terminated for convenience—*after* it was determined that they were necessary to support statutory requirements.

28. Since those terminations, following inquiries on the shutdown of Consumer Response, the contract for the Consumer Resource Center has been reactivated. This contract enables the CFPB to operate its toll-free telephone number. The Consumer Resource Center, which handles several thousand calls on any given day, recently had an outage lasting an entire day, meaning that nobody who called the CFPB's toll-free number to speak to someone to have their question answered, submit a complaint, or obtain a status update. Additionally, there is currently no oversight of the Consumer Resource Center by the CFPB.

29. Contracts for the maintenance of complaint systems, including the case management system and systems for sharing data, remain terminated.

30. Contracts managed by other offices but that affect complaint systems have also been terminated. Among these contracts was a subscription to virus scanning software. Without this software, most complaints cannot be sent to companies for review and response. Similarly, consumers cannot access any attachments that companies may upload in response to the complaint.

Although this contract was recently reinstated, the disruption in virus scanning software meant that tens of thousands of complaints were not been promptly sent to companies and are now instead part of a large backlog.

### Whistleblower Disclosure

31. I have provided a copy of this declaration to the Office of Special Counsel pursuant to the Whistleblower Protection Act. I am making this whistleblower disclosure based on my reasonable belief that the conduct described in this declaration constitutes a violation of a federal law and an abuse of authority. 5 U.S.C. § 2302(b)(8)(A).

\*\*\*

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed in Washington, DC this 26th day of February, 2025.

_____
Matthew Pfaff

# Exhibit A

February 13, 2025
Information Memo for the Acting Director

| **FROM** | ████████████████████████████████, Consumer Response & Education |
|---|---|
| **SUBJECT** | Divisional Staffing |

| Select Applicable Information Type(s) | ☐ Situational Awareness | ☐ Request for Directional Feedback | ☒ Reply to Inquiry from Director/FO | ☐ Draft Document Feedback Request |
|---|---|---|---|---|

### Issue
This purpose of this memorandum is to provide information about how the staff of the Consumer Response and Education Division align to the Consumer Financial Protection Bureau's (CFPB's) statutory obligations.

### Divisional Background
The Consumer Response and Education Division (CRE) is responsible for executing the CFPB's first two statutory functions: (1) conducting financial education programs, and (2) collecting, investigating, and responding to consumer complaints. *See* 12 USC 5511(c)(1)–(2). CRE is the public face of the CFPB to individuals and their families, delivering scalable services and tools designed to empower consumers to share their experiences in the marketplace, respond to challenges, and make better informed financial decisions.

There are two offices within CRE: the Office of Financial Education and the Office of Consumer Response. Financial Education is responsible for managing a suite of more than 50 educational tools and resources, distributing those tools to users, and researching the effectiveness of financial education programs. Financial Education is also responsible for supporting the Director's membership in the Financial Literacy and Education Commission. Financial Education's content is some of the most frequently visited content on the CFPB's website.

Consumer Response is responsible for answering questions, handling complaints, and sharing data and insights. Consumer Response manages the CFPB's toll-free number and complaint program from end-to-end. Consumer Response is also responsible for assisting complaint process stakeholders (e.g., responding to congressional members with their constituents' complaints, assisting Company Portal users as they respond to their customer's concerns) and sharing complaint information with Federal and State agencies.

==The current headcount for CRE is approximately 150-155 full-time employees. The functional areas listed below aligned to statutory responsibilities total approximately 80 to 85.==

**Office of Financial Education**

12 USC 5493(d) requires the Director to "establish an Office of Financial Education, which shall be responsible for developing and implementing initiates intended to educate and empower consumers to make better informed financial decisions." There is one competitive area within the Financial Education, responsible for delivering several statutory obligations:

- Developing and implementing initiatives intended to educate and empower consumers to make better informed financial decisions. *See* 12 USC 5493(d)(1).
- Developing and implementing a strategy to improve the financial literacy of consumers that includes measurable goals and objectives, in consultation with the Financial Literacy and Education Commission. *See* 12 USC 5493(d)(2).
- Coordinating with other units within the Bureau in carrying out its functions, including working with the Community Affairs Office to implement the strategy to improve financial literacy of consumers; and working with the research unit established by the Director to conduct research related to consumer financial education and counseling. *See* 12 USC 5493(d)(3).
- Submitting a report on its financial literacy activities and strategy to improve financial literacy of consumers *See* 12 USC 5493(d)(4).

The current headcount for this area is 12.

**Office of Consumer Response**

12 USC 5493(b)(3)(A) requires the Director to "establish a unit whose functions shall include establishing a single, toll-free telephone number, a website, and a database ... to facilitate the centralized collection of, monitoring of, and response to consumer complaints regarding consumer financial products and or services." 12 USC 5534(a) requires the CFPB "to provide a timely response to consumers, in writing where appropriate, to complaints against, or inquiries concerning, a covered person." 15 USC 1681i(e) establishes a process by which the CFPB must act and report out on certain credit and consumer reporting complaints. Consumer Response must coordinate with certain CFPB offices and personnel, including the Private Student Loan Ombudsman and Office of Servicemember Affairs. *See* 12 USC 5493(e), 12 USC 5535.

Consumer Response has several competitive areas:

*Consumer Resource Center*

12 USC 5493(b)(3)(A) directs the CFPB to create establish a single, toll-free number. This team manages a Consumer Resource Center (CRC), which receives more than 40,000 calls per month. The CRC answers consumers' inquiries, accepts and provides status updates on complaints, and directs consumers resources such as state and local services.

The current headcount for this area is 3.

*Complaint Handling*

12 USC 5534(a) requires the CFPB to timely respond to consumers, including any responses received by the regulator from the covered person. This team directs the complaints to companies for a response.

The current headcount for this area is 7.

*Portal Operations*
12 USC 5534(b) requires certain covered persons to provide a timely response to the regulator. This team is responsible for responding to stakeholder support tickets, including tickets submitted by company, congressional, and government portal users.

The current headcount for this area is 7.

*Mosaic Program*
12 USC 5493(b)(3)(A) directs the CFPB to create establish a database to facilitate the centralized collection of complaints. 12 USC 5493(b)(3)(D) requires the CFPB to share consumer complaint information with prudential regulators, the Federal Trade Commission, other Federal agencies, and State agencies. This team manages the technology that facilitates the handling of more than 350,000 complaints per month

The current headcount for this area is 5.

*Investigations (Regulatory Compliance, Complaint Monitoring, Research and Analysis, Escalation Case Management)*
12 USC 5511(c)(2) requires the CFPB to "investigate" complaints. Additionally, 12 USC 5493(b)(3)(A) requires the CFPB to "monitor" complaints. This team is responsible for monitoring and investigating the more than three million complaints the CFPB receives annually. This team conducts investigative inquiries received by the Director's Office. This team also conducts analyses that support the Chief of Staff's team efforts to meet the publication of statutory reports and supports rule lookback assessments as required by 12 USC 5512.

The current headcount for this area is 30.

*Data Reporting*
12 USC 5493(e) and 12 USC 5535 requires Consumer Response to coordinate with the Office of Servicemember Affairs and the Private Student Loan Ombudsman, respectively. This team is responsible for working with these offices for their complaint monitoring work.

The current headcount for this area is 4.

*Stakeholder Engagement*
12 USC 5493(b)(3)(A) directs the CFPB to "coordinate with the Federal Trade Commission or other Federal agencies to route complaints to such agencies, where appropriate." Additionally, 12 USC 5493(b)(3)(D) requires the CFPB to "share consumer complaint information with prudential regulators, the Federal Trade Commission, other Federal agencies, and State agencies …". This team is responsible for working with federal and state agencies, including state Attorneys General.

The current headcount for this area is 5.

*Chief of Staff Team*
Consumer Response is responsible for publishing or contributing to the publication of several reports. Those reports include:

- Consumer Response Annual Report (as required by 12 USC 5493(b)(3)(D))
- Fair Credit Reporting Act 611(e) Report (as required by 15 USC 1681i(e)(5))
- Fair Debt Collection Practices Act Report (as required by 15 USC 1692m)
- CFPB Semi-Annual Reports (required by 12 USC 5496)

This team is responsible for the production and publication of these reports, including any follow-up questions from oversight bodies.

The current headcount for this area is 5.

**Management and Operations**
This team provided the executive direction for both offices within the division. The current divisional executives each have a dual role both division and office level executives. The office level executive positions remain vacant. The team also provides centralized support to each office regarding resource management functions including budget, acquisition management, training, management reporting, and coordination with internal and external stakeholders, and oversight bodies such as GAO and OIG.

The current headcount for this area is 5.