IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL TREASURY
EMPLOYEES UNION, *et al.*,
   *Plaintiffs*,

 v.

RUSSELL VOUGHT, in his official capacity as Acting Director of the Consumer Financial Protection Bureau, *et al.*,

   *Defendants*.

Case No. 25-cv-381-ABJ

## DECLARATION OF CHRISTINA COLL

I, Christina Coll, declare as follows:

1. I am an officer and board member of the CFPB Employee Association. The statements made in this declaration are based on my personal knowledge and information available to me through my duties at the Employee Association.

2. The Employee Association is a membership organization of dedicated public servants committed to advocating for the interests of the Consumer Financial Protection Bureau's mission and employees.[1]

3. Our members are current and former employees of the CFPB, including employees who are not represented by the National Treasury Employees Union. Our non-union members currently include probationary and term employees who were terminated during the week of February 10, 2025, and include current employees who fear losing their jobs as part of a future mass firing.

---

[1] Paragraph 18 of the Amended Complaint, ECF #7, which describes the Employee Association's mission, inadvertently omits the words "mission and employees."

4.     Some Employee Association members supervised probationary and term employees who were fired the week of February 10th. The supervisors did not identify poor performance or misconduct before the firings; to the contrary many of those fired were top performers.

5.     The firings of probationary and term employees have harmed the Employee Association's members. Members who were fired lost their income and have lost, or will soon lose, important benefits, such as health insurance. One Employee Association member who was fired as part of the firing of probationary employees, for example, is now unable to pay her mortgage loan. She is also now unable to provide for her two children and so has been relying on food banks to feed her family.

6.     Another Employee Association member who was fired as part of the firing of term employees recently learned that she could have a chronic auto-immune condition. At her doctor's recommendation, she was planning to have further testing completed in late March or early April. When she learned of her termination and that she would lose her health insurance in mid-March, she scheduled an ultrasound and a biopsy to be sooner and closer together than recommended by her doctor. She expects that she will lose her CFPB health insurance during the critical stage of setting up a treatment plan with her doctor; if diagnosed, her care could range from prescription medication to an organ transplant.

7.     If the CFPB conducts further mass layoffs, Employee Association members who have not yet been fired will face the same harms as those who were already terminated. For example, an Employee Association member who is still employed but is at risk of being terminated has a spouse who has been on full medical leave with an ongoing serious medical condition. This Employee Association member is the insurance provider for the family, and any potential lapse in

coverage would result in the inability to provide necessary medical care for her spouse. Her employment situation is so stressful that she is now suffering from chronic migraines.

## The Work Stoppage of the CFPB

8. On February 10th, Acting Director Vought directed all CFPB staff to "not perform any work tasks" unless they received approval in writing from the Chief Legal Officer for an urgent matter. Martinez Decl. Ex. F. Members noticed that Acting Director Vought's February 10th email did not contain an exception for activities required by law. As reported by Banking Dive (bankingdive.com), on February 10th, the Chief Legal Officer emailed the Enforcement Division, directing employees "not make any further communications… to parties that are subject to any pending enforcement matter or prospective enforcement matter without getting my approval in writing," and that "[f]ailure to abide by these instructions constitutes insubordination and we will take appropriate personnel action." Around the same time, members also reported that a "cfpb_tipline" account on X asked people to report work done by CFPB enforcement or supervision staff, and a CFPB spokesperson stated that any employees found to be in violation of the stop-work order "will be dealt with accordingly." To the best of my knowledge, nearly all of the Employee Association's members who are still employed at the CFPB remain on administrative leave.

9. The sudden shutdown of the CFPB's work has harmed the Employee Association's members. Members report that the stop-work order has negatively impacted their ability to comply with professional and ethical obligations. Members report that the totality of the new administration's actions has created an atmosphere of fear and uncertainty about what constitutes a "work task." Members worry that they will be fired for even checking their email to see if there are any new directives.

4.

10. Some of the Employee Association's members have worked at the CFPB through each administration change since the CFPB's inception, and some members have worked at other government agencies through earlier administrative transitions, as well. According to these members, the effect of the stop-work order on the ability of Bureau to perform its statutory functions is unlike anything they have witnessed before in federal service. For example, according to these members, previous transitions did not involve the mass firing of probationary and term employees for reasons unrelated to performance, the placement of nearly all remaining employees on administrative leave, the closure of agency offices, the widespread cancellation of contracts that are necessary to carry out statutory functions, an order to stop all work tasks unless specifically authorized, or the complete or near-complete stoppage of core statutory functions like enforcement and supervision work.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 27, 2025, in El Cerrito, CA.

/s/ *Christina Coll*
Christina Coll