IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL TREASURY EMPLOYEES UNION, *et al.*,<br>　　　　*Plaintiffs*,<br>　v.<br>RUSSELL VOUGHT, in his official capacity as Acting Director of the Consumer Financial Protection Bureau, *et al.*,<br>　　　　*Defendants*. | Case No. 25-cv-381-ABJ |

**DECLARATION OF DEEPAK GUPTA**

I, Deepak Gupta, declare:

1. This Court's Order of February 14—which remains in place until the Court decides the motion for a preliminary injunction—provides that the defendants in this case "shall not delete, destroy, remove, or impair any data or other CFPB records," including data on "any database or information system controlled by, or stored on behalf of, the Consumer Financial Protection Bureau," regardless of whether that data is stored "on the CFPB's premises, on physical media, on a cloud server, or otherwise." ECF 19.

2. Earlier this week, the plaintiffs received information from multiple sources that the defendants were rushing to finalize the termination of the vast majority of the contracts that support the CFPB's operations—even instructing contracting officers to disregard normal procedures to meet an accelerated and self-imposed timeline. *See* Charlie Doe Decl. ¶ 11. These contracts were being terminated without any effort to ensure data preservation. *Id.* ¶ 12. If not halted, the plaintiffs were concerned that this would result in the irretrievable loss and impairment of critical CFPB data before the hearing on March 3. *See id.*; Third Meyer Decl. ¶¶ 2–10.

3. In addition, the plaintiffs were concerned that this rush to finalize contract terminations before the March 3 hearing would make it impossible for the Court to award a

preliminary injunction rescinding the contract terminations. That's because once a contract's termination is finalized, that termination cannot be rescinded. Charlie Doe Decl. ¶ 10. The week the plaintiff filed this lawsuit, between February 11 and February 14, 2025, the Bureau sent notices of termination on the vast majority of its contracts, including all contracts related to enforcement, supervision, external affairs, and consumer response—granting contracting officers overtime, while most of the rest of the Bureau was under a stop-work order, to get it done as quickly as possible. *Id.* ¶ 5. Those notices stopped work on the contracts, but further steps are required to fully terminate the contracts. *Id.* ¶¶ 8–9. Until those steps are taken, the termination can be rescinded. *See id.* ¶¶ 9–10. But once that termination is completed, the contract cannot be reinstated; the procurement process must start all over again—a process that can take six months to a year or more. *Id.* ¶ 10. So if the defendants succeeded in finalizing the cancellations before the hearing, this Court could not order that the contracts be reinstated. That would hobble the Bureau in performing its core functions, not just during the pendency this suit, but long thereafter.

4. Immediately upon receiving reliable information that the CFPB was engaging in an effort to finalize contract terminations as quickly as possible, I, along with my colleague Jennifer Bennett, called counsel for the defendants, Brad Rosenberg. We informed Mr. Rosenberg of what we had learned, and asked if the defendants would agree to pause all contract cancellations pending a ruling on the preliminary injunction, to avoid the need for additional emergency litigation before this Court. Mr. Rosenberg agreed to look into the matter.

5. A few hours later, he informed us by phone—with his colleague Liam Holland on the line—that the defendants would agree to pause the cancellations. I suggested that we file a joint stipulation with this Court to amend its February 14, 2025 Order to add our agreed-upon suspension of contract terminations pending the preliminary injunction ruling. He replied that

while the defendants were willing to agree to such a suspension, they were not willing to ask this Court to amend its Order to include that agreement. Because the government's brief was due that day, Mr. Rosenberg requested that we discuss how to memorialize the agreement the following morning.

6. After the call, I documented my understanding of our agreement in an email that I sent to Mr. Rosenberg. A true and correct copy of that email is attached as **Exhibit A.**

7. The following morning, my colleague, Jennifer Bennett, and I, had another call with Mr. Rosenberg and his colleague, Liam Holland, to again discuss how to memorialize the agreement. Mr. Rosenberg reiterated that the defendants would agree to suspend contract terminations, but stated that they would only do so until the March 3 hearing—not until this Court ruled on the preliminary injunction order. And he reiterated that the defendants were unwilling to consent to a request that this Court amend its February 14 Order to include that agreement. In an effort to avoid additional emergency motion practice, the plaintiffs agreed that the defendants could memorialize their agreement in an email and that the suspension would last through the March 3 hearing, when the plaintiffs could raise the issue with the Court.

8. Later that day, Mr. Rosenberg sent me an email "confirm[ing] that, as of yesterday afternoon, [the CFPB] has frozen and will continue to freeze any and all termination actions regarding its contracts, but as we discussed, that freeze will only extend through Monday." He stated, "[o]f course, the parties can raise the issue at Monday's PI hearing, and the court can figure out how to address it from there." Mr. Rosenberg then added a limitation on the defendants' agreement that they had not previously discussed: "Also, and as you may have seen in our opposition brief, CFPB and its landlord may terminate the lease on its headquarters building. It is

far from clear to us that any such termination will happen imminently, but we do not construe the freeze to apply to CFPB's lease." A true and correct copy of this email is attached as **Exhibit B.**

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed in Washington, DC  /s/ *Deepak Gupta*
February 27, 2025  Deepak Gupta