IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL TREASURY
EMPLOYEES UNION, *et al.*,
                        *Plaintiffs*,

    v.

RUSSELL VOUGHT, in his official capacity
as Acting Director of the Consumer Financial
Protection Bureau, *et al.*,

                 *Defendants*.

Case No. 25-cv-0381-ABJ

**DECLARATION OF PEYTON DIOTALEVI**

I, Peyton Diotalevi, declare as follows:

1.       I am National Counsel for the National Treasury Employees Union in NTEU's

Washington, D.C. Field Office. I have worked at NTEU since 2010.

2.       NTEU represents approximately 160,000 bargaining-unit employees across 37

departments and agencies. I supervise a staff of five attorneys in NTEU's Washington, D.C. Field

Office who provide representational advice and guidance to bargaining-unit employees in 28

NTEU chapters, including NTEU Chapter 335. NTEU Chapter 335 exclusively represents

bargaining-unit employees at the Consumer Financial Protection Bureau.

3.       By virtue of my job duties, I am familiar with the details of NTEU's relationships

with the chapter leaders, members, and bargaining-unit employees of NTEU Chapter 335. The

statements made in this declaration are based on my personal knowledge or information available

to me through my duties at NTEU.

4.       ***Mass Firings and Administrative Leave.*** On February 13, 2025, as the

memorandum in support of a temporary restraining order in this case was being finalized, NTEU

began receiving word that mass firings at the CFPB had already begun. The Bureau had already

1

fired all of its probationary employees on February 11. And by the end of February 13, it had fired all of its term employees. My understanding, based on the accounts of multiple people with direct knowledge, was that the Bureau was planning to fire virtually all of its remaining employees the next day, February 14. That was forestalled only by this Court's order that same day, temporarily prohibiting the CFPB and Acting Director Russell Vought from initiating any further mass terminations. Following the issuance of this Court's order, Human Capital Operations Manager Roland Jacob sent an email to all remaining CFPB staff placing them on "administrative leave until otherwise instructed." A true and correct copy of that email is attached as **Exhibit A**. Most CFPB employees remain on administrative leave.

5.      I am aware that some employees have requested authorization to work despite the stoppage, and those requests have gone ignored.

6.      ***"Tip Line."*** The CFPB has now set up a "Tip Line" to report any "violation[s] of Acting Director Russ Vought's stand down order."[1] Inverting the ordinary situation, in which the public might complain about fraud or deceit by lenders or debt collectors, this tip line asks the lenders or debt collectors to report if *they* are "being pursued by CFPB enforcement or supervision staff." In all of my years representing federal employees, I have never before seen an agency ask the public to report a government employee for doing their job. In response to a reporter questioning whether it was really true that "the CFPB appears to have set up" such a tip line, Vought responded, "Yes, we have."[2]

---

[1] https://x.com/cfpb_tipline/ ("Are you being pursued by CFPB enforcement or supervision staff, in violation of Acting Director Russ Vought's stand down order? If so, DM us or send an email.").

[2] https://x.com/russvought/status/1890105212230349130.

7.    ***"Impending Separation[s]."*** Following the mass terminations of term and probationary employees—and while this Court's order prohibiting further mass firings was in place—anyone who sent an email to CFPB's Human Resources received an auto-reply stating that Human Resources was "working diligently with the agency during this transition to provide necessary documents related to your recent *or impending* separation." That auto-reply still appears to be on as of this writing. A true and correct copy of that email is attached as **Exhibit B.**

8.    ***D.C. Headquarters Closure.*** On February 9, 2025, a Sunday, the CFPB closed its D.C. headquarters, with no notice to the union or to employees. Some NTEU members were still in the building working when it was closed down. Because the closure took place on a Sunday, though, most employees who regularly work at headquarters were not in the building. As a result, they could not recover any of their personal belongings, identify important records for document-retention purposes, or secure data. The headquarters building has remained closed to CFPB employees since. However, the daycare and coffee shop remained open and were open as of the date of the filing of this declaration.

9.    I have reviewed Adam Martinez's declaration, filed in support of the defendants' opposition to a preliminary injunction. He states that he was "advised by" unspecified "new leadership" that the D.C. headquarters "would be closed" starting February 10, 2025, "due to safety concerns." ECF 31-1 ¶ 12. The email sent by Mr. Martinez to employees advising them of the building closure did not mention anything about safety concerns. *Id.*, Ex. E**.** The leadership of the CFPB bargaining unit—which ordinarily would be informed of such concerns—was also not

notified of any safety concerns. The closure did, however, coincide with the presence of DOGE employees in the building going through the agency's records.[3]

10.    Mr. Martinez states that on February 7, 2025, a single employee disrupted a meeting. *Id.* ¶ 7. Mr. Martinez was not present at the meeting. He instead relies on an incident report, created shortly before his declaration was submitted to this Court—weeks after the incident took place. *Id.*, Ex. B. NTEU was informed about the incident soon after it occurred, and my understanding of the events diverges from Mr. Martinez's recounting. I am not aware of (and neither Mr. Martinez nor the incident report identifies) any actual threat posed by this employee— or any reason that a single employee interrupting a single meeting would necessitate closing a major federal agency's Washington, D.C. headquarters building for weeks. In fact, the building remained open the rest of that day and the following day.

11.    Mr. Martinez states that on February 7, 2025, NTEU "employees began protesting outside of the CFPB Headquarters building." ECF 31-1 ¶ 8. I believe that statement to be false. To my knowledge, no CFPB employees protested outside the building that day. There were a few members of the public—less than a dozen—who, on February 7, protested the shutdown of the CFPB. A reporter took a picture of the protest, which shows about four unidentified people in front of the building.[4]

12.    Indeed, the day after the government's response brief was filed in this case, the *American Banker*—a banking-industry trade publication that closely tracks events at the CFPB— reported that the government, in reliance on the Martinez declaration, had "falsely claimed that it

---

[3] *See* Nancy Cook and Joshua Green, *Musk Team's Blitz on Consumer Financial Agency Unsettles Trump Allies*, Bloomberg (Feb. 22, 2025), https://www.bloomberg.com/news/articles/2025-02-22/trump-allies-unsettled-by-musk-s-doge-blitz-on-cfpb .

[4] https://bsky.app/profile/hamiltonnolan.bsky.social/post/3lhmc5xlx7k2r.

closed the CFPB's Washington D.C. headquarters in response to protests by employees — even
though the protests happened only after the office was shuttered."[5]

13.     The other protests that Mr. Martinez identifies were attended by NTEU members,
but they took place after the building had already been closed. And, to my knowledge, they were
entirely peaceful. Members of Congress even participated. Mr. Martinez does not identify—and I
am unaware of—any evidence that these peaceful protests posed any safety threat to the CFPB, its
employees, or the public. If they had, CFPB Facilities would have been required to notify chapter
leadership, who would, in turn, have alerted NTEU. Moreover, as a practical matter, the CFPB
headquarters building is located directly across the 17th street security gate to the White House
complex, at 17th and G Streets. If a safety or security threat were posed by any nearby protest, one
would expect a rapid police response given such close proximity to the White House—and no such
response occurred during these protests.

14.     ***Closure of All CFPB Regional Offices.*** Mr. Martinez's declaration omits that not
only did the CFPB close its headquarters, it also closed its four regional offices across the country.
The email from Mr. Martinez announcing the closures did not identify any safety concern, or any
other rationale, that would justify closing these regional offices. A true and correct copy of that
email is attached as **Exhibit C.**

15.     ***Termination of D.C. and Regional Leases.*** I have seen an email sent on February
21, 2025, from a CFPB Realty Officer, stating that by that date, the "CFPB's main focus" was
"moving out of [its] large headquarters building" on a "a very, very tight timeframe ... (30 days)."
The February 21 email also states that the Bureau will move out "of the regional offices with San

---

[5] Kate Berry, *Justice Dept. insists there will continue to be a CFPB*, American Banker, February 25, 2025, https://www.americanbanker.com/news/justice-dept-insists-there-will-continue-to-be-a-cfpb

Francisco being the first one." The CFPB has since admitted that it is seeking to quickly terminate its lease on the D.C. headquarters.

16.     On February 26, 2025, the Bureau allowed some managers entry into the headquarters building to identify records, collect their personal belongings, and, if they wished, to collect their employees' belongings. To my knowledge, the managers were only informed that day that they would be permitted into the building.

17.     Bargaining-unit employees were not given an opportunity to enter the building. Some NTEU members have been told that their personal belongings will be boxed up, and at some point they will be given a fifteen-minute time slot in which they can come pick them up. Others have been given no guidance at all. To my knowledge, there has been no instruction about what to do about any sensitive records or data.

18.     Just this morning, CFPB Facilities sent an email to the terminated probationary and term employees stating that "the Operations team has packed up your personal belongings for pickup at" the headquarters building. It instructs that "[t]o retrieve your personal belongings, you must schedule an appointment by emailing" "[y]our full name," where the property is located, and a time during business hours on March 3-6 (i.e. next week). The email states that items cannot be shipped. And "[e]xcept in special situations, items that are not picked up by March 6, 2025 will be considered abandoned and will be disposed of."  A true and correct copy of this email is attached as **Exhibit D.**

19.     Although the email instructs former employees that they may return CFPB equipment like laptops, iPhones, and secure thumb drives during the same window, it does not provide any instructions for those who cannot do so. Nor does it say anything about record retention, data preservation, or data security.

20.     This morning, CFPB employees also received an advisory that as of February 28, 2025, the CFPB's Virtual Desktop—that is, the program that allows employees to securely log in to the CFPB system when they are not at a CFPB computer—will no longer be available. A true and correct copy of this email is attached as **Exhibit E**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 27, 2025, in Alexandria, Virginia.

/s/ *Peyton Diotalevi*
Peyton Diotalevi

# Exhibit A

**From:** ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮
**Subject:** Updated Timekeeping Instructions for PP03
**Date:** February 14, 2025 at 4:15 PM
**To:**
**Cc:** ▮▮▮▮▮▮▮▮▮▮▮▮

Colleagues,

On Monday, February 10th CFPB's Acting Director issued guidance for Bureau staff to pause work tasks. In accordance with the Acting Director's guidance employees should exercise administrative leave until otherwise instructed. For staff who have been asked to work by the Acting Director, the Chief Legal Officer, or another designee (i.e. through their leadership chain, etc.) they should record that time as they normally would. All time not in a working status should be reflected in webTA under the "Admin/Excused Absence" leave transaction category.

Please refer questions to the CFPB_WorkLife@cfpb.gov box so the Office of Human Capital can provide clarifying guidance as needed.

V/R

Roland Jacob
Human Capital Operations Manager
Systems and Operations | Office of Human Capital
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Consumer Financial Protection Bureau
**consumerfinance.gov**

Confidentiality Notice: If you received this email by mistake, you should notify the sender of the mistake and delete the email and any attachments. An inadvertent disclosure is not intended to waive any privileges.

# Exhibit B

**From:** **CFPBHROps** CFPBHROps@fiscal.treasury.gov
**Subject:** Automatic reply: question re separation papers
**Date:** February 27, 2025 at 9:27 AM
**To:** █████████████████

We are working diligently with the agency during this transition to provide necessary documents related to your recent or impending separation.

Please provide a personal email address and updated mailing address to ensure timely and effective communications.

All separated employees will be receiving a copy of their SF-50, Notice of Personnel Action, as well as a separation packet with information regarding unemployment, benefits and lump sum annual leave payment, if applicable.

Employees will have a 31-day extension of their health insurance from the date of separation provided by your health insurance carrier at no cost to you. Dental and Vision benefits will terminate upon the date of separation.

Thank you for your patience.

# Exhibit C



**From:** ███████████ ███████████ ██
**Subject:** Please Read: CFPB Regional Office Operating Status (Week of 2/17)
**Date:** February 17, 2025 at 1:21 PM
**To:** ██████████████████████████
███████████████████████
██████████████████████

(This message is sent on behalf of Adam Martinez, Chief Operating Officer, for CFPB Regional Office Staff and Contractors)

Dear Colleagues:

The CFPB Regional Offices will remain closed this week (2/17-2/21).  Employees and contractors approved to work should do so remotely unless otherwise instructed.

Thank you.

Adam

Adam Martinez
Chief Operating Officer



**consumerfinance.gov**

Confidentiality Notice: If you received this email by mistake, you should notify the sender of the mistake and delete the email and any attachments.  An inadvertent disclosure is not intended to waive any privileges.

# Exhibit D

From: ██████████████
Date: Thu, Feb 27, 2025 at 11:25 AM
Subject: Pickup of Personal Belongings and Return of Equipment from the CFPB HQ
To:
CC: ████████████████████

Good afternoon,
We recognize that you have personal property, work materials, and federal records in your office or cubicle. To prepare to vacate the building, the Operations team has packed up your personal belongings for pickup at 1700 G Street. They are working closely with your division's leadership to take great care with your personal property, confidential matters, federal records, and other items.

To retrieve your personal belongings, you must schedule an appointment by emailing the following information to ████████████████

- Your full name
- Your designee, if needed (see below for additional details)
- Where your property is located (e.g., office/cubicle number, 6th floor locker number, pantry)
- A time on March 3rd, 4th, 5th, or 6th between 8am-4pm
- Any additional details related to your personal property that can help us identify or properly handle them (e.g., medications in the refrigerator that need to remain cold, personal papers that contain private information, etc.)

If you have equipment to return to the CFPB, you may return your IT equipment and PIV card during this visit. Please note that you will:
- Need to return all laptops, iPhones, secure thumb drives and any other equipment with an asset tag
- Not need to return printers, keyboard, mice, monitors, docking stations, laptop bags/backpacks, headsets, laptop locks, filing cabinets, paper shredders, or cables
- Receive a hardware asset receipt identifying the equipment you return

After scheduling an appointment, you will receive a confirmation email with additional details. Except in special situations, items that are not picked up by March 6, 2025 will be considered abandoned and will be disposed of. While we cannot ship items to you, you may designate another staff member with a valid identification to pick up your items on your behalf.

If driving, consider parking at a public parking garage, on the street, or the loading dock area on F Street. The parking garage at 1700 G Street will not be open for these pickups.

We recognize that this is a difficult situation and here to support your transition.

# Exhibit E

**From:**     Service Desk (CFPB)
**Subject:**  Service Advisory: Virtual Desktop Access Unavailable After 2/28/2025
**Date:**     Wednesday, February 26, 2025 10:14:16 AM

---

**What's Happening?** The Citrix Virtual Desktop will be unavailable after Friday, February 28, 2025, at 11:59 PM EST.  You are receiving this notification because you logged into the Virtual Desktop in the past 90 days. Access to the Virtual Desktop via https://work.cfpb.gov and https://csf.cfpb.local will no longer be available.

**When:** Friday, February 28, 2025, at 11:59 PM EST

**Need More Info?** Please refer any questions or concerns regarding this event to the CFPB Service and Support Portal, the CFPB Service Desk at 202-435-7777 (external), x57777 (internal), or email ServiceDesk@cfpb.gov.