IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NATIONAL TREASURY EMPLOYEES UNION,** *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> **RUSSELL VOUGHT, in his official capacity as Acting Director of the Consumer Financial Protection Bureau,** *et al.*, <br><br> *Defendants*. | No. 1:25-cv-00381-ABJ |

**SUPPLEMENTAL DECLARATION OF ADAM MARTINEZ**

1.  My name is Adam Martinez. I am currently employed at the Consumer Financial Protection Bureau ("CFPB" or "the Bureau") serving as its Chief Operating Officer ("COO") and Acting Chief Human Capital Officer. I previously submitted a declaration in this matter dated February 24, 2025. I make this declaration based upon my personal knowledge and information provided to me in the course of my official duties.

2.  For purposes of this declaration, I have reviewed Plaintiffs' Reply Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction, ECF No. 40; all of the supplemental declarations attached to Plaintiffs' Motion for Leave to File Supplemental Attachments in Support of their Motion for a Preliminary Injunction, ECF No. 38; as well as the supplemental declarations attached to Plaintiffs' Notice of Corrected Attachments, ECF No. 41. I provide this declaration to clarify and expand upon my previous testimony in light of these materials.

3.  I have reviewed the declaration that Alex Doe submitted in this case. In her testimony, A. Doe describes deliberative and predecisional events occurring during the week of February 10, 2025, including a statement where I referenced the "closure of the agency." I have also reviewed the declaration that Blake Doe submitted in this case. In his testimony, B. Doe also describes deliberative and predecisional events occurring during the week of February 10, 2025, including a statement where I referenced a "wind down mode." A. Doe's testimony and B. Doe's testimony regarding my statements are not inaccurate. Prior to Russell Vought's designation as Acting Director of CFPB, agency staff had received guidance from DOGE-associated personnel consistent with those statements, which I believed at the time to reflect the position of agency leadership, and continued to believe to reflect agency leadership's position for a brief time thereafter.

4.     In the short time since then, and by the date that I submitted my earlier declaration, a great deal has evolved at the CFPB.  On the evening of February 7, 2025, Russell Vought was named Acting Director of the agency.  Rather than a closure of the agency, Acting Director Vought's new leadership has focused on running a substantially more streamlined and efficient bureau, refocusing its priorities, and "right sizing" the agency.  But, from my perspective, a very fluid situation continued during the week of February 10, 2025, as new leadership started to take control.  Time was needed for new leadership to refocus the Bureau.  By the time of my earlier declaration, however, the situation was somewhat more stable.  And now, the Acting Director and Chief Legal Officer are taking time to assess, listen, and explore the state of the Bureau.  Based on that assessment, new leadership continues to believe that there are substantially more employees than appropriate for a "right-sized" CFPB.  But the new leadership, including the Chief Legal Officer, have taken a methodical approach to handling the Bureau's operations and responding to senior executives who have recommended or requested guidance to perform each of the CFPB's critical statutory responsibilities.  Moreover, I have personally engaged with several of my colleagues to guide them through navigating the change and seeking clarification where and when its needed.

5.     Notably, the President has nominated Jonathan McKernan to serve as a permanent Director of the CFPB.  Mr. McKernan testified before the Senate Banking, Housing, and Urban Affairs Committee on February 27.  I believe that having a Senate-confirmed permanent Director for the CFPB will further ensure that the Bureau carries out its statutory responsibilities.

6.     B. Doe's testimony refers to an email dated February 11, 2025, in which I stated that the agency's Chief Financial Officer (CFO) had been in communication with the Federal Reserve.  As stated in my original declaration, the Bureau has not attempted to transfer any of its funds back to the Federal Reserve.  Moreover, I am not aware of a mechanism to transfer funds back to the Federal Reserve.  That said, CFPB's CFO did receive an inquiry about whether "excess" funds from the Bureau Fund could be transferred back to the Federal Reserve. He shared that as far as he was aware, it could not, and that the only mechanism in statute to account for unobligated funds is to offset future requests but, pursuant to that inquiry, he would conduct research, including communicating with the Federal Reserve to determine if there was any authority or mechanism from the Federal Reserve's perspective that he was unaware of.  Based on that research, he determined that there indeed is no authority or mechanism to transfer excess funds back to the Federal Reserve, to transfer excess funds to the Federal Reserve's control, or to transfer excess funds to the control of any other entity.  The agency has therefore not attempted to do so.  The Bureau only transfers funds for the payment of expenditures incurred in the normal course of Bureau activities pursuant to its statutory obligations.  In fact, pursuant to Dodd Frank, the Bureau Fund is a separate fund established in the Federal Reserve, and most of the CFPB funds (both the Bureau Fund and the Civil Penalty Fund) reside at the Federal Reserve. Routinely the Federal Reserve completes cash disbursements at the CFPB's request to Treasury-held CFPB accounts for CFPB operating expenses.

7.  I have reviewed the declaration that Drew Doe submitted in this case. D. Doe testifies that unnamed "Senior Executives" told staff that the CFPB would "not exist[.]" D. Doe Decl. ¶ 7. In addition to not identifying the individuals, D. Doe does not identify the date when he claims these statements were made. D. Doe does not testify that those statements were premised on directives from Acting Director Vought or the CFPB Chief Legal Officer and I understand those statements to be inconsistent with their directives. It is also inconsistent with the President nominating a permanent Director of CFPB.

8.  I have reviewed the declaration that Matthew Pfaff submitted in this case, which is dated February 26, 2025. On February 27, 2025, the CFPB Chief Legal Officer activated work related to compliance with the agency's critical statutory responsibilities in the area of the Office of Consumer Response. Thus, as of February 27, 2025, members of the Escalated Case Management team, for example, are working. These actions and others are inconsistent with D. Doe's testimony suggesting that the agency will eliminate all positions except for five positions identified in the Dodd-Frank Act. Again, I am not aware of the identity of the "multiple Senior Executives" referenced in D. Doe's testimony, and D. Doe does not testify that those statements were premised on directives from Acting Director Vought or the CFPB Chief Legal Officer. I understand the statement referenced in paragraph five of D. Doe's declaration regarding an "intention of the leadership" to reduce CFPB staff to "everyone but the five positions required by the Dodd-Frank Act" to be inconsistent with Acting Director Vought and the Chief Legal Officer's directives.

9.  It is correct that the CFPB Ombudsman Office may not replace or directly resolve work conducted by the Student Loan Ombudsman position. And as I have previously testified, that position is currently vacant. But consumers may always utilize the CFPB Ombudsman Office for support. For example, if a consumer attempts to contact the Student Loan Ombudsman and receives no response, the consumer may always contact the CFPB Ombudsman to point out the non-responsiveness of the office and seek support. Again, the CFPB Ombudsman Office helps ensure that the CFPB continues to engage with the public.

***

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Washington, DC this 2nd day of March, 2025.

_____
Adam Martinez
Chief Operating Officer