IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL TREASURY
EMPLOYEES UNION, *et al.*,

                    *Plaintiffs*,

    v.

RUSSELL VOUGHT, in his official capacity
as Acting Director of the Consumer Financial
Protection Bureau, *et al.*,

                  *Defendants*.

Case No. 25-cv-381-ABJ

**DECLARATION OF GREER DOE**

I, Greer Doe, declare:

      1.      I am a management official at the Consumer Financial Protection Bureau (CFPB). The statements in this declaration are based on my personal knowledge. I am making this declaration to offer a written record of what I have observed concerning the unprecedented, ongoing stoppage of critical and statutorily required work by the CFPB up through today and to respond to the incorrect suggestion in the Second Declaration of Adam Martinez that the Bureau is "perform[ing] each of CFPB's critical statutory responsibilities." ECF 47-1 ¶ 4. I make this declaration pseudonymously out of concern for retaliation. If requested, I will share my name and position ex parte and under seal.

      2.      The Consumer Financial Protection Act of 2010, the part of the Dodd-Frank Act that establishes the CFPB, mandates that the Bureau continuously carry out certain functions to protect consumers and serve the public.[1] Among other things, the CFPB is required to have a consumer-complaint collection and response system and a public-facing website. *See* 12 U.S.C. §

---

[1] A partial list is available here: *Statutory Requirements for Continuous Operation of the CFPB*, Feb. 13, 2025, https://protectborrowers.org/wp-content/uploads/2025/02/CFPB-Statutory-Requirements-2.13.25.pdf (attached as **Exhibit A**)

5493(b)(3). The CFPB is also required by statute to have specific named offices with key functions. Among other things, the statute requires the Bureau to have an Office of Student Loan Ombudsman (12 U.S.C. § 5535(a)), an Office of Servicemember Affairs (12 U.S.C. § 5493(e)(1)), an Office for Older Americans (12 U.S.C. § 5493(f)(1)), an Office of Financial Education (12 U.S.C. § 5493(d)(1)), and an Office of Community Affairs (12 U.S.C. § 5493(b)(2))—all offices that must provide specified services to consumers and other Bureau stakeholders, such as consumer groups and state and local governments and federal government partners, on a timely basis.

3.    Since Acting Director Vought's work-stoppage directive on February 10, to the best of my knowledge, no work has been done in the offices named above—and that remains true as of today. This means that the Office of Service Member Affairs is not assisting military service members, veterans, and their families. Nobody is performing the statutorily required complaint monitoring function for service members and veterans who are entitled to our help when they are scammed or defrauded, sometimes because they are deployed overseas or are otherwise rendered vulnerable as a result of their service to the Nation. The Office of Older Americans is not providing any services to older consumers who may be victims of elder abuse. The Student Loan Ombudsman was terminated on February 13 without the naming of a replacement, which means that people with student-loan problems cannot receive the timely assistance that the statute requires. The Office of Financial Education and the Office of Community Affairs are likewise at a standstill. As described in the declaration of Director of Digital Services Adam Scott, the CFPB's homepage—most Americans' first point of contact with the CFPB—was deleted at the direction of Acting Director Vought and remains down. And, as detailed in the declaration of Matthew Pfaff, the Chief of Staff of the Office of Consumer Response, the CFPB's consumer-complaint and response system remains inoperable because of the work stoppage. For individual consumers;

consumer groups and legal aid providers; federal, state, and local government partners; and other CFPB stakeholders, the Bureau has gone dark.

4.      On February 10, 2025, all CFPB employees—including myself—received an email from Acting Director Vought directing all CFPB employees to "not perform any work tasks" and to "stand down from performing any work tasks."  The February 10 email directed employees that, "If there are any urgent matters, please alert me through Mark Paoletta, Chief Legal Officer, to get approval in writing before performing any work task." This February 10 email followed an earlier email on February 8, 2025 from Acting Director Vought —also sent to all CFPB employees— ordering a stoppage of CFPB work, "unless expressly approved by the Acting Director or required by law." This February 10 email prohibited "any work tasks" and did not include any exception for work "required by law" and it directed all employees to otherwise "stand down from performing any work tasks." This lack of any exception for legally required work was widely noted and implemented across the Bureau. Following the February 8 email, virtually all work stopped, including statutorily required functions. Nobody believed they truly had authority to continue tasks unless specifically authorized to do so by Vought. The Febraury 10 email then cemented this understanding.

5.      Acting Director Vought's February 10 email was not ambiguous. Like my colleagues in my office and across the Bureau, I interpreted the email as an express directive to cease any and all work, regardless of whether it was required by statute. Other CFPB management repeatedly expressed to me the same understanding.

6.      Upon receipt of Acting Director Vought's February 10, 2025 email, all work in my office ceased, including all work statutorily required under the CFPA. This has meant that critically important work that is required of the CFPB has been subject to a complete work stoppage,

including key areas of work on which consumers and other Bureau stakeholders depend. The terminations of nearly 200 CFPB employees that followed on February 11 and 13 further ensured that no work would proceed, with staff expressing concern to me that they might be fired for even checking their email or requesting authorization to complete statutorily required work.

7.      Seventeen days later, late on Friday, February 27, 2025, Adam Martinez, the Chief Operating Officer (COO) of the CFPB sent an email regarding work authorization. This email was addressed only to senior management and, to my best of my knowledge, only to senior management in a single CFPB division (Research, Monitoring, and Regulations). The email was sent on the evening that the plaintiffs' reply brief and supplemental declarations in this case were due to be filed. In this new email, COO Martinez stated that "statutorily required work and/or work required by law are authorized." COO Martinez explicitly referenced Acting Director Vought's February 8 email ordering a stoppage of work "unless expressly approved by the Acting Director or required by law," but did not reference Acting Director Vought's February 10 email ordering all work to stop, with no distinction or exception for statutorily required work. The February 10 email, however, has not been rescinded or modified, and so COO Martinez's email has generated confusion.

8.      Because of uncertainty about the meaning of COO Martinez's February 27 email—particularly its failure to address the complete work stoppage order from the Acting Director's February 10 email—no work in my office has restarted.

9.      Staff in my office have privately reported extreme anxiety to me about performing any work not expressly authorized by the Acting Director, out of concern that they may be terminated for insubordination in light of his February 10 work stoppage order, particularly given the chilling effect of the mass terminations on February 11 and 13, for no apparent cause, and

internal reports that mass layoffs were imminent. They have specifically expressed concern that they might be terminated for insubordination in light of the February 10 work stoppage order.

10.    I do not take COO Martinez's February 27 email as a sincere attempt to ensure that the Bureau fulfills its statutory requirements under the CFPA. Rather, I interpret COO Martinez's email as a somewhat transparent effort—in advance of a hearing in this Court—to create the appearance that statutorily required work is taking place across the Bureau when in fact it is not.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 2, 2025.                                 _/s/ Greer Doe_
                                                          Greer Doe

 

## Statutory Requirements for Continuous Operation of the CFPB

February 13, 2025

*Persis Yu, Student Borrower Protection Center*
*Erin Witte, Consumer Federation of America*

The Consumer Financial Protection Bureau (CFPB), created in the devastating wake of the 2008 financial crisis, is an independent agency that enforces consumer protection laws and protects people who have been cheated by financial companies. This memorandum summarizes the many responsibilities and obligations that the CFPB is legally obligated to perform. Listed below are 87 such provisions in Title 12 of the U.S. Code – a non-exhaustive list of the CFPB's legal responsibilities and obligations, with a short description of each. In addition to those on this list, there are additional responsibilities and obligations, including in Title 15 of the U.S. Code. *See, e.g.*, 15 U.S.C. § 1603 note (requiring the CFPB annually to make certain inflation adjustments).

The overwhelming majority of these items are responsibilities or obligations that the law requires the CFPB to continuously satisfy, while a relatively small number are one-time mandates that the CFPB has already satisfied. Additionally, the list does not include certain rulemakings that the CFPB has interpreted as required under sections 1033 (personal financial data rights) and 1071 (small business lending) of the Consumer Financial Protection Act.[1]

Of the **87** provisions surveyed:
- **13** require the CFPB to continuously operate specific offices/departments (such as an Office of Servicemember Affairs and Office of Financial Protection for Older Americans);
- **14** involve required rulemaking activities (such as issuing a notice of proposed rulemaking when a majority of States has enacted a resolution);
- **13** involve required reports or reporting (such as reporting at least annually on emerging risks to consumers);
- **10** involve required public engagement activities (such as responding timely to consumer complaints);

---

[1] Although the CFPB has interpreted these provisions as imposing mandatory rulemaking requirements, stakeholders have made strong arguments that covered entities that are not currently in compliance with these statutory provisions are plainly in violation of federal law. *See Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) (declining to defer to agency's interpretation of statutory language).

- **8** involve requirements for the Bureau's enforcement, supervision, or examination activities (such as conducting periodic examinations of nonbank entities);[2]
- **7** obligate assumption of other federal agencies' responsibilities (such as duties of the former Office of Thrift Supervision);
- **6** involve mandatory consumer disclosures (such as periodically creating materials for consumers to understand the nature and costs of real estate settlement services).
- **5** involve required inter-agency coordination;
- **3** involve required intra-Bureau coordination;
- **5** include mandatory labor protections for Bureau employees;
- **3** impose civil rights-related obligations; and
- **1** provides funding-related obligations.

---

[2] Statutes categorized below as pertaining to "enforcement" include those dealing with supervision and examinations.

**Provisions Enacted in 12 U.S.C. ch. 53, sub-ch. V "Bureau of Consumer Financial Protection"**

| Class | Statutory Mandate | Statutory Citation | Language |
|---|---|---|---|
| Rulemaking | Regulate all financial products and services | 12 U.S.C. § 5491(a) | [The Bureau] shall regulate the offering and provision of consumer financial products or services under the Federal consumer financial laws |
| Labor protections | Comply with federal labor protections | 12 U.S.C. § 5493(a)(4) | Chapter 71 of title 5 shall apply to the Bureau and the employees of the Bureau. |
| Statutory office | Maintain an ombudsman | 12 U.S.C. § 5493(a)(5) | (B) The ombudsman appointed in accordance with subparagraph (A) shall—<br>(i) act as a liaison between the Bureau and any affected person with respect to any problem that such party may have in dealing with the Bureau, resulting from the regulatory activities of the Bureau; and<br>(ii) assure that safeguards exist to encourage complainants to come forward and preserve confidentiality. |
| Statutory office | Maintain a Research Office | 12 U.S.C. § 5493(b)(1) | The Director shall establish a unit whose functions shall include researching, analyzing, and reporting on—<br>(A) developments in markets for consumer financial products or services, including market areas of alternative consumer financial products or services with high growth rates and areas of risk to consumers;<br>(B) access to fair and affordable credit for traditionally underserved communities;<br>(C) consumer awareness, understanding, and use of disclosures and communications regarding consumer financial products or services;<br>(D) consumer awareness and understanding of costs, risks, and benefits of consumer financial products or services;<br>(E) consumer behavior with respect to consumer financial products or services, including performance on mortgage loans; and<br>(F) experiences of traditionally underserved consumers, including |

3

| | | | |
|---|---|---|---|
| | | | un-banked and under-banked consumers. |
| Statutory office | Maintain a Community Affairs Office | 12 U.S.C. § 5493(b)(2) | The Director shall establish a unit whose functions shall include providing information, guidance, and technical assistance regarding the offering and provision of consumer financial products or services to traditionally underserved consumers and communities. |
| Statutory office | Maintain an Office for collecting and tracking consumer complaints | 12 U.S.C. § 5493(b)(3) | The Director shall establish a unit whose functions shall include establishing a single, toll-free telephone number, a website, and a database or utilizing an existing database to facilitate the centralized collection of, monitoring of, and response to consumer complaints regarding consumer financial products or services. The Director shall coordinate with the Federal Trade Commission or other Federal agencies to route complaints to such agencies, where appropriate. |
| Reporting | Report to Congress annually re: received complaints | 12 U.S.C. § 5493(b)(3)(C) | The Director shall present an annual report to Congress not later than March 31 of each year on the complaints received by the Bureau in the prior year regarding consumer financial products and services. Such report shall include information and analysis about complaint numbers, complaint types, and, where applicable, information about resolution of complaints. |

| | | | |
|---|---|---|---|
| Reporting | Share complaint data with other regulators | 12 U.S.C. § 5493(b)(3)(D) | To facilitate preparation of the reports required under subparagraph (C), supervision and enforcement activities, and monitoring of the market for consumer financial products and services, the Bureau shall share consumer complaint information with prudential regulators, the Federal Trade Commission, other Federal agencies, and State agencies, subject to the standards applicable to Federal agencies for protection of the confidentiality of personally identifiable information and for data security and integrity. |
| Statutory office | Maintain an Office of Fair Lending and Equal Opportunity | 12 U.S.C. § 5493(c)(1) | The Director shall establish within the Bureau the Office of Fair Lending and Equal Opportunity. |
| Enforcement | Execute duties related to Fair Lending and Equal Opportunity | 12 U.S.C. § 5493(c)(2) | The Office of Fair Lending and Equal Opportunity shall have such powers and duties as the Director may delegate to the Office, including— (A) providing oversight and enforcement of Federal laws intended to ensure the fair, equitable, and nondiscriminatory access to credit for both individuals and communities that are enforced by the Bureau, including the Equal Credit Opportunity Act [15 U.S.C. 1691 et seq.] and the Home Mortgage Disclosure Act [12 U.S.C. 2801 et seq.]; (B) coordinating fair lending efforts of the Bureau with other Federal agencies and State regulators, as appropriate, to promote consistent, efficient, and effective enforcement of Federal fair lending laws; (C) working with private industry, fair lending, civil rights, consumer and community advocates on the promotion of fair lending compliance and education; and (D) providing annual reports to Congress on the efforts of the Bureau to fulfill its fair lending mandate. |
| Statutory office | Appoint an Assistant Director for Fair Lending & Equal Opportunity | 12 U.S.C. § 5493(c)(3) | There is established the position of Assistant Director of the Bureau for Fair Lending and Equal Opportunity, who— (A) shall be appointed by the Director; and (B) shall carry out such duties as the Director may delegate to |

5

| | | | |
|---|---|---|---|
| | | | such Assistant Director. |
| Statutory office | Maintain an Office of Financial Education | 12 U.S.C. § 5493(d)(1) | The Director shall establish an Office of Financial Education, which shall be responsible for developing and implementing initiatives intended to educate and empower consumers to make better informed financial decisions. |
| Public engagement | Execute duties related to Financial Education | 12 U.S.C. § 5493(d)(2) | The Office of Financial Education shall develop and implement a strategy to improve the financial literacy of consumers that includes measurable goals and objectives, in consultation with the Financial Literacy and Education Commission, consistent with the National Strategy for Financial Literacy, through activities including providing opportunities for consumers to access— (A) financial counseling, including community-based financial counseling, where practicable; (B) information to assist with the evaluation of credit products and the understanding of credit histories and scores; (C) savings, borrowing, and other services found at mainstream financial institutions; (D) activities intended to— (i) prepare the consumer for educational expenses and the submission of financial aid applications, and other major purchases; (ii) reduce debt; and (iii) improve the financial situation of the consumer; (E) assistance in developing long-term savings strategies; and (F) wealth building and financial services during the preparation process to claim earned income tax credits and Federal benefits. |

| Coordination | Coordinate with other units re: Financial Education | 12 U.S.C. § 5493(d)(3) | The Office of Financial Education shall coordinate with other units within the Bureau in carrying out its functions, including— (A) working with the Community Affairs Office to implement the strategy to improve financial literacy of consumers; and (B) working with the research unit established by the Director to conduct research related to consumer financial education and counseling. |
| --- | --- | --- | --- |
| Reporting | Report to Congress annually re: financial literacy activities | 12 U.S.C. § 5493(d)(4) | Not later than 24 months after the designated transfer date, and annually thereafter, the Director shall submit a report on its financial literacy activities and strategy to improve financial literacy of consumers to— (A) the Committee on Banking, Housing, and Urban Affairs of the Senate; and (B) the Committee on Financial Services of the House of Representatives. |
| Statutory office | Maintain an Office of Service Member Affairs | 12 U.S.C. § 5493(e)(1) | The Director shall establish an Office of Service Member Affairs, which shall be responsible for developing and implementing initiatives for service members and their families intended to— (A) educate and empower service members and their families to make better informed decisions regarding consumer financial products and services; (B) coordinate with the unit of the Bureau established under subsection (b)(3), in order to monitor complaints by service members and their families and responses to those complaints by the Bureau or other appropriate Federal or State agency; and (C) coordinate efforts among Federal and State agencies, as appropriate, regarding consumer protection measures relating to consumer financial products and services offered to, or used by, service members and their families. |

| | | | |
|---|---|---|---|
| Statutory office | Maintain an Office of Financial Protection for Older Americans | 12 U.S.C. § 5493(f)(1) | Before the end of the 180-day period beginning on the designated transfer date, the Director shall establish the Office of Financial Protection for Older Americans, the functions of which shall include activities designed to facilitate the financial literacy of individuals who have attained the age of 62 years or more (in this subsection, referred to as "seniors") on protection from unfair, deceptive, and abusive practices and on current and future financial choices, including through the dissemination of materials to seniors on such topics. |
| Statutory office | Appoint an Assistant Director for Protection of Older Americans | 12 U.S.C. § 5493(f)(2) | The Office of Financial Protection for Older Americans (in this subsection referred to as the "Office") shall be headed by an assistant director. |

| | | | |
|---|---|---|---|
| | | | The Office shall—<br>(A) develop goals for programs that provide seniors financial literacy and counseling, including programs that—<br>(i) help seniors recognize warning signs of unfair, deceptive, or abusive practices, protect themselves from such practices;<br>(ii) provide one-on-one financial counseling on issues including long-term savings and later-life economic security; and<br>(iii) provide personal consumer credit advocacy to respond to consumer problems caused by unfair, deceptive, or abusive practices;<br>(B) monitor certifications or designations of financial advisors who advise seniors and alert the Commission and State regulators of certifications or designations that are identified as unfair, deceptive, or abusive;<br>(C) not later than 18 months after the date of the establishment of the Office, submit to Congress and the Commission any legislative and regulatory recommendations on the best practices for—<br>(i) disseminating information regarding the legitimacy of certifications of financial advisers who advise seniors;<br>(ii) methods in which a senior can identify the financial advisor most appropriate for the senior's needs; and<br>(iii) methods in which a senior can verify a financial advisor's credentials;<br>(D) conduct research to identify best practices and effective methods, tools, technology and strategies to educate and counsel seniors about personal finance management with a focus on—<br>(i) protecting themselves from unfair, deceptive, and abusive practices;<br>(ii) long-term savings; and<br>(iii) planning for retirement and long-term care;<br>(E) coordinate consumer protection efforts of seniors with other Federal agencies and State regulators, as appropriate, to promote consistent, effective, and efficient enforcement; and |
| Public engagement | Execute duties related to Financial Protection for Older Americans | 12 U.S.C. § 5493(f)(3) | (F) work with community organizations, non-profit organizations, |

| | | | |
|---|---|---|---|
| | | | and other entities that are involved with educating or assisting seniors (including the National Education and Resource Center on Women and Retirement Planning). |
| Public engagement | Establish a Consumer Advisory Board | 12 U.S.C. § 5494(a) | (a) Establishment required<br>The Director shall establish a Consumer Advisory Board to advise and consult with the Bureau in the exercise of its functions under the Federal consumer financial laws, and to provide information on emerging practices in the consumer financial products or services industry, including regional trends, concerns, and other relevant information. |

| | | | |
|---|---|---|---|
| Public engagement | Seek out and appoint a range of consumer stakeholders to Consumer Advisory Board | 12 U.S.C. § 5494(b) | In appointing the members of the Consumer Advisory Board, the Director shall seek to assemble experts in consumer protection, financial services, community development, fair lending and civil rights, and consumer financial products or services and representatives of depository institutions that primarily serve underserved communities, and representatives of communities that have been significantly impacted by higher-priced mortgage loans, and seek representation of the interests of covered persons and consumers, without regard to party affiliation. Not fewer than 6 members shall be appointed upon the recommendation of the regional Federal Reserve Bank Presidents, on a rotating basis. |
| Public engagement | Hold regular meetings of the Consumer Advisory Board, at least twice a year | 12 U.S.C. § 5494(c) | The Consumer Advisory Board shall meet from time to time at the call of the Director, but, at a minimum, shall meet at least twice in each year. |
| Inter-agency Coordination | Coordinate with other regulators | 12 U.S.C. § 5495 | The Bureau shall coordinate with the Commission, the Commodity Futures Trading Commission, the Federal Trade Commission, and other Federal agencies and State regulators, as appropriate, to promote consistent regulatory treatment of consumer financial and investment products and services. |
| Reporting | Report to Congressional Committees semi-annually | 12 U.S.C. 5496(b) | The Bureau shall, concurrent with each semi-annual hearing referred to in subsection (a), prepare and submit to the President and to the Committee on Banking, Housing, and Urban Affairs of the Senate and the Committee on Financial Services and the Committee on Energy and Commerce of the House of Representatives, a report, beginning with the session following the designated transfer date. The Bureau may also submit such report to the Committee on Commerce, Science, and Transportation of the Senate. |

| | | | |
|---|---|---|---|
| Reporting | Address specific topics in semi-annual Congressional Reports | 12 U.S.C. § 5496(c) | The reports required by subsection (b) shall include—<br>(1) a discussion of the significant problems faced by consumers in shopping for or obtaining consumer financial products or services;<br>(2) a justification of the budget request of the previous year;<br>(3) a list of the significant rules and orders adopted by the Bureau, as well as other significant initiatives conducted by the Bureau, during the preceding year and the plan of the Bureau for rules, orders, or other initiatives to be undertaken during the upcoming period;<br>(4) an analysis of complaints about consumer financial products or services that the Bureau has received and collected in its central database on complaints during the preceding year;<br>(5) a list, with a brief statement of the issues, of the public supervisory and enforcement actions to which the Bureau was a party during the preceding year;<br>(6) the actions taken regarding rules, orders, and supervisory actions with respect to covered persons which are not credit unions or depository institutions;<br>(7) an assessment of significant actions by State attorneys general or State regulators relating to Federal consumer financial law;<br>(8) an analysis of the efforts of the Bureau to fulfill the fair lending mission of the Bureau; and<br>(9) an analysis of the efforts of the Bureau to increase workforce and contracting diversity consistent with the procedures established by the Office of Minority and Women Inclusion. |
| Funding | Expend funds transferred by Fed on Agency Activities | 12 U.S.C. § 5497(c) | Funds obtained by, transferred to, or credited to the Bureau Fund shall be immediately available to the Bureau and under the control of the Director, and shall remain available until expended, to pay the expenses of the Bureau in carrying out its duties and responsibilities. |
| Rulemaking | Maintain data standards | 12 U.S.C. § 5498 | The Bureau shall, by rule, adopt data standards for all collections of information that are regularly filed with or submitted to the Bureau. |

| | | | |
|---|---|---|---|
| Reporting | Maintain public access to all published data sets | 12 U.S.C. § 5499 | All public data assets published by the Bureau shall be—<br>(1) made available as an open Government data asset (as defined in section 3502 of title 44);<br>(2) freely available for download; |
| Enforcement | Actively monitor emerging risks to consumers | 12 U.S.C. § 5512(c)(1) | In order to support its rulemaking and other functions, the Bureau shall monitor for risks to consumers in the offering or provision of consumer financial products or services, including developments in markets for such products or services. |
| Reporting | Issue reports on emerging risks to consumers, no less than annually | 12 U.S.C. § 5512(c)(3) | The Bureau shall publish not fewer than 1 report of significant findings of its monitoring required by this subsection in each calendar year... |
| Rulemaking | Prescribe rules for maintaining consumer confidentiality | 12 U.S.C. § 5512(c)(6) | The Bureau shall prescribe rules regarding the confidential treatment of information obtained from persons in connection with the exercise of its authorities under Federal consumer financial law. |
| Enforcement | Regularly examine covered entities | 12 U.S.C. § 5514(b)(1) | The Bureau shall require reports and conduct examinations on a periodic basis of persons described in subsection (a)(1) for purposes of—<br>(A) assessing compliance with the requirements of Federal consumer financial law;<br>(B) obtaining information about the activities and compliance systems or procedures of such person; and<br>(C) detecting and assessing risks to consumers and to markets for consumer financial products and services. |
| Inter-agency Coordination | Coordinate supervisory activities with other regulators | 12 U.S.C. § 5514(b)(3) | To minimize regulatory burden, the Bureau shall coordinate its supervisory activities with the supervisory activities conducted by prudential regulators, the State bank regulatory authorities, and the State agencies that licence, supervise, or examine the offering of consumer financial products or services, including establishing their respective schedules for examining persons described in subsection (a)(1) and requirements regarding reports to be submitted by such persons |

13

| | | | |
|---|---|---|---|
| Rulemaking | Prescribe rules for supervision | 12 U.S.C. § 5514(b)(7)(A) | The Bureau shall prescribe rules to facilitate supervision of persons described in subsection (a)(1) and assessment and detection of risks to consumers. |
| Enforcement | Exercise exclusive enforcement authority | 12 U.S.C. § 5514(c)(1) | Except as provided in paragraph (3) and section 5581 of this title, with respect to any person described in subsection (a)(1), to the extent that Federal law authorizes the Bureau and another Federal agency to enforce Federal consumer financial law, the Bureau shall have exclusive authority to enforce that Federal consumer financial law. |
| Rulemaking | Exercise exclusive rulemaking authority | 12 U.S.C. § 5514(d) | Notwithstanding any other provision of Federal law and except as provided in section 5581 of this title, to the extent that Federal law authorizes the Bureau and another Federal agency to issue regulations or guidance, conduct examinations, or require reports from a person described in subsection (a)(1) under such law for purposes of assuring compliance with Federal consumer financial law and any regulations thereunder, the Bureau shall have the exclusive authority to prescribe rules, issue guidance, conduct examinations, require reports, or issue exemptions with regard to a person described in subsection (a)(1), subject to those provisions of law. |
| Enforcement | Exercise exclusive examination authority | 12 U.S.C. § 5515(b)(1) | The Bureau shall have exclusive authority to require reports and conduct examinations on a periodic basis of persons described in subsection (a) for purposes of—<br>(A) assessing compliance with the requirements of Federal consumer financial laws;<br>(B) obtaining information about the activities subject to such laws and the associated compliance systems or procedures of such persons; and<br>(C) detecting and assessing associated risks to consumers and to markets for consumer financial products and services. |

14

| Coordination | Coordinate examination activities with other regulators | 12 U.S.C. § 5515(b)(2) | To minimize regulatory burden, the Bureau shall coordinate its supervisory activities with the supervisory activities conducted by prudential regulators and the State bank regulatory authorities, including consultation regarding their respective schedules for examining such persons described in subsection (a) and requirements regarding reports to be submitted by such persons. |
|---|---|---|---|
| Enforcement | report tax law noncompliance | 12 U.S.C. § 5515(b)(5) | The Bureau shall provide the Commissioner of Internal Revenue with any report of examination or related information identifying possible tax law noncompliance. |
| Coordination | Coordinate simultaneous / overlapping examination activities with other regulators | 12 U.S.C. § 5515(e) | (1) A prudential regulator and the Bureau shall, with respect to each insured depository institution, insured credit union, or other covered person described in subsection (a) that is supervised by the prudential regulator and the Bureau, respectively—<br>(A) coordinate the scheduling of examinations of the insured depository institution, insured credit union, or other covered person described in subsection (a);<br>(B) conduct simultaneous examinations of each insured depository institution or insured credit union, unless such institution requests examinations to be conducted separately;<br>(C) share each draft report of examination with the other agency and permit the receiving agency a reasonable opportunity (which shall not be less than a period of 30 days after the date of receipt) to comment on the draft report before such report is made final; and<br>(D) prior to issuing a final report of examination or taking supervisory action, take into consideration concerns, if any, raised in the comments made by the other agency.<br><br>(2) Coordination with State bank supervisors<br>The Bureau shall pursue arrangements and agreements with State bank supervisors to coordinate examinations, consistent with paragraph (1). |

| Public engagement | Establish data formats for consumer information requests | 12 U.S.C. § 5533(d) | The Bureau, by rule, shall prescribe standards applicable to covered persons to promote the development and use of standardized formats for information, including through the use of machine readable files, to be made available to consumers under this section. |
|---|---|---|---|
| Public engagement | Respond timely to consumer complaints | 12 U.S.C. § 5534(a) | The Bureau shall establish, in consultation with the appropriate Federal regulatory agencies, reasonable procedures to provide a timely response to consumers, in writing where appropriate, to complaints against, or inquiries concerning, a covered person, including—<br>(1) steps that have been taken by the regulator in response to the complaint or inquiry of the consumer;<br>(2) any responses received by the regulator from the covered person; and<br>(3) any follow-up actions or planned follow-up actions by the regulator in response to the complaint or inquiry of the consumer. |
| Public engagement | Coordinate with other federal agencies re: consumer complaints | 12 U.S.C. 5534(d) | The Bureau shall enter into a memorandum of understanding with any affected Federal regulatory agency regarding procedures by which any covered person, and the prudential regulators, and any other agency having jurisdiction over a covered person, including the Secretary of the Department of Housing and Urban Development and the Secretary of Education, shall comply with this section. |
| Statutory Office | Maintain a Private Education Loan Ombudsman | 12 U.S.C. § 5535(a) | The Secretary, in consultation with the Director, shall designate a Private Education Loan Ombudsman (in this section referred to as the "Ombudsman") within the Bureau, to provide timely assistance to borrowers of private education loans. |

| | | | |
|---|---|---|---|
| Public engagement | Execute consumer outreach, complaint handling, education, and reporting re: education loans | 12 U.S.C. § 5535(c) | The Ombudsman designated under this subsection shall—<br>(1) in accordance with regulations of the Director, receive, review, and attempt to resolve informally complaints from borrowers of loans described in subsection (a), including, as appropriate, attempts to resolve such complaints in collaboration with the Department of Education and with institutions of higher education, lenders, guaranty agencies, loan servicers, and other participants in private education loan programs;<br>(2) not later than 90 days after the designated transfer date, establish a memorandum of understanding with the student loan ombudsman established under section 1018(f) of title 20, to ensure coordination in providing assistance to and serving borrowers seeking to resolve complaints related to their private education or Federal student loans;<br>(3) compile and analyze data on borrower complaints regarding private education loans; and<br>(4) make appropriate recommendations to the Director, the Secretary, the Secretary of Education, the Committee on Banking, Housing, and Urban Affairs and the Committee on Health, Education, Labor, and Pensions of the Senate and the Committee on Financial Services and the Committee on Education and Labor of the House of Representatives. |
| Reporting | Report to Congress re: education loan activities | 12 U.S.C. § 5535(d) | (1) In general<br>The Ombudsman shall prepare an annual report that describes the activities, and evaluates the effectiveness of the Ombudsman during the preceding year.<br>(2) Submission<br>The report required by paragraph (1) shall be submitted on the same date annually to the Secretary, the Secretary of Education, the Committee on Banking, Housing, and Urban Affairs and the Committee on Health, Education, Labor, and Pensions of the Senate and the Committee on Financial Services and the Committee on Education and Labor of the House of Representatives. |

17

| | | | |
|---|---|---|---|
| Public engagement | Maintain a grant program for enhanced protection of seniors | 12 U.S.C. § 5537(b) | The Office [of Financial Literacy] shall establish a program under which the Office may make grants to States or eligible entities—<br>(1) to hire staff to identify, investigate, and prosecute (through civil, administrative, or criminal enforcement actions) cases involving misleading or fraudulent marketing;<br>(2) to fund technology, equipment, and training for regulators, prosecutors, and law enforcement officers, in order to identify salespersons and advisers who target seniors through the use of misleading designations;<br>(3) to fund technology, equipment, and training for prosecutors to increase the successful prosecution of salespersons and advisers who target seniors with the use of misleading designations;<br>(4) to provide educational materials and training to regulators on the appropriateness of the use of designations by salespersons and advisers in connection with the sale and marketing of financial products;<br>(5) to provide educational materials and training to seniors to increase awareness and understanding of misleading or fraudulent marketing;<br>(6) to develop comprehensive plans to combat misleading or fraudulent marketing of financial products to seniors; and<br>(7) to enhance provisions of State law to provide protection for seniors against misleading or fraudulent marketing. |
| Rulemaking | Initiate rulemaking when a majority of the states so request | 12 U.S.C. § 5551(c)(1) | The Bureau shall issue a notice of proposed rulemaking whenever a majority of the States has enacted a resolution in support of the establishment or modification of a consumer protection regulation by the Bureau. |
| Rulemaking | Explain any decision not to prescribe a final regulation | 12 U.S.C. § 5551(c)(3)(B) | whenever the Bureau determines not to prescribe a final regulation, shall publish an explanation of such determination in the Federal Register, and provide a copy of such explanation to each State that enacted a resolution in support of the proposed regulation, the Committee on Banking, Housing, and Urban Affairs of the Senate, and the Committee on Financial Services of the House of Representatives. |

| | | | |
|---|---|---|---|
| Rulemaking | Prescribe regulations for information sharing with states | 12 U.S.C. § 5552(c) | The Bureau shall prescribe regulations to implement the requirements of this section and, from time to time, provide guidance in order to further coordinate actions with the State attorneys general and other regulators. |
| Reporting | Not interfere with Congressional access to submitted materials | 12 U.S.C. § 5562(d)(2) | No rule established by the Bureau regarding the confidentiality of materials submitted to, or otherwise obtained by, the Bureau shall be intended to prevent disclosure to either House of Congress or to an appropriate committee of the Congress, |
| Rulemaking | Prescribe rules for hearings and adjudication proceedings | 12 U.S.C. § 5563(e) | The Bureau shall prescribe rules establishing such procedures as may be necessary to carry out this section. |
| Assumption of other agency powers | Assume all duties formerly assigned to the Board of Governors related to consumer financial protection | 12 U.S.C. § 5563(b)(1)(B) | The Bureau shall have all powers and duties that were vested in the Board of Governors, relating to consumer financial protection functions, on the day before the designated transfer date. |
| Assumption of other agency powers | Assume all duties formerly assigned to the Comptroller of the Currency related to consumer financial protection | 12 U.S.C. § 5563(b)(2)(B) | The Bureau shall have all powers and duties that were vested in the Comptroller of the Currency, relating to consumer financial protection functions, on the day before the designated transfer date. |
| Assumption of other agency powers | Assume all duties formerly assigned to the Director of the Office of Thrift Supervision related to consumer financial protection | 12 U.S.C. § 5563(b)(3)(B) | The Bureau shall have all powers and duties that were vested in the Director of the Office of Thrift Supervision, relating to consumer financial protection functions, on the day before the designated transfer date. |
| Assumption of other agency powers | Assume all duties formerly assigned to the Federal Deposit Insurance Corporation related to consumer financial protection | 12 U.S.C. § 5563(b)(4)(B) | The Bureau shall have all powers and duties that were vested in the Federal Deposit Insurance Corporation, relating to consumer financial protection functions, on the day before the designated transfer date. |
| Assumption of other agency powers | Assume joint responsibility for duties formerly assigned exclusively to the Federal Trade Commission related to consumer financial protection | 12 U.S.C. § 5563(b)(5)(B)(i) | The Bureau shall have all powers and duties under the enumerated consumer laws to prescribe rules, issue guidelines, or to conduct studies or issue reports mandated by such laws, that were vested in the Federal Trade Commission on the day before the designated transfer date. |

| | | | |
|---|---|---|---|
| Inter-agency Coordination | Coordinate joint responsibilities with FTC | 12 U.S.C. § 5563(b)(5)(D) | To avoid duplication of or conflict between rules prescribed by the Bureau under section 5531 of this title and the Federal Trade Commission under section 18(a)(1)(B) of the Federal Trade Commission Act [15 U.S.C. 57a(a)(1)(B)] that apply to a covered person or service provider with respect to the offering or provision of consumer financial products or services, the agencies shall negotiate an agreement with respect to rulemaking by each agency, including consultation with the other agency prior to proposing a rule and during the comment period. |
| Assumption of other agency powers | Assume all duties formerly assigned to the National Credit Union Administration related to consumer financial protection | 12 U.S.C. § 5563(b)(6)(B) | The Bureau shall have all powers and duties that were vested in the National Credit Union Administration, relating to consumer financial protection functions, on the day before the designated transfer date. |
| Assumption of other agency powers | Assume all duties formerly assigned to HUD related to consumer financial protection | 12 U.S.C. § 5563(b)(7)(B) | The Bureau shall have all powers and duties that were vested in the Secretary of the Department of Housing and Urban Development relating to the Real Estate Settlement Procedures Act of 1974 (12 U.S.C. 2601 et seq.), the Secure and Fair Enforcement for Mortgage Licensing Act of 2008 (12 U.S.C. 5101 et seq.), and the Interstate Land Sales Full Disclosure Act (15 U.S.C. 1701 et seq.), on the day before the designated transfer date. |
| Inter-agency Coordination | Honor broad savings provisions re: transferred duties | 12 U.S.C. § 5583(b)(7)(B) | [Re: all foregoing transfers of duties,] Section 5581(b)(X) of this title does not affect the validity of any right, duty, or obligation of the United States, [X Agency], or any other person that— (A) arises under any provision of law relating to any consumer financial protection function of the [X Agency] transferred to the Bureau by this title; [1] and[ |
| Labor protections | Maintain appropriate staffing to execute the transferred duties | 12 U.S.C. § 5583(a)(7) | [Re: all foregoing transferrs of duties,] The Bureau and each of the transferor agencies (except the Federal Trade Commission) shall jointly determine the number of employees and the types and grades of employees necessary to perform the functions of the Bureau under part A, including consumer education, financial literacy, policy analysis, responses to consumer complaints and |

| | | | |
|---|---|---|---|
| | | | inquiries, research, and similar functions. All employees jointly identified under this paragraph shall be transferred to the Bureau for employment. |
| Labor protections | Fulfill the requirements of 5 U.S.C. § 35 when executing any reduction in force | 12 U.S.C. § 5583(h)(2)(A) | If the Bureau determines, at any time after the 3-year period beginning on the designated transfer date, that a reorganization of the staff of the Bureau is required, any resulting reduction in force shall be governed by the provisions of chapter 35 of title 5, |
| Labor protections | Make flexible work arrangements available to Bureau staff | 12 U.S.C. § 5587(b)(2)(B) | The Bureau shall submit a workforce flexibility plan that includes, to the extent practicable— (i) telework; (ii) flexible work schedules; (iii) phased retirement; (iv) reemployed annuitants; (v) part-time work; (vi) job sharing; (vii) parental leave benefits and childcare assistance; (viii) domestic partner benefits; (ix) other workplace flexibilities; or (x) any combination of the items described in clauses (i) through (ix). |
| Inter-agency Coordination | Assist Financial Literacy Commission | 12 U.S.C. § 5601(c)(2) | As part of its [2] duties as members of the Financial Literacy and Education Commission, the Bureau, the Federal banking agencies, and the National Credit Union Administration shall assist the Financial Literacy and Education Commission in executing the Strategy for Assuring Financial Empowerment (or the "SAFE Strategy"), as it relates to remittances. |
| Rulemaking | Maintain rules and/or programs concerning exchange facilitation and reverse mortgages | 12 U.S.C. § 5603(c) | the Bureau shall, consistent with part B, propose regulations or otherwise establish a program to protect consumers who use exchange facilitators. |

**Additional Provisions Enacted in 12 U.S.C.**

| | | | |
|---|---|---|---|
| Rulemaking | Regulate disclosures required of depository institutions lacking Federal deposit insurance | 12 U.S.C. § 1831t | (c) Manner and content of disclosure<br>To ensure that current and prospective customers understand the risks involved in foregoing Federal deposit insurance, the Bureau, by regulation or order, shall prescribe the manner and content of disclosure required under this section, which shall be presented in such format and in such type size and manner as to be simple and easy to understand |
| Consumer Disclosures | Maintain model disclosure forms for mortgage loan transactions | 12 U.S.C. § 2603(a) | The Bureau shall publish a single, integrated disclosure for mortgage loan transactions (including real estate settlement cost statements) which includes the disclosure requirements of this section and section 2604 of this title, in conjunction with the disclosure requirements of the Truth in Lending Act [15 U.S.C. 1601 et seq.] that, taken together, may apply to a transaction that is subject to both or either provisions of law. The purpose of such model disclosure shall be to facilitate compliance with the disclosure requirements of this chapter 1 and the Truth in Lending Act, and to aid the borrower or lessee in understanding the transaction by utilizing readily understandable language to simplify the technical nature of the disclosures. Such forms shall conspicuously and clearly itemize all charges imposed upon the borrower and all charges imposed upon the seller in connection with the settlement and shall indicate whether any title insurance premium included in such charges covers or insures the lender's interest in the property, the borrower's interest, or both. |

| | | | |
|---|---|---|---|
| Consumer Disclosures | Maintain home buying information booklets | 12 U.S.C. § 2604 | The Director of the Bureau of Consumer Financial Protection (hereafter in this section referred to as the "Director") shall prepare, at least once every 5 years, a booklet to help consumers applying for federally related mortgage loans to understand the nature and costs of real estate settlement services. The Director shall prepare the booklet in various languages and cultural styles, as the Director determines to be appropriate, so that the booklet is understandable and accessible to homebuyers of different ethnic and cultural backgrounds. The Director shall distribute such booklets to all lenders that make federally related mortgage loans. The Director shall also distribute to such lenders lists, organized by location, of homeownership counselors certified under section 1701x(e) of this title for use in complying with the requirement under subsection (c) of this section. |
| Rulemaking | Regulate servicing of mortgage loans and administration of escrow accounts | 12 U.S.C. § 2605(j)(3) | The Bureau shall establish any requirements necessary to carry out this section. Such regulations shall include the model disclosure statement required under subsection (a)(2). |
| Consumer Disclosures | Regulate disclosures required of all depository institutions that handle mortgage loans | 12 U.S.C. § 2803(e) | Subject to subsection (h), the Bureau shall prescribe a standard format for the disclosures required under this section. |
| Consumer Disclosures | Regulate disclosures required for all mortgage loans | 12 U.S.C. § 2804(a) | The Bureau shall prescribe such regulations as may be necessary to carry out the purposes of this chapter. These regulations may contain such classifications, differentiations, or other provisions, and may provide for such adjustments and exceptions for any class of transactions, as in the judgment of the Bureau are necessary and proper to effectuate the purposes of this chapter, and prevent circumvention or evasion thereof, or to facilitate compliance therewith. |

| Civil rights | Develop and refine systems for matching addresses to census tracts for civil rights reporting | 12 U.S.C. § 2806(a)(1) | The Director of the Bureau of Consumer Financial Protection, with the assistance of the Secretary, the Director of the Bureau of the Census, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, and such other persons as the Bureau deems appropriate, shall develop or assist in the improvement of, methods of matching addresses and census tracts to facilitate compliance by depository institutions in as economical a manner as possible with the requirements of this chapter. |
|---|---|---|---|
| Civil rights | Report to Congress annually regarding utility of civil rights reporting | 12 U.S.C. § 2807 | The Bureau, in consultation with the Secretary of Housing and Urban Development, shall report annually to the Congress on the utility of the requirements of section 2803(b)(4) of this title. [the number and dollar amount of mortgage loans and completed applications involving mortgagors or mortgage applicants grouped according to census tract, income level, racial characteristics, age, and gender] |
| Reporting | Compile statistics, on an ongoing basis, on mortgage issuance | 12 U.S.C. § 2809(a) | The Council shall also produce tables indicating, for each primary metropolitan statistical area, metropolitan statistical area, or consolidated metropolitan statistical area that is not comprised of designated primary metropolitan statistical areas, aggregate lending patterns for various categories of census tracts grouped according to location, age of housing stock, income level, and racial characteristics. |
| Labor protections | Provide staff and resources for civil rights reporting | 12 U.S.C. § 2809(b) | The Bureau shall provide staff and data processing resources to the Council to enable it to carry out the provisions of subsection (a). |
| Reporting | Make mortgage issuance data available to the public | 12 U.S.C. § 2809(c) | The data and tables required pursuant to subsection (a) shall be made available to the public by no later than December 31 of the year following the calendar year on which the data is based. |

| | | | |
|---|---|---|---|
| Statutory office | Send a qualified delegate to the Appraisal Subcommittee of the Federal Financial Institutions Examination Council | 12 U.S.C. § 3310 | There shall be within the Council a subcommittee to be known as the ''Appraisal Subcommittee'', which shall consist of the designees of the heads of the Federal financial institutions regulatory agencies, the Bureau of Consumer Financial Protection, and the Federal Housing Finance Agency. Each such designee shall be a person who has demonstrated knowledge and competence concerning the appraisal profession. |
| Consumer Disclosures | Specify required elements of consumer disclosures for savings accounts (TISA) | 12 U.S.C. § 4303(a) | Each depository institution shall maintain a schedule of fees, charges, interest rates, and terms and conditions applicable to each class of accounts offered by the depository institution, in accordance with the requirements of this section and regulations which the Bureau shall prescribe. The Bureau shall specify, in regulations, which fees, charges, penalties, terms, conditions, and account restrictions must be included in a schedule required under this subsection. A depository institution need not include in such schedule any information not specified in such regulation. |
| Rulemaking | Prescribe special regulations for depository accounts that provide interest that cannot be accurately expressed as a simple APR | 12 U.S.C. § 4304 | The Bureau shall require, in regulations which the Bureau shall prescribe, such modification in the disclosure requirements under this chapter relating to annual percentage yield as may be necessary to carry out the purposes of this chapter in the case of— (1) accounts with respect to which determination of annual percentage yield is based on an annual rate of interest that is guaranteed for a period of less than 1 year; (2) variable rate accounts; (3) accounts which, pursuant to law, do not guarantee payment of a stated rate; (4) multiple rate accounts; and (5) accounts with respect to which determination of annual percentage yield is based on an annual rate of |

| | | | interest that is guaranteed for a stated term. |
|---|---|---|---|
| Rulemaking | Prescribe regulations to enforce all substantive provisions of TISA | 12 U.S.C. § 4308(a)(1) | ...the Bureau, after consultation with each agency referred to in section 4309(a) of this title and public notice and opportunity for comment, shall prescribe regulations to carry out the purpose and provisions of this chapter. |
| Consumer Disclosures | Publish model forms to support all substantive provisions of TISA | 12 U.S.C. § 4309(b)(1) | The Bureau shall publish model forms and clauses for common disclosures to facilitate compliance with this chapter. In devising such forms, the Bureau shall consider the use by depository institutions of data processing or similar automated machines. |
| Enforcement | Enforce all substantive requirements for mortgage disclosures | 12 U.S.C. § 4909(a) | Subject to subtitle B of the Consumer Financial Protection Act of 2010 [12 U.S.C. 5511 et seq.], compliance with the requirements imposed under this chapter shall be enforced under— ...(4) subtitle E of the Consumer Financial Protection Act of 2010 [12 U.S.C. 5561 et seq.], by the Bureau of Consumer Financial Protection, with respect to any person subject to this chapter. |
| Enforcement | Maintain a registration system for loan originators | 12 U.S.C. § 5106(a)(1) | The Bureau shall develop and maintain a system for registering employees of a depository institution, employees of a subsidiary that is owned and controlled by a depository institution and regulated by a Federal banking agency, or employees of an institution regulated by the Farm Credit Administration, as registered loan |

| | | | originators with the Nationwide Mortgage Licensing System and Registry. |
|---|---|---|---|
| Reporting | Report to Congress annually: re: loan originator registration and bonding requirements | 12 U.S.C. § 5115(a) | Not later than 1 year after July 30, 2008, and annually thereafter, the Director shall submit a report to Congress on the effectiveness of the provisions of this chapter, including legislative recommendations, if any, for strengthening consumer protections, enhancing examination standards, streamlining communication between all stakeholders involved in residential mortgage loan origination and processing, and establishing performance based bonding requirements for mortgage originators or institutions that employ such brokers. |
| Statutory office | Maintain an Office of Minority and Women Inclusion | 12 U.S.C. § 5452(a)(1) | A) In general ...each agency shall establish an Office of Minority and Women Inclusion that shall be responsible for all matters of the agency relating to diversity in management, employment, and business activities. (B) Bureau The Bureau shall establish an Office of Minority and Women Inclusion not later than 6 months after the designated transfer date established under section 5582 of this title. |
| Civil rights | Prioritize minority and women-owned businesses and activities | 12 U.S.C. § 5452(c)(1) | The Director of each Office shall develop and implement standards and procedures to ensure, to the maximum extent possible, the fair inclusion and utilization of minorities, women, and minority-owned and women-owned businesses in all business and activities of the agency at all levels, including in procurement, insurance, and all types of contracts. |