IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL TREASURY EMPLOYEES UNION, *et al.*,<br><br>                  *Plaintiffs*,<br>   v.<br><br>RUSSELL VOUGHT, in his official capacity as Acting Director of the Consumer Financial Protection Bureau, *et al.*,<br><br>                  *Defendants*. | Case No. 25-cv-381-ABJ |

**NOTICE OF FILING OF AMENDED PROPOSED
PRELIMINARY INJUNCTION ORDER**

Following the evidentiary hearing on March 11, 2025, the Court urged the parties to meet and confer about a proposed preliminary injunction order, should the Court decide to issue one. The parties have conferred, and the defendants' position is that they continue to oppose the entry of a preliminary injunction. They therefore declined to file a joint proposed order. Nevertheless, the plaintiffs have revised their proposed order in response to the Court's and the defendants' comments at the March 11th hearing. That revised proposed order is attached here.

At the hearing, the defendants' main objection to the prior proposed order seemed to be that two provisions referenced the Bureau's statutorily required functions. Tr. of Mar. 11, 2025 Hearing, Dkt. 74, at 115-117. The plaintiffs included those references based on the defendants' claim that they were now committed to the Bureau performing these functions. But although the defendants insist that the CFPB is performing its statutorily required functions, they also insist that a preliminary injunction order requiring them to do so would be "ambigu[ous]." *Id.* And despite this professed concern, the defendants also refused to identify the duties that they believe the Bureau is statutorily required to perform. *See id.*

Still, the plaintiffs have amended their proposed order in light of the defendants' comments. With respect to the work stoppage, the amended proposed order does not rely on the Bureau's statutory functions. Instead, it would enjoin the enforcement of the February 10, 2025 stop-work order and prohibit the defendants from reinstituting a work stoppage.

With respect to the contract termination provision, the CFPB appears to have a "master spreadsheet" of contracts, which contains a list of the CFPB's contracts, their status, and a description of their relationship to the Bureau's statutory functions. Tr. of Mar. 10, 2025 Hearing, Dkt. 73, at p.72–73 (defendants' counsel asking about this spreadsheet); Dkt. 66-2, at CFPB_00117 (internal email describing this spreadsheet). The plaintiffs have repeatedly asked for this list—to enable them to propose a specific list of contracts that shall not be terminated—but the defendants have not provided it.

Absent this information, the amended proposed order offers another option for taking into account the defendants' professed concern that they might disagree with the plaintiffs or the Court about which contracts enable the Bureau's statutorily required functions. The amended order prohibits the wholesale cancellation of contracts, but allows the defendants to halt services under a contract if they determine, based on an individualized assessment of that contract, that the contract is unnecessary for the fulfillment of statutory functions. They may not, however, finalize that contract's termination. The purpose of this amendment is to balance the need to preserve the court's ability to award full relief at the end of the case—including relief that would require contract reinstatement—with the defendants' asserted need to discontinue contracts that they believe are unnecessary to meet the agency's statutory requirements.

The other objection to the prior proposed order that the defendants emphasized at the hearing is that they would like to be able to conduct reductions in force. But the hearing confirmed

that the agency continues to plan to terminate the vast majority of CFPB employees—which, as the government's own witness explained, would cause irreparable harm. Tr. Mar. 10, 2025 Hearing, at 153, 232; Tr. Mar. 11, 2025, at 61-64. The amended proposed order, therefore, leaves in place the prohibition on mass terminations that was agreed upon at the beginning of this case.[1]

Dated: March 19, 2025

Respectfully submitted,

*/s/ Deepak Gupta*
Deepak Gupta (DC Bar No. 495451)
Robert Friedman (D.C. Bar No. 1046738)
Gabriel Chess (DC Bar No. 90019245)*
Gupta Wessler LLP
2001 K Street, NW
North Tower, Suite 850
Washington, DC 20006
(202) 888-1741

Jennifer D. Bennett (pro hac vice)
Gupta Wessler LLP
505 Montgomery Street
San Francisco, CA 94111
(415) 573-0335

* motion for admission pending

*Counsel for Plaintiffs*

*/s/ Wendy Liu*
Wendy Liu (DC Bar No. 1600942)
Adam R. Pulver (DC Bar No. 1020475)
Allison M. Zieve (DC Bar No. 424786)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiffs*

Julie Wilson (DC Bar No. 482946)
General Counsel
Paras N. Shah (DC Bar No. 983881)
Deputy General Counsel
Allison C. Giles (DC Bar No. 439705)
Assistant Counsel
National Treasury Employees Union
800 K Street, NW, Suite 1000
Washington, DC 20001
(202) 572-5500
*Counsel for Plaintiff National Treasury Employees Union*

---

[1] The plaintiffs have deleted the funding provision from the proposed order based on the dissolution of the TRO governing funding in *Mayor and City Council of Baltimore v. Consumer Financial Protection Bureau*, Civ. No. MJM-25-458. That case involved an APA challenge solely to the Bureau's failure to draw funds for this quarter and the threat of returning the CFPB's funds to Treasury or the Federal Reserve—not a separation of powers (or APA) challenge to the decision to dismantle the agency. Nevertheless, in an effort to draw as narrow a preliminary injunction as possible, and based on the government's representations that it is not possible to transfer the CFPB's funds to Treasury or the Federal Reserve, the plaintiffs are no longer requesting that relief as part of the preliminary injunction.