IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL TREASURY EMPLOYEES UNION, *et al.*,<br><br>     *Plaintiffs*,<br> v.<br><br>RUSSELL VOUGHT, in his official capacity as Acting Director of the Consumer Financial Protection Bureau, *et al.*,<br><br>     *Defendants*. | Case No. 25-cv-381-ABJ |

**NOTICE OF SUPPLEMENTAL AUTHORITY**

We write to notify the Court of two recent decisions relevant to the issues in this case. The decisions are attached as exhibits to this notice.

**1.** In *Does 1-26 v. Musk*, No. 25-0462, --- F. Supp. 3d ---, 2025 WL 840574 (D. Md. Mar. 18, 2025), the court granted a preliminary injunction barring efforts to shutter the United States Agency for International Development. In that case, a group of employees and contractors of USAID are challenging DOGE and Elon Musk's efforts to "shut down, dismantle, and effectively eliminate USAID." *Id.* at *18. The steps taken to shutter that agency bear a striking resemblance to the actions taken at the CFPB:

- The defendants "physically closed USAID headquarters and shut down key functionalities of the agency." *Compare id.*, *with* Martinez Decl. ¶¶ 4, 18, Dkt. 31-1 (describing cancellation of CFPB's lease), *and* Pfaff Decl., Dkt. 38-7 (describing closure of Consumer Response).

- "[P]laques with the USAID agency seal were removed from USAID offices," "the name of the agency was removed from the façade of the building," and its headquarters "was permanently closed." *Compare* 2025 WL 840574, at *18, *with* Roston Decl. ¶ 14, Dkt. 38-17 (CFPB letters removed from building).

- The "USAID website was taken offline." *Compare* 2025 WL 840574, at *18, *with* Ex. DD, Dkt. 57-1 (not authorized to fix CFPB homepage).

1

- "[A]lmost its entire workforce" was "eliminat[ed] or sidelin[ed]," with nearly 90 percent of its workers placed on administrative leave and more than 2,000 employees receiving RIF notices, thereby closing entire "bureaus or offices." *Compare* 2025 WL 840574, at *19, *with* Tr. of Mar. 11, 2025 Hearing, Dkt. 74, at 41–42, 52 (describing plans for CFPB to "reduce altogether … within 60 to 90 days").

- Contracts were terminated en masse. *Compare* 2025 WL 840574, at *19, *with* Ex. B, Dkt. 57-1.

- USAID was rendered "unable to perform its core functions" because of the disruption of its contracts and operations systems. *Compare* 2025 WL 840574, at *19, *with* Exs. RR, XX, YY, Dkt. 66-1.

The court in *Does 1-26* concluded that the plaintiffs were likely to prevail in proving that these actions amounted to an unconstitutional attempt to "abolish or dismantle USAID." 2025 WL 840574, at *23. "Where Congress has prescribed the existence of [an agency] in statute pursuant to its legislative powers under Article I," the court held, "the President's Article II power to take care that the laws are faithfully executed does not provide authority for the unilateral, drastic actions taken to dismantle the agency." *Id.* at *25. In reaching that conclusion, the court rejected the argument, also made by the defendants here, that *Dalton v. Specter*, 511 U.S. 462 (1994), bars courts from considering separation of powers claims based on the dismantling of a congressionally created agency. *Compare Does 1-26*, 2025 WL 840574, *with* Opp'n 23–25, Dkt. 31.

To "maintain[] the status quo so as to delay a premature, final shutdown of USAID, which would adversely impact" the plaintiffs, the court entered a preliminary injunction enjoining the defendants from taking further steps to close the agency. *Id.* at *31. The court enjoined DOGE and Musk from, among other things:

> [t]ak[ing] any action, or engag[ing] in any work, relating to the shutdown of USAID, defined for present purposes as: placement of employees on administrative leave, reductions-in-force, employee terminations, or contract terminations relating to any USAID employees or PSCs; terminations of USAID contracts or grants; closures of USAID buildings, bureaus, or offices; and permanent shutdowns or terminations of any USAID information technology systems, including but not limited to permanent deletions of the contents of the USAID website or collections of USAID electronic records.

*Id.* at *33.

Although the record "support[ed] the conclusion" that USAID "approved or ratified" DOGE's decisions, the court did not enjoin USAID itself because the plaintiffs had not sued the agency itself or its leadership. *Id.* at *31. By contrast, here, the plaintiffs *have* sued the CFPB and Vought—who have been directing the mass termination plans and contract cancellations. *See* Tr. of Mar. 3, 2025 Hearing, Dkt. 58, at 41–42, 63–64. There is therefore no barrier to entering a preliminary injunction against the agency itself.

**2.** In *Maryland v. U.S. Dep't of Agric.*, No. 25-0748, --- F. Supp. 3d ----, 2025 WL 800216 (D. Md. Mar. 13, 2025), several states claim that multiple agencies, including the CFPB, conducted reductions in force without first notifying the states, in violation of the federal statute and regulations that govern reductions in force. The court issued a temporary restraining order directing eighteen federal agencies—again including the CFPB—to reinstate the "probationary employees" that had been illegally fired and prohibiting any further reductions in force without notice. *Id.* at *27–28. Pursuant to this order, the CFPB has reinstated the probationary employees it previously terminated and placed them on administrative leave. *Maryland*, Dkt. 52-1 at 36–38.

This narrow, temporary relief—which the government has already appealed—does not obviate the need for a preliminary injunction here. *See Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F. Supp. 3d 1, 59–60 (D.D.C. 2020) (courts "routinely grant" overlapping injunctions against the government). But the court's reasoning is informative here in two respects.

*First*, the court rejected the contention that the Civil Service Reform Act deprives it of jurisdiction to hear the states' claims. *See Maryland*, 2025 WL 800216, at *12–15. Applying the *Thunder Basin* factors, the court held that the states are foreclosed from receiving any meaningful

judicial review through the administrative process; the "unique harms" the states allege rendered their claims "collateral" to those that process was designed to address; and while the federal employment agencies "know a good deal about unlawful dismissal of federal employees, they know nothing special about the central problem the *States* have asserted: a failure to provide proper notice" to the states. *Id.*

The argument against channeling is even stronger in this case. Most of the plaintiffs here, like the states in *Maryland*, are neither employees nor employee representatives. They therefore can't even bring claims before the federal employment agencies. And *none* of the plaintiffs here could receive meaningful judicial review through the administrative process. *See* Reply 23–25 & n.10. Moreover, whereas the states' claim in *Maryland* rests on a violation of the law governing reductions in force, the claims here do not involve any federal employment statute. Instead, they are wholly collateral to the administrative process and outside the federal employment agencies' expertise. *See Axon Enter., Inc. v. FTC*, 598 U.S. 175, 180 (2023).

*Second*, the court in *Maryland* rejected the defendants' challenge to the scope of the temporary restraining order. "[T]he scope of injunctive relief," the court explained, "is dictated by the extent of the violation established." 2025 WL 800216, at *24 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). Because the government's illegal action was the reduction-in-force, it was proper to order preliminary relief that reversed that action. *See id.*

                                                        Respectfully submitted,

                                                        */s/ Deepak Gupta*
                                                        Deepak Gupta (DC Bar No. 495451)
                                                        Robert Friedman (D.C. Bar. 1046738)
                                                        Gabriel Chess (D.C. Bar No. 90019245)*
                                                       Gupta Wessler LLP
                                                       2001 K Street, NW
                                                       North Tower, Suite 850
                                                       Washington, DC 20006

(202) 888-1741

Jennifer D. Bennett (pro hac vice)
Gupta Wessler LLP
505 Montgomery Street
San Francisco, CA 94111
(415) 573-0335

Wendy Liu (D.C. Bar No. 1600942)
Allison M. Zieve (D.C. Bar No. 424786)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiffs*

\* motion for admission pending

Julie Wilson (DC Bar No. 482946)
General Counsel
Paras N. Shah (DC Bar No. 983881)
Deputy General Counsel
Allison C. Giles (DC Bar No. 439705)
Assistant Counsel
National Treasury Employees Union
800 K Street, NW, Suite 1000
Washington, DC 20001
(202) 572-5500

*Counsel for Plaintiff National Treasury Employees Union*

5