UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL TREASURY EMPLOYEES UNION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>RUSSELL VOUGHT, in his official capacity as Acting Director of the Consumer Financial Protection Bureau, *et al.*,<br><br>Defendants. | Civil Action No. 25-0381 (ABJ) |

**DEFENDANTS' RENEWED REQUEST
FOR A STAY PENDING APPEAL**

Defendants Russell Vought, in his official capacity as Acting Director of the Consumer Financial Protection Bureau, and the Consumer Financial Protection Bureau, hereby renew their request for a stay of this Court's preliminary injunction, ECF No. 88, pending appeal and for an immediate administrative stay. *See* ECF No. 31 at 40. The grounds supporting this request are set forth in the accompanying memorandum.

Undersigned counsel has conferred with counsel for Plaintiffs before submitting this filing. Plaintiffs' position is as follows:

> The plaintiffs oppose a stay pending appeal. However, to facilitate orderly briefing and disposition, the plaintiffs do not oppose a brief administrative stay, provided that the Court orders that, while an administrative stay is in place, the defendants must continue to comply with the personnel termination and data deletion provisions of the February 14, 2025 agreed-upon order, Dkt. 19, as well as the agreed-upon prohibition against finalizing the cancellation of any contracts, *see* Dkt. 71. The plaintiffs propose that any such administrative stay expire upon the disposition of the defendants' motion to stay in this Court and any motion to stay in the D.C. Circuit.

A proposed order is attached.

DATED: April 1, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

BRAD P. ROSENBERG
Special Counsel

*/s/ Liam C. Holland*
LIAM C. HOLLAND
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 514-4964
Fax: (202) 616-8470
Email: liam.c.holland@usdoj.gov

*Counsel for Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL TREASURY EMPLOYEES UNION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> RUSSELL VOUGHT, in his official capacity as Acting Director of the Consumer Financial Protection Bureau, *et al.*, <br><br> Defendants. | Civil Action No. 25-0381 (ABJ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' RENEWED REQUEST FOR A STAY PENDING APPEAL**

**INTRODUCTION**

On March 28, 2025, this Court issued a preliminary injunction and memorandum opinion, ECF Nos. 87-88, setting forth its view that judicial intervention was necessary to ensure that the Consumer Financial Protection Bureau ("CFPB" or the "Bureau") continued to fulfill specific statutory obligations pending the resolution of Plaintiffs' claims. But the extraordinary eight-part injunction that the Court entered sweeps far beyond any mandatory statutory duty that it identified. In effect, the Court has indefinitely frozen the CFPB as it existed before President Trump's inauguration. There is no legal basis for that relief, which stymies lawful reforms and restricts the management of an Executive Branch agency in a manner akin to judicial receivership. Defendants therefore respectfully request an emergency stay pending appeal of this Court's preliminary injunction, and an immediate administrative stay.[1]

The Government has repeatedly explained that, absent congressional action, the Bureau will continue to perform mandatory statutory duties. Given that explanation, and longstanding authority making clear that obey-the-law injunctions are both unnecessary and improper,[2] injunctive relief was not appropriate here. But even assuming some narrow injunction to continue

---

[1] In their opposition to Plaintiffs' motion for a preliminary injunction, Defendants requested that

> [p]articularly in light of the extraordinary breadth of Plaintiff's motion, to the extent the Court issues injunctive relief, the United States also respectfully requests that such relief be stayed pending the disposition of any appeal that is authorized, or at a minimum that such relief be administratively stayed for a period of seven days to allow the United States to seek an emergency, expedited stay from the Court of Appeals if an appeal is authorized.

ECF No. 31 at 40. Plaintiffs provided their position on Defendants' initial request for an administrative stay in their reply. ECF No. 40 at 34. The Court did not address this request when it issued the preliminary injunction, which made the injunction effective immediately, with full compliance required within seven days. In light of the Court's Minute Order dated March 31, 2025, Defendants are hereby renewing the request.

[2] *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 66-67 (2004); *City of N.Y. v. U.S. Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019); *SEC v. Goble*, 682 F.3d 934, 949-50 (11th Cir. 2012); *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011); *SEC v. Wash. Inv. Network*, 475 F.3d 392, 407 (D.C. Cir. 2007); *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 669 (8th Cir. 1987); *SEC v. Warren*, 583 F.2d 115, 121 (3d Cir. 1978).

1

performing mandatory statutory duties owed to the Plaintiffs was proper, the relief that this Court ordered goes far beyond addressing anything identified in any statute. Rather, it commandeers significant swaths of agency administration.

Despite recognizing that the CFPB has discretionary authorities—and despite acknowledging the impropriety of judicial intrusion into the ways in which the Executive Branch exercises its discretion—this Court imposed sweeping restrictions and affirmative requirements affecting administration of *all* routine Bureau operations, personnel decisions, and contract management. Apparently treating the CFPB as it existed on January 19, 2025, as the benchmark for minimum statutory compliance, this Court has ordered the CFPB to rehire every employee, reinstate every contract, and refrain from reducing its workforce or stopping work that the CFPB's leadership may believe is inconsistent with their priorities.

The problem with the Court's eight-part order is that it is not anchored in any mandatory statutory duties that Defendants owe to Plaintiffs. The order does not track any specific CFPB duties Congress made obligatory. Nothing in any statute requires Acting Director Vought to maintain, organize, or administer the Bureau in the same manner as did former Director Rohit Chopra. Nor does anything prohibit the Bureau's leadership from using normal tools—including, as appropriate, reductions-in-force and contract terminations—to administer the Bureau as they think the public interest warrants, within the broad parameters established by statute, without this Court's supervision.

Because the Government is likely to succeed in challenging the preliminary injunction; because the Bureau will continue to perform its minimum statutory functions, and Plaintiffs will not suffer any cognizable harm absent an injunction; and because the Government and the public interest will be irreparably harmed by the indefinite suspension of Executive Branch control over the Bureau during the Government's appeal, a stay pending appeal is warranted.

In addition, the Government respectfully requests that the Court grant an immediate administrative stay while this motion is pending. Absent such relief, the Government will be

required to confirm by Friday, April 4, that the Bureau has brought itself into compliance with the Court's overbroad and unjustified injunction.[3]

## ARGUMENT

In considering a stay pending appeal, the Court must examine "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009). Each of the factors strongly counsels in favor of a prompt stay.

### I. The Government is Likely to Succeed on Appeal Because the Preliminary Injunction Sweeps Far Beyond the Putative Problem Identified by the Court.

A preliminary injunction is "an 'extraordinary and drastic remedy.'" *Munaf v. Geren*, 553 U.S. 674, 689-690 (2008) (citation omitted). Constitutional and equitable principles require that such extraordinary relief be no broader than necessary. *Cf. Gill v. Whitford*, 585 U.S. 48, 73 (2018); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994).

Defendants—the CFPB itself and its Acting Director, in his official capacity—continue to view this Court's intervention and supervision as unnecessary to preserve Defendant CFPB's existence and continued operation. Indeed, the Bureau's leadership repeatedly explained that the CFPB will discharge its statutorily mandated duties. But even if this Court's concerns had been justified, there would have been no plausible justification for the eight-part preliminary injunction that it entered. That injunction sweeps far beyond anything that could be necessary to address the Court's stated concerns. And it appears to reflect a deeply problematic premise: that the CFPB as it existed on January 19, 2025, should be the benchmark for minimum statutory compliance, and that any departure from that model carries a taint of illegality. Neither statute nor precedent supports such a conclusion.

First, the Court predicated its award of preliminary relief on its belief that CFPB was on

---

[3] The CFPB has already begun taking steps to comply with the Court's preliminary injunction.

the brink of irreversible closure, such that immediate relief was necessary to ensure Defendants perform mandatory statutory duties. Specifically, the Court believed that, absent preliminary relief, "CFPB will be dissolved and dismantled completely in approximately thirty days, well before this lawsuit has come to its conclusion." ECF No. 87 at 112. This belief—which is incorrect and based on outdated evidence since clarified by the current agency leadership,[4]—formed the entire justification for this Court's injunction. *See* ECF No. 87 at 3 (stating that the preliminary injunction was needed to prevent the "eliminat[ion]" of the "agency before the Court has the opportunity to decide whether the law permits . . . it").

But instead of entering an injunction tailored to any particular mandatory statutory duty that Defendants supposedly owe to Plaintiffs, the Court imposed sweeping and intrusive requirements that have no plausible basis in the CFPB's organic statute or any other identified statute. This Court's injunction instead blocks standard workforce decision-making discretion, resource allocation decision-making discretion, and discretion to issue administrative directives retained by that agencies that are not closing.

Indeed, the injunction is built on this fundamental contradiction: to ensure that the Bureau remains open and functional, this Court enjoined the Bureau's political leadership from using ordinary management tools that are available to all open and functioning agencies. The Court asserted that the "agency is either open or it's not," and declared that it was issuing the preliminary injunction for the purpose of ensuring that CFPB remains "open." ECF No. 87 at 46; *see also*, *e.g.*, *id.* at 1, 3, 61, 101. Yet agencies that remain fully "open" possess broad discretion to allocate resources and make personnel decisions, under the control of politically appointed leadership. The impermissible effect of this Court's injunction is to require the Bureau to operate as it stood before

---

[4] Supplemental Declaration of Adam Martinez ¶¶ 3-4, ECF No. 47-1 ("Supp. Martinez Decl.") (noting that since the week of February 10, "a great deal has evolved at the CFPB"); Declaration of Adam Martinez ¶¶ 19-20, ECF No. 31-1 ("Martinez Decl."). As Chief Operating Officer Martinez explained, the new agency leadership is not seeking a "closure of the agency," but is instead focused on "running a substantially more streamlined and efficient bureau" with "refocus[ed] … priorities," while ensuring that the agency continues to "perform each of [its] critical statutory responsibilities." Supp. Martinez Decl. ¶¶ 3-4.

the presidential transition—and without any of the normal tools that "open" executive agencies possess.

For instance, the injunction requires that the Bureau rescind all notices of contract termination issued after February 11, regardless of whether the contract was terminated consistent with the agency's statutory obligations and in reflection of adjusted priorities. *See* ECF No. 88 ¶ 7. The injunction also prohibits CFPB from finalizing any subsequent contract termination, even if the agency has "halted" that contract "based on an individualized assessment" that "the contract involved is unnecessary for the agency to fulfill its statutory functions." *Id*. These requirements are inexplicable. Agencies routinely enter into and terminate contracts based on their needs and priorities, and this Court has provided no basis for curtailing the agency's discretion to do so merely to further the stated goal of keeping the agency open. These provisions are all the more inappropriate in a case purporting to enforce the Consumer Financial Protection Act, which vests Defendants, not this Court, with broad authority with respect to contracts. 12 U.S.C. § 5492(a)(2).

This Court also failed to provide any basis for superintending the agency's management of its personnel through a preliminary injunction. *See Sampson v. Murray*, 415 U.S. 61, 84 (1974) (emphasizing "the general [un]availability of preliminary injunctions in Government personnel cases"). The Court required the agency to reinstate "all probationary and term employees" terminated in a given period without any inquiry into whether the reinstatement of these employees was compelled by a mandatory statutory duty to Plaintiffs. ECF No. 88 ¶ 2.[5]

In the same vein, this Court prohibited the Bureau from making use of any reductions in force regardless of reason. The Court nowhere explains why keeping the CFPB open requires prohibiting *all* workforce adjustments. Nor could it, given that the ability to conduct reductions in

---

[5] The same provision identifies a particular individual as "the Private Student Loan Ombudsman." ECF No. 88 ¶ 2. To be sure, one provision of the Consumer Financial Protection Act provides that the Secretary "shall designate a Private Education Loan Ombudsman" and the position is or has been vacant. 12 U.S.C. § 5535(a). But even if a temporary vacancy justified some mandatory relief, *but see, e.g., In re Barr Lab'ys*, 930 F.2d 72, 74-76 (D.C. Cir. 1991), the statute surely does not vest Ms. Barnard, in particular, with that position. And surely the Student Loan Ombudsman vacancy provides no basis to reinstate all term employees.

5

force is a power enjoyed by nearly every agency in the Executive Branch. Imposing this provision in a purported effort to enforce unidentified mandatory statutory duties is particularly inexplicable given the evidence showing that, when it was founded, the agency was "never supposed to" employ "above 1,000 people." Testimony of Adam Martinez, Tr. of Evidentiary Hr'g (Mar 10, 2025), ECF No. 73, at 53 ("Mar. 10 Tr."). Indeed, the record shows that the statutory cap is structured in a manner to provide funding for approximately 1,000 people, *id.*, not the approximately 1,700 people that the CFPB currently employs, *id.* at 14.

Inexplicably, the Court even enjoined the Bureau to adopt specific information-technology policies, requiring the agency to provide all remote employees with "laptop computers that are enabled to connect securely to the agency server through the Citrix Virtual Desktop or another similar program." ECF No. 88 ¶ 5. While an agency may well determine that remote employees should be issued laptop computers configured with the Citrix Virtual Desktop, those decisions are properly entrusted to agency management. In the absence of an unusual statutory requirement—and no one has cited any such statute here—a district court has no valid basis for issuing orders of this kind.

This Court's prohibition on what it characterizes as a "work stoppage" further exemplifies the mismatch between the injunction and the court's articulated concerns. Nearly every agency, including the CFPB, has the authority to make policy choices about how to implement statutory directives—whether mandatory or discretionary—and it is not uncommon for agency leadership to reevaluate these policy choices at the start of a new administration. *See* Martinez Decl. ¶¶ 3, 11. The Court, however, failed to distinguish between a temporary directive asking employees to briefly pause non-urgent work during a transition period, on the one hand, and the wholesale elimination of an agency on the other. Consequently, the Court improperly prevented the agency from making use of a legitimate management tool by enjoining it from "reinstitut[ing] or seek[ing] to achieve the outcome of a work stoppage, whether through a stop-work order … or any other means." ECF No. 88 ¶ 4.

This restriction cannot be justified by this Court's stated concern about the continued

existence of the agency. As an initial matter, the Court's conclusion that the agency's February 10 e-mail serves as evidence of an ongoing effort to eliminate the agency is incorrect. Agency leadership has repeatedly made clear that the intent of this pause was not to stop work in furtherance of statutory obligations, but rather to "ensure that new leadership could establish operational control over the agency while ensuring that it would continue to fulfill its statutory duties." ECF No. 87 at 29. Indeed, the Court failed to meaningfully grapple with the fact that many of Plaintiffs' members ignored the plain language of the e-mail instructing them to seek approval for urgent and critical CFPB obligations. ECF No. 87 at 88-89. And even though Plaintiffs represent a vast majority of the agency's staff, they have never pointed to a single work request that has been denied. There is not one denial in the hundreds of pages of e-mails presented to the Court by all parties. ECF No. 56-1; ECF No. 57-2. The agency's directives properly acknowledge its discretion to reevaluate how best to allocate resources and prioritize discretionary activities, and they firmly reject the notion that the agency would cease to carry out its mandatory responsibilities.

In any event, even if this Court's concerns about the goals or likely effects of the February 10 e-mail were justified, it erred in relying on that e-mail as a basis for its sweeping prohibition on temporary work stoppages in their entirety. The Court nowhere explained its choice to issue a broader injunction. Instead, the Court effectively required the continuation of all Bureau activities as of January 19, 2025, regardless of their connection to statutory mandates. This severely restricts the discretion of agency management and interferes with the President's ability to ensure oversight and accountability of an Executive Branch agency.

This overreach is particularly striking given this Court's own observation that "this case is not about how the executive exercises his discretion." ECF No. 87 at 107. The Court explicitly noted that its analysis would be different "if the Court were being asked to enjoin a decision on how vigorously the CFPB will enforce particular provisions." *Id*. In that case, the Court conceded, agency discretion over enforcement priorities "would bear heavily on the analysis." *Id*.; *see also Heckler v. Chaney*, 470 U.S. 821 (1985). But the injunction contradicts the Court's

7

acknowledgment of the judiciary's limited role in interfering with an agency's discretionary "realignment of priorities," *id.* (citing *Heckler*, 470 U.S. 821): The court stated that the injunction was necessary to prevent CFPB from "dismantling and shutting down the agency entirely in violation of statutory mandates," yet imposed an injunction that restricts lawful agency discretion in ways entirely unrelated to keeping the agency open.

Because the preliminary injunction is, at best, untethered to this Court's stated goal of ensuring "that the CFPB will still be standing when the Court reaches the merits of this case," ECF No. 87 at 61, the Government is likely to succeed on appeal.

II.     **The Remaining Factors Favor a Stay.**

The equitable factors likewise weigh decisively in the Government's favor, and "the public interest and balance of equities factors merge" where, as here, "the government is the party" against whom an injunction is sought. *MediNatura, Inc. v. FDA*, 998 F.3d 931, 945 (D.C. Cir. 2021).

Again, there is no basis for enforcing an injunction so untethered from the Court's justification for it, and the Government and the public will suffer irreparable harm absent a stay. As it stands, the injunction impinges on the agency's flexibility to make staffing decisions—tools essential to the management of any agency. The injunction undermines Executive Branch governance and irreparably burdens the President's political accountability and authority to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3.

On the other hand, a stay would not harm Plaintiffs. The Court was unequivocal that it was awarding preliminary relief for the purpose of preserving the agency's existence and ensuring that it would continue to be able to fulfill its statutory responsibilities. Because the Court's injunction departed from that goal, a stay would not subject Plaintiffs to the injury the Court sought to prevent. Indeed, there is no risk that this injury would materialize absent a stay, as the Government has repeatedly explained that the CFPB will continue to carry out its congressionally mandated activities. *See, e.g.*, Martinez Decl. ¶ 22 ("The Bureau is committed to performing its statutory obligations, including those listed in 12 U.S.C. § 5493(b)(3)(A), entitled 'Collecting and

tracking complaints.' The Bureau is maintaining a single, toll-free telephone number, a website, and a Consumer Complaint Database to facilitate the centralized collection of, monitoring of, and response to consumer complaints regarding consumer financial products or services.").

### III.   At A Minimum, The Court Should Enter a Partial Stay.

At a minimum, this Court should stay the portions of its injunction that most severely intrude on the agency's day-to-day operations.

Paragraphs 2 and 3 of the injunction require the reinstatement of all probationary and term employees, regardless of circumstance, and prevent any reductions of force, even if such reductions would not affect the agency's ability to carry out its mandatory statutory duties. Together, these provisions effectively eliminate all Executive discretion over personnel matters— even those unrelated to agency closure or statutory requirements.  Indeed, they prevent even ordinary staffing adjustments routinely made by new administrations.  The Court's articulated concern about ensuring the agency's continued operation provides no basis for such extreme restraints on agency personnel actions.

Paragraph 4 similarly reaches far beyond what is necessary to ensure the agency's continued operation by preemptively prohibiting the agency from temporarily pausing work activities while agency priorities are reassessed.  As explained above, temporary work pauses can serve legitimate management purposes and are an important tool of agency management during presidential transitions.  Preserving such Executive Branch discretion is particularly important for agencies that—like the CFPB—have enforcement discretion requiring evaluation of "the many variables involved in the proper ordering of its priorities." *Heckler*, 470 U.S. at 831-832 (noting the "general unsuitability for judicial review of agency decisions to refuse enforcement").  By broadly prohibiting work stoppages, the injunction unnecessarily intrudes on day-to-day operations and enforcement discretion.

Paragraph 7 requires reinstatement of all terminated contracts regardless of whether any given contract is consistent with current agency priorities or necessary to fulfill any identified mandatory statutory duty.  This provision, moreover, prohibits the agency from finalizing any

9

subsequent decision to terminate a contract—even if the agency has "halted" the contract based on an individualized assessment that it is unrelated to CFPB's congressionally mandated functions, that the contractor's performance is unsatisfactory, or that the contract is duplicative of other work. A provision that, as here, burdens routine contract management unrelated to agency closure cannot be justified as necessary to ensure the agency's continued operation.

Finally, despite the Government's request for a brief stay of any injunction to permit appeal, ECF No. 31 at 40, paragraph 8 requires the agency to ensure and confirm compliance with the injunction by this Friday, April 4, likely before this Court or the D.C. Circuit has an adequate opportunity to consider whether the injunction should be stayed in whole or part. The Government requests an immediate administrative stay of this provision at a minimum to allow the Court time to act on the motion for a stay pending appeal to minimize the disruption entailed by, *e.g.,* the injunction's requirement that the agency rehire employees and rescind contract terminations.

## CONCLUSION

For the foregoing reasons, this Court should enter a stay pending appeal.

DATED: April 1, 2025    Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

BRAD P. ROSENBERG
Special Counsel

*/s/ Liam C. Holland*
LIAM C. HOLLAND
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 514-4964
Fax: (202) 616-8470
Email: liam.c.holland@usdoj.gov

*Counsel for Defendants*