IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL TREASURY EMPLOYEES UNION, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>RUSSELL VOUGHT, in his official capacity as Acting Director of the Consumer Financial Protection Bureau, *et al.*,<br><br>*Defendants*. | Case No. 1:25-cv-00381-ABJ<br><br>**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO STAY PRELIMINARY INJUNCTION** |

Deepak Gupta (DC Bar No. 495451)
Robert Friedman (D.C. Bar. 1046738)
Gabriel Chess* (DC Bar No. 90019245)
Gupta Wessler LLP
2001 K Street, NW
North Tower, Suite 850
Washington, DC 20006
(202) 888-1741

Jennifer D. Bennett (pro hac vice)
Gupta Wessler LLP
505 Montgomery Street
San Francisco, CA 94111
(415) 573-0335

*D.D.C. bar application pending

*Counsel for Plaintiffs*

Wendy Liu (DC Bar No. 1600942)
Adina H. Rosenbaum* (DC Bar No. 490928)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiffs*

Julie Wilson (DC Bar No. 482946)
General Counsel
Paras N. Shah (DC Bar No. 983881)
Deputy General Counsel
Allison C. Giles (DC Bar No. 439705)
Assistant Counsel
National Treasury Employees Union
800 K Street, NW, Suite 1000
Washington, DC 20001
(202) 572-5500

*Counsel for Plaintiff National Treasury Employees Union*

April 2, 2024

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR A STAY**

The defendants' motion meets none of the requirements for a stay. *See Nken v. Holder*, 556 U.S. 418, 434 (2009). It relies on a fictional account of the facts that is entirely at odds with the findings of this Court, and it does not show that the defendants are likely to succeed on the merits, that they will suffer irreparable harm without a stay, or that the equities weigh in their favor. The motion should be denied.

**1.** The defendants do not even try to dispute this Court's conclusion that the plaintiffs are likely to succeed on their separation-of-powers and APA claims. Instead, their sole argument on the merits is about the scope of the relief ordered by the Court. But this Court narrowly tailored the injunction to the unlawful action at issue: the dismantling of the CPFB. As the Court explained, "Absent an injunction freezing the status quo—preserving the agency's data, its operational capacity, and its workforce—there is a substantial risk that the defendants will complete the destruction of the agency completely in violation of law well before the Court can rule on the merits, and it will be impossible to rebuild." Op. at 2.

Despite a two-day evidentiary hearing that conclusively showed otherwise, the defendants continue to claim that the conclusion that they are dismantling the agency is "based on outdated evidence since clarified by the current agency leadership." Stay Mot. at 4 (citing the Declaration of Adam Martinez, ECF No. 3l-1 and Supplemental Declaration of Adam Martinez, ECF No. 47-1).¹ But this Court considered carefully the evidence cited by the defendants, the testimony at the

---

¹ *See also* D.C. Cir. Mot. Stay 6 (citing first Martinez declaration and describing actions taken "[u]nder the new leadership" as "common practice at the beginning of a new administration"); *id.* at 7–8 (citing both Martinez declarations to claim that, "[a]s the new leadership team established itself," "the Bureau made clear that it remained committed to fulfilling the CFPB's statutory obligations."); *id.* at 8 (citing second Martinez declaration to claim that "new agency leadership is not seeking a closure of the agency"); *id.* (the emails sent by Martinez and

1

hearing, and the declarations submitted by the plaintiffs, and found that "nothing has changed." Op. at 2. "The defendants are still engaged in an effort to implement a Presidential plan to shut the agency down entirely and to do it fast." *Id*.

The defendants also assert that, even without an injunction, they will continue to perform their statutory duties, and that the injunction is broader than necessary to ensure they continue their statutory duties. But, at the hearing, the defendants disclaimed knowing what the term "statutory duties" meant. As this Court stated, "the defendants cannot expect the Court to be comforted by their recent announcement to employees that they should perform their statutory functions when they are simultaneously insisting that the term is so vague, no one – not even the Acting Director of the agency – knows what it means." *Id*. at 4.

Moreover, each aspect of the injunction corresponds to the key steps that the defendants took and intend to take to implement their decision "to dismantle and shut down the agency entirely." *Id.* at 107. For example, the defendants object to the injunction's provision regarding the termination of contracts (paragraph 7). But this provision responds to defendants' actions rushing to terminate nearly all of the agency's contracts, including at least some that employees had affirmatively identified as necessary to perform "a statutory requirement." Op. at 68. And the injunction provision preserves flexibility for the defendants: although they cannot finalize the termination of any contract, they can order "that work or services under specific contracts be halted based on an individualized assessment that the contract involved is unnecessary for the agency to

---

Paoletta on February 27 and March 2 "highlighted that earlier communications regarding work stoppage had excepted tasks required by law"); *id.* at 9 ("Agency leadership thus made clear by early March that CFPB would continue to perform all functions required by law."); *id.* at 24 (citing first Martinez declaration for claim that "there is no risk that this injury would materialize absent a stay, as the government has repeatedly explained that CFPB will remain open and will continue to carry out its congressionally mandated activities").

fulfill its statutory functions." Order at 3. The order to stop work on individual contracts stops the CFPB's payments obligations on those contracts, *see* Op. 55 (citing contract termination notice at Dkt. 60-1, Ex. D, ordering contractor to "stop work" and "incur[] no additional costs"). Thus, the defendants are free to do the "routine[]" work of "enter[ing]" and "terminat[ing] contracts." *Contra* Mot. at 17. What they cannot do is permanently wind-up contracts on which the CFPB relies such that contracts can't "be turned back on" at the end of this case. Op. 102.

A stay is also unjustified because many of the defendants' complaints are a result of their own litigation positions and refusal to confer in good faith with the plaintiffs. For instance, the defendants' chief complaint is that the order "does not track any specific CFPB duties Congress made obligatory." Mot. 2. But the defendants previously told the Court that the nature of their statutory duties was too "ambiguous" to support relief and that issuing such an order would not only be impermissible, but also that they would not "know what [it] mean[s]." Op. 97–98; *see also* March 11 Tr. 116–17, 121. This Court should make clear that the defendants themselves asked the Court not to issue the very order they now claim it should have entered. Likewise, the defendants criticize the contract-termination provision. Mot. 5. Putting aside that the provision does not do what they say it does, the defendants also refused the plaintiffs' repeated overtures to confer about this topic or even to provide the "master spreadsheet" of contracts so that the plaintiffs could, on their own, attempt to narrow the universe of contracts. Dkt. 79. It is not this Court obligation to "propose a range of conceivable" options "until the government found one to its liking." *J.D. v. Azar*, 925 F.3d 1291, 1335 (D.C. Cir. 2019). And the defendants are not likely to succeed on appeal arguing otherwise.[2]

---

[2] In the D.C. Circuit, the defendants have also noted that Vought is the head of the Office of Management and Budget, rather than the Office of Personnel Management. D.C. Cir. Mot. Stay

3

**2.** The defendants' arguments on irreparable harm and the balance of the equities fare no better. Their sole claim of a harm is the assertion that the order undermines "Executive Branch governance" and "burden[] the President's political accountability and authority to 'take Care that the Laws be faithfully executed.'" Stay Mot. at 23. This Court found it likely, however, that plaintiffs will succeed on the merits of their claims. Prohibiting the government from taking *unconstitutional* and *unlawful* actions while an appeal is pending cannot possibly "irreparably burden" the President's authority to "take Care that the Laws be *faithfully* executed." Moreover, the defendants voluntarily agreed to the core relief in the preliminary injunction *order for over a month* to avoid having to litigate on a more expedited basis. The defendants do not explain how relief that they were willing to agree to for a month has become so harmful that it cannot remain in place through an expedited appeal. Nor does the government even attempt to explain how any other provision in the preliminary injunction could cause irreparable harm during that brief time.

In contrast, without an injunction, plaintiffs and the public will suffer irreparable injury. This Court found that "defendants are poised to complete th[e] process [of shutting down the agency]" absent an injunction, Op. 107, and that "[o]nce the agency is gone, there will be no opportunity to afford relief at a later point in the litigation," *id.* at 101. The motion for a stay should be denied

**3.** Although the defendants are not entitled to a stay pending appeal, to facilitate orderly briefing and disposition of the stay motion, the plaintiffs do not oppose a brief administrative stay, provided that the Court orders that, while an administrative stay is in place, the defendants must continue to comply with the personnel termination and data deletion provisions of the February

---

18 n.2; *see, e.g.,* Mem. Op., Dkt. 87, at 44, 67, 86. This Court may wish to clarify that that small mistake was not integral to its opinion or simply enter an amended opinion.

14, 2025 agreed-upon order, Dkt. 19, as well as the agreed-upon prohibition against finalizing the cancellation of any contracts, see Dkt. 71. The plaintiffs propose that any such administrative stay expire upon the disposition of the defendants' motion to stay in this Court and any motion to stay in the D.C. Circuit.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion for a stay pending appeal, but enter an administrative stay and a temporary order—that expires upon the D.C. Circuit's disposition of any motion to stay before that Court—requiring the defendants to comply with the personnel termination and data deletion provisions of the February 14, 2025 agreed-upon order, Dkt. 19, as well as the agreed-upon prohibition against finalizing the cancellation of any contracts, see Dkt. 71.

Dated: April 2, 2025

/s/ Deepak Gupta
Deepak Gupta (DC Bar No. 495451)
Robert Friedman (D.C. Bar. 1046738)
Gabriel Chess* (DC Bar No. 90019245)
Gupta Wessler LLP
2001 K Street, NW
North Tower, Suite 850
Washington, DC 20006
(202) 888-1741

Jennifer D. Bennett (pro hac vice)
Gupta Wessler LLP
505 Montgomery Street
San Francisco, CA 94111
(415) 573-0335

*D.D.C. bar application pending

*Counsel for Plaintiffs*

Respectfully submitted,

/s/ Wendy Liu
Wendy Liu (DC Bar No. 1600942)
Adina H. Rosenbaum* (DC Bar No. 490928)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiffs*

Julie Wilson (DC Bar No. 482946)
General Counsel
Paras N. Shah (DC Bar No. 983881)
Deputy General Counsel
Allison C. Giles (DC Bar No. 439705)
Assistant Counsel
National Treasury Employees Union
800 K Street, NW, Suite 1000
Washington, DC 20001
(202) 572-5500

*Counsel for Plaintiff National Treasury Employees Union*

6