UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NATIONAL TREASURY EMPLOYEES UNION, *et al.*, <br><br>  Plaintiffs, <br><br> v. <br><br> RUSSELL VOUGHT *in his official capacity as Acting Director of the Consumer Financial Protection Bureau, et al.*, <br><br>  Defendants. | Civil Action No. 25-0381 (ABJ) |

## ORDER

On March 28, 2025, after two days of evidentiary hearings and full briefing by the parties, the Court found that defendants were in fact engaged in an unlawful effort to dismantle and eliminate the Consumer Financial Protection Bureau that had been created by Congress. *See* Mem. Op. [Dkt. # 87]. Based on its findings that the plaintiffs are likely to succeed on the merits, they are likely to suffer irreparable harm in the absence of preliminary relief, the balance of equities tips in their favor, and an injunction serves the public interest, the Court granted plaintiffs' motion for preliminary injunction and issued an order designed to preserve the status quo. The Court stated, "[i]f the defendants are not enjoined, they will eliminate the agency before the Court has the opportunity to decide whether the law permits them to do it, and as the defendants' own witness warned, the harm will be irreparable." Mem. Op. at 3.

Among other things, the injunction required that:

1. Defendants shall maintain and . . . not delete, destroy, remove, or impair any data or other CFPB records covered by the Federal Records Act (hereafter 'agency data') except in accordance with the procedures described in 44 U.S.C. Chapter 33;

1

2. Defendants shall reinstate all probationary and term employees terminated between February 10, 2025 and the date of this order, including but not limited to . . . the Private Student Loan Ombudsman;

3. Defendants shall not terminate any CFPB employee, except for cause related to the individual employee's performance or conduct, and defendants shall not issue any notice of reduction-in-force to any CFPB employee;

4. Defendants shall not enforce the February 10, 2025 stop-work order or require employees to take administrative leave in furtherance of that order, and defendants shall not reinstitute or seek to achieve the outcome of a work stoppage, whether through a stop-work order, an order directing employees to take administrative leave, or any other means; and . . .

6. Defendants shall ensure that in accordance with 12 U.S.C. § 5492(b)(3), the CFPB Office of Consumer Response continues to maintain a single, toll-free telephone number, a website, and a database for the centralized collection of consumer complaints regarding consumer financial products and services, and that it continues to monitor and respond to those complaints, including by providing Elevated Case Management.

Prelim. Inj. [Dkt. # 88] at 1–2.

On April 1, defendants moved to stay the Order pending appeal, Mot. to Stay [Dkt. # 97], which the Court granted in part and denied in part on April 3. Order [Dkt. # 102]. It reiterated that in issuing the preliminary injunction, "after a detailed analysis of the testimony and agency records introduced by both sides, it found that plaintiffs are likely to succeed on the merits of their claims, including the claim that the defendants are in fact engaged in an effort to shut down the agency in violation of law notwithstanding their denials." *Id.* at 2. Given its prior findings, the Court was skeptical of the defendants' assurances that they would carry out the agency's statutory mission, and it found that a stay would substantially injure the plaintiffs and would be contrary to the public interest. "The defendants would be free to move swiftly to take the steps that would eliminate the agency . . . which the Court already found they are poised to do." *Id.* at 5. However, with the plaintiffs' consent, it stayed the provision in paragraph 8 of the Order that required the agency to report on its compliance with the injunction by April 4. *Id.* at 1.

In the meantime, defendants had filed a substantially similar emergency motion with the D.C. Circuit seeking a stay pending appeal. *NTEU v. Vought*, Case No. 25-5091 (D.C. Cir.), Emergency Mot. for an Admin. Stay and Stay Pending Appeal and Supp. Mem. [Dkt. # 210841] ("Defs.' Mot."). In a short per curiam order issued on the evening of Friday, April 11, the Court

2

of Appeals granted the motion in part and denied it in part. *See id.*, Order [Dkt. # 2110720] ("Cir. Order"). After considering the defendants' representations that the Bureau would continue to perform its mandatory statutory duties, *see e.g.*, Defs.' Mot. at 1, 2, & 3, and that it was engaged in nothing more than a typical reevaluation of policy priorities at the start of a new administration rather than the wholesale elimination of an agency, *see id.* at 6, it ordered:

> Provision two (2) is stayed insofar as it requires defendants to reinstate employees whom defendants have determined, after an individualized assessment, to be unnecessary to the performance of defendants' statutory duties.
>
> Provision three (3) is stayed insofar as it prohibits defendants from terminating or issuing a notice of reduction in force to employees whom defendants have determined, after a particularized assessment, to be unnecessary to the performance of defendants' statutory duties.
>
> The court understands provision four (4) to allow work stoppages that defendants have determined, after a particularized assessment, would not interfere with the performance of defendants' statutory duties. On that understanding, provision four (4) remains in effect.

Cir. Order at 1–2. The Court also stayed provision eight (8), which had been stayed by this Court as well, and it set a schedule for the briefing of defendants' appeal of the preliminary injunction with a hearing more than a month away. *Id.* at 2. It then announced:

> All other provisions of the preliminary injunction remain in full effect pending further order of the court.

*Id.*

That was on Friday evening. And within three to four business days, the agency took the feared swift and decisive action to RIF more than eighty percent of its workforce: to terminate more than 1400 of its employees, even more than the total who were on the chopping block on February 14.

At 6:02 p.m. on Thursday April 17, 2025, plaintiffs filed an emergency motion for an order to show cause as to why defendants had not violated the preliminary injunction. Mot. for Order to Show Cause [Dkt. # 105]. The motion stated that earlier that day, defendants sent reduction-in-force notices to the vast majority of CFPB employees and that all affected employees would be entirely cut off from computer access at 6:00 p.m. on Friday, April 18, 2025. *Id.* at 1. The Court scheduled a hearing for Friday at 11:00 a.m., and it called for the production of certain materials. *See* Minute Order (Apr. 17, 2025).

In response to the Court's order, defendants filed a list of the 1408 employees subject to the RIF.  Notice of Sealed Filing [Dkt. # 108].  They also supplied the Court with a copy of the memorandum sent to CFPB employees from Mark R. Paoletta, Chief Legal Officer of the CFPB, entitled "2025 Supervision and Enforcement Priorities," on Wednesday, April 16, 2025, and a representative memorandum from defendant Russell Vought to an employee concerning "Specific Notice of Reduction in Force," that was dated April 17, 2025.  Attachments to Paoletta Decl. [Dkt. # 109].  Defendants also filed a declaration from Paoletta averring that along with two unnamed CFPB attorneys, on some unspecified date, he "conducted a particularized assessment to determine which employees are unnecessary for the Bureau to perform its statutory duties."  Paoletta Decl. [Dkt. # 109] at 2.  The declaration does not describe any consultation with the heads of the various offices involved.

On April 18, plaintiffs filed six declarations of their own, which paint a dramatically different picture.  *See* Notice of Decls. [Dkt. # 106]; Decl. of Jason Brown, [Dkt. # 110]; Decl. of Josh Friedman [Dkt. # 110-1]; 2d Decl. of Alex Doe [Dkt. # 111].  Matthew Pfaff, Chief of Staff for the Office of Consumer Response, states that no managers in Consumer Response were consulted by agency leadership about the level of staff needed to perform the office's statutory duties (which are now explicitly incorporated in the Order) or how the RIF would affect its ability to respond to the thousands of consumer complaints and inquiries from banks that it receives.  3d Decl. of Matthew Pfaff [Dkt. # 106-1] ¶¶ 3, 7.  The RIF will reduce the statutorily mandated Office from approximately 135 employees to eight, none of whom are the ones who carry out the day-to-day tasks involved in fulfilling its obligations.  *Id.* ¶ 5.

Jason Brown, the head of the statutorily mandated Office of Research, states that only he and two other senior leaders will remain after the RIF, and that none of them were consulted about how these terminations would impact the office's ability to fulfill its statutory duties.  *See* Decl. of Jason Brown [Dkt. # 110] ¶¶ 3–4.  Josh Friedman, an Air Force veteran and employee of the Bureau's Office of Servicemember Affairs, another office called for by Congress, states that he and all or nearly all employees of that office "ha[ve] been RIFd" and that the office "will not be able to perform its statutory duties" without adequate, experienced staff.  Decl. of Josh Friedman [Dkt. # 110-1] ¶¶ 3, 5.

Finally, Alex Doe, who was formerly on the Bureau's RIF team until she testified before this Court, was advised by other team members that this RIF is even larger than the one that had

4

been planned for February 14, and that someone named Gavin Kliger of DOGE managed the RIF in lengthy, contentious meetings with the team this week. 2d Decl. of Alex Doe ¶¶ 3, 5–6. She stated that "[t]eam members raised the concern with Adam Martinez [the CFPB Chief Operating Officer who oversees the Office of Human Capital] that there was a court order requiring that they do a particularized assessment, but they were told all that mattered was the numbers. The direction to ignore the concern came from Mark Paoletta, who said the numbers-based RIF should move forward, and that leadership would assume the risk." *Id.* ¶ 7.

The Court held a hearing this morning at which plaintiffs made an oral motion that the Court enforce its Order, and the motion for an order to show cause was deemed to be a motion to enforce. Counsel for the defendants professed to have little knowledge of what had transpired at the agency or who was involved. It became clear to the Court that given the starkly different pictures being presented by declarations alone, it is necessary to conduct an evidentiary hearing before the Court can determine whether the agency is complying with or flouting the Order. Both parties asked for time to be able to prepare, and a schedule was established with the consent of both sides: plaintiffs may issue requests for production of documents to defendants by Friday, April 18; defendants' response to the motion to enforce is due by Tuesday, April 22; plaintiffs' reply is due by Thursday, April 24; and a hearing is set for Monday, April 9:30 a.m.[1]

It also became clear that it is incumbent upon the Court once again to preserve the status quo in the meantime, and the Court ruled on the record that the announced RIF of the 1408 employees listed in Dkt. 108 may NOT be implemented or effectuated, and that employees' access to work systems, including email and internal platforms, may NOT be discontinued at 6:00 pm today. The defense voiced no objection to this directive.

Given the scope and speed of the agency's action, the apparent lack of consultation with the heads of the statutorily mandated agency components involved, and the troubling description of the RIF meetings set forth in plaintiffs' declarations, the Court has significant grounds for concern that the defendants are not in compliance with its Order as it was refined by the Court of Appeals. While the Chief Legal Counsel has intoned the phrase "particularized assessment," there is reason to believe that the defendants simply spent the days immediately following the Circuit's

---

1    The Court proposed to hold the hearing on Wednesday, April 23, but both parties asked for more time.

relaxation of the Order dressing their RIF in new clothes, and that they are thumbing their nose at both this Court and the Court of Appeals.

The material submitted to date provides cause to believe that a RIF that will decimate the agency and render it unable to comply with its statutory duties is underway, and that it will be completed before this Court can determine whether it comports with the Order of March 27, as stayed in part by the Circuit's Order of April 11. Under those circumstances, the Court must act, and it has the power to act.

"It is well established that the District Court is without jurisdiction to alter a judgment of its own while an appeal therefrom is ongoing. But it is equally clear that the vitality of that judgment is undiminished by pendency of the appeal. Unless a stay is granted either by the court rendering the judgment or by the court to which the appeal is taken, the judgment remains operative. To be sure, for as long as the appellate court retains its mandate it maintains its jurisdiction over the case, and thus the power to alter the mandate. But non-issuance of the mandate by the appellate court has no impact on the trial court's powers to enforce its unstayed judgment since the latter court has retained that power throughout the pendency of the appeal." *Deering Milliken, Inc. v. FTC,* 647 F.2d 1124, 1128–29 (D.C. Cir. 1978) (footnotes omitted). *See Maness v. Myers,* 419 U.S. 449, 458–59 (1975) ("[It is a] basic proposition that all orders and judgments of courts must be complied with promptly. . . . The orderly and expeditious administration of justice by the courts requires that an order issued by a court with jurisdiction over the subject matter must be obeyed by the parties until it is reversed by orderly and proper proceedings.").

Once again, the Court is confronted with evidence that gives rise to concerns that there will be no agency standing by the time it gets to consider the merits, by the time the Court of Appeals rules on the legality of the preliminary injunction, or even by the time it holds a hearing on the motion to enforce the Order. As the D.C. Circuit has recently reiterated, Rule 65 authorizes a district court to issue interim relief to prevent irreparable injury and to preserve the status quo while the district court assesses the merits of a case. *Dellinger v. Bessent*, No. 25-5028, 2025 WL 559669, at *3 (D.C. Cir. Feb. 15, 2025), citing *Cobell v. Kempthorne*, 455 F.3d 301, 314 (D.C. Cir. 2006) ("The usual role of a preliminary injunction is to preserve the status quo pending the outcome of litigation.") (cleaned up). A district court "ha[s] authority, from the necessity of the case, to make orders to preserve the existing conditions and the subject of the petition" until it

can determine how to proceed, as "the law contemplates the possibility of a decision either way, and therefore must provide for it." *Id.* at *3, quoting *United States v. Shipp*, 203 U.S. 563, 573 (1906). Those principles surely apply when the Court is faced with what appears to be a violation of a preliminary injunction that has already been reviewed and refined by the Court of Appeals and that remains in force, and the Court finds it necessary to enjoin the planned RIF to preserve the existing conditions and the subject of plaintiffs' motion until it can determine how to proceed.

Therefore, as stated on the record at today's hearing, the defendants are ordered as follows:

1) the Reduction in Force announced by Acting Director Vought on or about April 17, 2025 is SUSPENDED and it may NOT be implemented, effectuated, or completed in any way until this Court has ruled on plaintiffs' motion to enforce the preliminary injunction, and

2) the defendants are PROHIBITED from discontinuing any employee's access to work systems, including email and internal platforms until this Court has ruled on plaintiffs' motion.

**SO ORDERED.**

AMY BERMAN JACKSON
United States District Judge

DATE: April 18, 2025