**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| NATIONAL TREASURY EMPLOYEES UNION, *et al.*, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| RUSSELL VOUGHT, *in his official capacity as Acting Director of the Consumer Financial Protection Bureau, et al.*, | ) ) ) ) ) ) |
| Defendants. | ) ) ) |

Civil Action No. 25-0381 (ABJ)

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO ENFORCE**

## INTRODUCTION

On February 8, 2025, Defendant Russell Vought, Acting Director of the Consumer Financial Protection Bureau ("CFPB") stated in a letter to the Federal Reserve that the "Bureau's new leadership will run a substantially more streamlined and efficient bureau[.]" Exhibit G to Declaration of Adam Martinez ("Martinez Decl."), ECF No. 31-1. To this end, the Acting Director did not request any additional funding from the Federal Reserve for the Third Quarter of Fiscal Year 2025. *Id*. But on March 28, 2025, this Court preliminarily enjoined him from fulfilling his commitment to run a substantially more streamlined and efficient Bureau. Specifically, and among a number of other directives, the Court ordered that Defendants Vought and the CFPB "shall not issue any notice of reduction-in-force ("RIF") to any CFPB employee." ECF No. 88 ¶ 3.

Two weeks later, on April 11, 2025, the D.C. Circuit issued a partial stay of that order. Under the terms of the D.C. Circuit's stay order, Defendants are permitted to undertake a RIF as to "employees whom defendants have determined, after a particularized assessment, to be unnecessary to performance of defendants' statutory duties." Order, *National Treasury Employees Union v. Vought*, No. 25-5091 (D.C. Cir. Apr. 11, 2025) ("Stay Order").

Unsurprisingly, Defendants issued RIF notices to CFPB personnel the following week. Contrary to Plaintiffs' narrative, that was not some rushed, sloppy plan devised over just a few business days since the Stay Order. Declaration of Mark Paoletta ("Paoletta Decl."), ECF No. 109 ¶¶ 1-21. Rather, it reflected a commitment to streamlining that was made months earlier, and it followed from many weeks of on-the-ground work, consultation, and investigation by the Bureau's new leaders, including development of a new set of agency priorities to guide enforcement going forward. *Id*. In light of those diligent efforts and preparations, the CFPB was prepared to move relatively promptly after the Stay Order to complete a "particularized assessment" and determine which employees were unnecessary for a streamlined and right-sized Bureau to perform its statutory duties. *See id*.

Nonetheless, Plaintiffs immediately returned to this Court requesting, literally overnight, that it issue an order to show cause why Defendants have not violated the preliminary injunction

1

order. ECF No. 105. And at a hearing the following morning, the Court deemed that motion to be a motion to enforce and issued temporary relief restraining the RIF pending discovery and resolution of this motion. *See* ECF No. 113 at 5.

Plaintiffs' arguments rest on fundamental misunderstandings of the D.C. Circuit's Stay Order. ECF No. 105 at 2. Plaintiffs suggest that the Court should conduct its own analysis of whether the RIF would interfere with the performance of CFPB statutory duties. *Id*. But the Stay Order plainly requires *Defendants*—not this Court or Plaintiffs—to determine that employees subject to a RIF are unnecessary to the performance of CFPB's statutory duties. Stay Order at 1. And the agency's Chief Legal Officer submits that he and two other attorneys have made that determination (again, following months of analysis and investigation). Paoletta Decl. ¶¶ 1-21.

Plaintiffs also suggest that Defendants were required to have "made a 'particularized assessment' of *each* employee's role[.]" ECF No. 105 at 2 (emphasis added). But the Stay Order, insofar as it applies to provision three of the preliminary injunction, does not require an "individualized assessment"—it requires a "particularized assessment." Stay Order at 1. And the CFPB's Chief Legal Officer submits that he conducted a particularized office-by-office assessment that the employees subject to the RIF are unnecessary to the performance of Defendants' statutory duties. Paoletta Decl. ¶¶ 5-18. Because Plaintiffs have supplied no basis for the Court grant their motion, it should be denied.

## BACKGROUND

On March 28, 2025, this Court entered a preliminary injunction. ECF No. 88. In relevant part, provision (3) of the injunction stated that: "Defendants shall not terminate any CFPB employee, except for cause related to the individual employee's performance or conduct; and defendants shall not issue any notice of reduction-in-force to any CFPB employee." *Id.* at 2. The parties understood that provision to prohibit Defendants from undertaking any RIF—precluding the Bureau's new leadership from carrying out the President's direction to all agency heads to "initiate large-scale reductions in force." Executive Order 14210, *Implementing the President's*

2

*"Department of Government Efficiency" Workforce Optimization Initiative*, 90 Fed. Reg. 9669, 9670 (Feb. 11, 2025).

On April 11, 2025, following stay briefing and oral argument, the D.C. Circuit issued the Stay Order. In relevant part, the D.C. Circuit ordered: "Provision three (3) is stayed insofar as it prohibits defendants from terminating or issuing a notice of reduction in force to employees whom defendants have determined, after a particularized assessment, to be unnecessary to the performance of defendants' statutory duties." Stay Order at 1. Under the plain terms of that Stay Order, Defendants are entitled to proceed with RIF notices provided that Defendants first make a "particularized assessment" that the affected employees are "unnecessary" for performing the CFPB's statutory duties.

Defendants proceeded accordingly. To comply with the Stay Order, and building upon the work that had been done since the transition (including the development of a new set of policy priorities for agency enforcement), Chief Legal Officer Mark Paoletta worked with two other CFPB attorneys to conduct "a particularized assessment to determine which employees are unnecessary for the Bureau to perform its statutory duties." Paoletta Decl. ¶ 6. They "went line by line through each competitive area to determine how many employees were necessary in each area," in light of statutory obligations. *Id.* ¶ 7. The details of that particularized assessment are set forth in a declaration that identifies each relevant office or unit and the conclusion reached about the statutory functions that it serves. *Id.* ¶¶ 8-18. All told, Defendants concluded that an "approximately 200 person agency allows the Bureau to fulfill its statutory duties and better aligns with the new leadership's priorities and management philosophy." *Id.* ¶ 21. They sent RIF notices to the remaining CFPB employees, who would remain on paid administrative leave for 60 days until the RIF takes effect. *See id.* ¶ 22.

On April 17, 2025, after learning of this RIF, Plaintiffs immediately returned to this Court seeking an order to show cause why the RIF did not violate the (partially stayed) preliminary injunction. ECF No. 105. Their motion rested largely on speculation about how the RIF would supposedly impact the agency's ability to perform its statutory functions. *Id.* at 2.

3

Shortly before midnight, the Court entered an order demanding various documents be filed by 10 AM, with a hearing at 11 AM at which the Court required attendance of "a person with personal knowledge of the scope of the [RIF] and the decision to implement it." Minute Order of 11:13 PM (Apr. 17, 2025). Defendants filed the documents, plus the Paoletta Declaration. ECF Nos. 108, 109. At the hearing, Plaintiffs made an oral motion that the Court enforce its preliminary injunction order, and Plaintiffs' motion for an order to show cause was deemed to be a motion to enforce. *See* ECF No. 113 at 5.

After its hearing, this Court entered an order providing that "the Reduction in Force announced by Acting Director Vought on or about April 17, 2025 is SUSPENDED and it may NOT be implemented, effectuated, or completed in any way until this Court has ruled on plaintiffs' motion to enforce the preliminary injunction[.]" ECF No. 113 at 7. The order further states that "the defendants are PROHIBITED from discontinuing any employee's access to work systems, including email and internal platforms until this Court has ruled on plaintiffs' motion." *Id.* Defendants have since noticed an appeal from that order, and the D.C. Circuit is now entertaining briefing on a motion to enforce or clarify its Stay Order.

## ARGUMENT

As described in the Declaration of Mark Paoletta, Defendants have made the requisite "particularized assessment" and therefore Plaintiffs' motion to enforce should be denied. "Success on a motion to enforce a [preliminary injunction] gets a plaintiff only 'the relief to which the plaintiff is entitled under its original action and the [preliminary injunction] entered therein.'" *See Heartland Reg. Med. Ctr. v. Leavitt*, 415 F.3d 24, 29 (D.C. Cir. 2005) (quoting *Watkins v. Washington*, 511 F.2d 404, 406 (D.C. Cir. 1975)); *see also Anglers Conservation Network v. Ross*, 387 F. Supp. 3d 87, 93 (D.D.C. 2019) (same). To show that they are entitled to that relief, Plaintiffs must show that Defendants failed to take "good faith and substantial efforts to comply with th[e] Court's directives,"—here, in view of the D.C. Circuit's Stay Order. *See Samma v. U.S. Dep't of Def.*, Civ. A. No. 20-1104 (RDM), 2022 WL 1449404, at*4 (D.D.C. Mar. 22, 2022). Plaintiffs have not made that showing.

4

The D.C. Circuit's Stay Order empowered Defendants to conduct a RIF as to any CFPB employee "whom *defendants have determined*, after a particularized assessment, to be unnecessary to the performance of defendants' statutory duties." Stay Order at 1 (emphasis added).  The order thus unambiguously means that if *defendants* make the requisite assessment and determination, they may proceed with a RIF without violating the district court's injunction.  Defendants made those requisite assessments and determinations, as the record substantiates in detail.  Paoletta Decl. ¶¶ 5-21; *supra* at p. 3.  Plaintiffs may disagree with those assessments and determinations, but it is a judgment call that the Consumer Financial Protection Act authorizes *Defendants* to make—not plaintiffs or a court.  *See* 12 U.S.C. § 5493(a)(1)(A) (authorizing the CFPB Director to "fix the number of . . . employees of the Bureau"); 12 U.S.C. § 5493(a)(1)(B) ("The Director is authorized to employ . . . employees *as may be deemed necessary* to conduct the business of the Bureau." (emphasis added)).  The D.C. Circuit's Stay Order followed suit—and avoided the problem of a fatally ambiguous injunction—by staying provision (3) as to employees "*whom defendants have determined*, after a particularized assessment," are unnecessary to fulfill the Bureau's statutory duties.  Stay Order at 1 (emphasis added).  If that determination is made, there is no basis for further inquiry.

Plaintiffs' suggestion that they are entitled to relief rests on a profound misunderstanding of the Stay Order, one that permits this Court to second-guess Defendants' determinations.  For example, Plaintiffs submit the opinion of a CFPB employee suggesting that, contrary to the Chief Legal Officer's assessment, the RIF will leave one of the Bureau's offices unable to perform its statutory duties.  *See* Third Declaration of Matthew Pfaff, ECF No. 106-2.  Such inquires violate the D.C. Circuit's Stay Order, which expressly committed to *Defendants* the determination of how many and which employees were necessary to carry out the Bureau's statutory duties.

Plaintiffs' motion also appears to be premised on an untenable interpretation of the D.C. Circuit's requirement that Defendants engage in a "particularized assessment."  Notably, although the D.C. Circuit specified that Defendants must engage in an "individualized assessment" with respect to already terminated employees, it required only a "particularized assessment" with

5

respect to employees subject to a new reduction in force. Stay Order at 1. That variation in wording is presumed meaningful. *Cf. Russello v. United States*, 464 U.S. 16, 23 (1983). Plaintiffs provide no valid basis to cast doubt on Defendants' attestation that the CFPB conducted the requisite "particularized assessment" under the Stay Order.

Plaintiffs' concern, raised through their counsel's testimony, that "managers of the programmatic units of the Bureau . . . were not, in fact, consulted" in conducting the RIF, certainly provides no basis to grant their motion. Declaration of Jennifer Bennett ¶ 7, ECF No. 106-1. The particularized assessment requirement does not impose a consultation requirement as part of the process Defendants use to make their determinations. Plaintiffs do not cite any provision of the Consumer Financial Protection Act requiring any such procedural consultation requirement when making operational decisions. Nor do they identify a provision of the Stay Order imposing any such requirement. Such a requirement would amount to improper judicial usurpation of control over internal agency deliberations.

Nor does the Stay Order require an individualized assessment as to whether a particular employee has been among "the ones who carry out the day-to-day tasks involved in fulfilling [statutory] obligations" in the past. *See* ECF No. 113 at 4. *See also* ECF No. 105 at 2 (suggesting that it is "implausibl[e]" that "the defendants hav[e] made a 'particularized assessment' of each employee's role"). Simply put, there is no basis to conclude that the type of office-by-office assessment documented in the Chief Legal Officer's declaration is insufficient to discharge Defendants' duty to make particularized assessments before engaging in the now-suspended reduction in force. Paoletta Decl. ¶ 19 (explaining the particularized and specific analysis "of each office, division, unit, subunit").

Nor is there any merit to Plaintiffs' contention that Defendants have not complied with the terms of the Stay Order because the agency notified affected personnel of the RIF "three-and-a-half business days" after "the court of appeals imposed [the 'particularized assessment'] requirement." *See* ECF No. 105 at 2. That misses a key point—agency leaders were engaged in Bureau business for months, and did not merely spring into action on April 11. Paoletta Decl.

6

¶¶ 1-4. Months ago, they shared their intention to streamline and right-size the agency's workforce. Martinez Decl. Ex. G. And Mr. Paoletta attests that the agency has been engaged in a reassessment for several months—including its "activities and staffing"—since new leadership began arriving at the agency. Paoletta Decl. ¶¶ 1-4. Indeed, the agency issued a new set of enforcement priorities that resulted from weeks of investigation and analysis, including consultation within the agency and on-the-ground experience with the CFPB's pending enforcement matters and other cases. *Id*. ¶ 3. As Mr. Paoletta's testimony reflects, the recent RIF notices were informed by all of that prior work. *See id*. ¶¶ 1-21.

Given that Defendants made the determinations that the D.C. Circuit specified, upon the assessments the D.C. Circuit specified, they were entitled under the Stay Order to engage in a RIF in line with those determinations. Thus, Plaintiffs' motion to enforce should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for an order to show cause as deemed to be a motion to enforce.

Dated: April 22, 2025                         Respectfully submitted,

                                                              YAAKOV M. ROTH
                                                              Acting Assistant Attorney General

                                                              BRAD P. ROSENBERG
                                                              Special Counsel

                                                              */s/ Liam C. Holland*
                                                              LIAM C. HOLLAND
                                                              Trial Attorney
                                                              United States Department of Justice
                                                              Civil Division, Federal Programs Branch
                                                              1100 L Street, N.W.
                                                              Washington, DC 20005
                                                              Tel: (202) 514-4964
                                                              Fax: (202) 616-8470
                                                              Email: liam.c.holland@usdoj.gov

                                                              *Counsel for Defendants*