IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL TREASURY EMPLOYEES UNION, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> RUSSELL VOUGHT, in his official capacity as Acting Director of the Consumer Financial Protection Bureau, *et al.,* <br><br> *Defendants.* | Case No. 25-cv-381-ABJ |

**SECOND DECLARATION OF JASON BROWN**

I, Jason Brown, declare as follows:

1. I am an employee of the Consumer Financial Protection Bureau, where I currently serve as the Assistant Director (the head) of the Office of Research. I am submitting this declaration to document the scope of the impact on statutorily required work of the planned April 17 reduction in force and the associated elimination of access to Bureau systems for all employees included in the RIF.

2. The Office of Research is a statutorily required office, as set forth in Section 1013(b)(1) of the Consumer Financial Protection Act.

3. Currently, the Office of Research has approximately 57 employees.

4. On April 17, all employees other than me and two other senior leaders received reduction-in-force notices that stated they would lose access to work systems at 6pm on April 18.

1

5.     No one consulted me or any other senior leaders in the Office of Research about the impact that these terminations, or the elimination of access at 6pm on April 18, would have on the Office's ability to fulfill its mandatory statutory duties.

6.     Had the RIF not been paused, my office would have been unable to complete numerous statutorily required duties.

7.     For example, the office is statutorily required to research, analyze, and report on six statutorily defined areas: developments in markets for consumer financial products and services, including areas of high risk to consumers; access to fair and affordable credit for underserved communities; consumer awareness of disclosures about financial products; consumer awareness of the costs, benefits, and risks of financial products; consumer behavior with respect to financial products, including mortgage loan performance; and the experience of underbanked consumers. 12 U.S.C. § 5493(b)(1).

8.     This work requires significant time and expertise. For instance, researching on consumer loan performance requires obtaining data from third parties about performance on loans, storing that data working with partners in the Bureau, analyzing that data, and producing the resulting report. For any significant amount of data, staff must also be able to write code to organize and analyze the data. Similarly, any study on consumer awareness must first develop a methodology; establish the infrastructure to reach and interview or otherwise communicate with consumers; store the resulting data; analyze the resulting data; and report on it.

9.     The remaining three employees in the Bureau, had the RIF not been paused, would have been unable to perform this work. That is true not just because the volume of the work is too great alongside the other statutorily required work but also because they lack the technical

expertise across the range of subject matters and disciplines, as well knowledge of the day-to-day mechanics involved (like establishing the infrastructure for consumer interviews in a legally compliant way). Further, any research that involves data storage requires working with the Enterprise Data and Analytics team in the Technology and Innovation Division, which was also supposed to be severely cut down in the RIF.

10. Another statutorily required responsibility is performing a cost-benefit analysis of any rulemaking—including the revocation of rules. 12 U.S.C. § 5512. Legally compliant cost-benefit analyses require gathering and assessing data using complex methodologies. The remaining staff lacks the expertise across the breadth of subject matters covered by the Bureau's rulemaking authorities.

11. My office is also legally required to update various regulatory threshold values to account for inflation. In some cases this is statutorily required and in other cases it is required under regulations that have not been repealed. This means the Office of Research must perform an annual analysis of how thresholds should be changed using the Consumer Price Index. For example, the Fair Credit Reporting Act caps the fee for a consumer requesting their credit report at $8, and the CFPB is statutorily required to update that threshold value every year for inflation. *See* 15 U.S.C. 1681j(f). The CFPB must legally adjust a number of threshold values like this, including those required by the Consumer Leasing Act and Regulation M, the Home Ownership and Equity Protection Act, the Credit Card Accountability Responsibility and Disclosure Act, the Truth in Lending Act, the Home Mortgage Disclosure Act, the Qualified Mortgage Rule, and various parts of Regulation Z.

12. These are just examples. Other legally mandated work for which my office is responsible includes the following:

3

a. Publishing the average prime offer rate on a weekly basis. *See* 88 FR 24393. This is a critical tool for the mortgage industry because it enables lenders to comply with federal mortgage rules.

b. Performing formal assessments of the effectiveness of existing rules under statutory deadlines, as required by Section 1022(d) of the Consumer Financial Protection Act.

c. Performing periodic retrospective reviews of rules that have a significant impact on a substantial number of small entities, as required by Section 610 of the Regulatory Flexibility Act.

d. Performing initial regulatory flexibility analysis for any notice of proposed rulemaking, as required by Section 603 of the Regulatory Flexibility Act.

e. Performing final regulatory flexibility analysis for any final rule, as required by Section 604 of the Regulatory Flexibility Act.

f. Developing and testing model disclosures for rulemaking purposes under Section 1032(b)(3) of the Consumer Financial Protection Act.[1]

g. Drafting economic analyses on whether any regulation the CFPB issues will create economic annual impact exceeding $100 million, for transmittal to the Office of Management and Budget. These analyses are required in order to comply with the Congressional Review Act. My office completed the analysis for 24 of these memos in 2024.

---

[1] See for example, the study of model disclosures conducted for the Debt Collection rule. https://www.consumerfinance.gov/data-research/research-reports/disclosure-time-barred-debt-and-revival-findings-cfpbs-quantitative-disclosure-testing/

4

h. Drafting economic burden analyses required under the Paperwork Reduction Act (PRA) for information collections. The PRA requires a renewed burden analysis for all existing information collections every 3 years. According to OMB's website reginfo.gov, the CFPB has 10 information collections expiring between now and the end of the year.

13. The three remaining employees simply could not perform this work on their own. And any attempt to perform even some of it would have been severely undermined by cutting off access for the employees who received RIF notices at 6pm the next day, which would have made any transition and training impossible.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed in Washington, DC this 24th day of April.

/s/ Jason Brown

Jason Brown