# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL TREASURY EMPLOYEES UNION, *et al.*, <br>       *Plaintiffs*, <br><br> v. <br><br> RUSSELL VOUGHT, in his official capacity as Acting Director of the Consumer Financial Protection Bureau, *et al.*, <br>       *Defendants*. | Case No. 25-cv-381-ABJ |

## DECLARATION OF JOHN MCNAMARA AND LESLIE PARRISH

We, John McNamara and Leslie Parrish, declare as follows:

1. John McNamara is the Principal Assistant Director (head) of the Office of Markets and has been at the CFPB for 10 years. Leslie Parrish is a Deputy Assistant Director of the Office of Markets and has been at the CFPB for 7 years. The following is based on our personal knowledge or information provided to us while performing our duties.

2. As its name suggests, the Office of Markets monitors consumer financial markets. This monitoring is statutorily required. The Consumer Financial Protection Act requires that "[i]n order to support its rulemaking and other functions, the Bureau shall monitor for risks to consumers in the offering or provision of consumer financial products or services, including developments in markets for such products or services." 12 U.S.C. 5512(c)(1). To fulfill this statutory requirement, the Office engages with industry stakeholders to gather, synthesize, analyze, and distribute information on consumer financial markets so that the CFPB can operate with a thorough, up-to-date understanding of how these markets—and the products and companies within them—are

operating. It also monitors trends in products, services, and industry practices to identify risks of consumer harm.

3.  The Office of Markets is vital the Bureau's functioning, as its work underlies the ability of other offices and divisions to fulfill their own obligations. Enforcement relies on the work we do to understand the current state of consumer financial markets, and the risks posed by products and companies within them, in bringing cases. Supervision relies on our work to prioritize and conduct its examinations based on risk. The Office of Regulations relies on our work to determine how regulations are affecting companies and consumers, what regulations might need to be enacted, rescinded, or modified, and how they should be drafted. We regularly communicate and share information with Consumer Response to understand trends in complaints. We also facilitate introductions between Consumer Response and consumer financial companies to assist in solving technical issues with the Consumer Response interface. And we work with the Office of Research to produce statutorily mandated reporting.

4.  Within the Office, there are three teams: the Mortgage Market Team, the Small Business Lending Team, and the Consumer Credit, Payments, and Deposits Team. In total, there were approximately 45 people reporting to the Office as of April 14, 2025.

5.  On Thursday, April 17, 2025, all but four people in the Office of Markets received reduction-in-force notices. Those notices also stated that access to work systems, including email and internal platforms would be discontinued at 6:00 P.M. ET the following day. We were not copied on those notices, and still have not received any official information from acting leadership about who was RIFed. But based on our own investigation, to the best of our knowledge, the four people who did not receive RIF notices are us; Mark McArdle, the former head of the Mortgage Market team; and Grady Hedgespeth, the head of the Small Business Lending team. Mr. McArdle

took the "Fork in the Road" resignation package, which means he is already on administrative leave, has no access to work systems, and will soon be leaving the agency. And Mr. Hedgespeth had already announced his retirement effective June 30, 2025, so he will also soon be leaving the agency. In reality, therefore, if the RIFs were to proceed—and access to work systems terminated—we would be the only two people left in the Office of Markets.

6. Neither of us was consulted about how many people or which roles were necessary to perform the Office's statutory functions before the RIF notices went out.

7. We had previously sent emails to leadership outlining some of the Office's statutorily required functions. Everyone who worked on those tasks received a RIF notice.

8. On Friday, April 18, 2025, after the plaintiffs in this case had filed their Motion for an Order to Show Cause and the district court held an initial hearing, John McNamara was asked for the first time to provide a list of statutorily required functions and identify who is needed to perform those roles.

9. The Office cannot fulfill its statutory functions with just the two of us. In addition to simply not having the bandwidth needed to monitor the financial markets by ourselves, much of the work requires technical expertise in data analysis or programming, or professional experience with specific financial products or markets.

10. In addition to our general mandate to monitor consumer financial markets, the Office of Markets fulfills several additional specific statutory requirements. For example, one of the Office's statutorily required functions is a biennial data collection and report on the state of the credit card markets. 15 U.S.C. § 1616(a). This report is mandated by the Credit Card Accountability Responsibility and Disclosure Act of 2009 (CARD Act). And, as required by statute, it reports on (among other things) the terms and practices of credit card issuers, the cost

3

and availability of credit, the use of risk-based pricing, and innovation in the credit card market. In addition to providing vital information to the Bureau itself, the credit card industry depends on the report, as much of the information it contains about the credit card market cannot be found elsewhere. And consumers and consumer organizations rely on the report to understand the credit card market, identify potential trends that might harm consumers, and educate others. Producing the report requires employees skilled in data collection and analysis.

11. Every person working on this statutorily mandated report received a RIF notice, which also means that if the court had not ordered otherwise, every person working on that report would have been put on administrative leave with no notice to us on April 18.

12. The Office of Markets is responsible for several other statutorily required data collection, maintenance, and periodic reporting requirements. For example:

- The Fair Debt Collection Practices Act (FDCPA) Report to Congress (Annual, 15 USC 1692n)
- The Terms of the Credit Card Plan Survey (Semi annual,15 USC 1646(b) (1), (2) & (4))
- The Credit Card Agreement Collection (Quarterly, 15 U.S. Code 1632)
- The College Credit Card Agreement Report (Annual, 12 CFR 1026.57)
- The Prepaid Product Agreements Collections (Ongoing, 12 CFR 1005.19(b)(1))

13. Everyone responsible for these obligations also received a RIF notice and, absent the court's order, would have been placed on administrative leave on April 18.

*\*\**

We declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed in Washington, DC this 20th day of April.

                                           /s/*John McNamara*  
                                           John McNamara

Executed in Denver, CO this 20th day of April.

                                           /s/ *Leslie Parrish*  
                                           Leslie Parrish