IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL TREASURY EMPLOYEES UNION, *et al.*, <br>          *Plaintiffs*, <br>   v. <br><br> RUSSELL VOUGHT, in his official capacity as Acting Director of the Consumer Financial Protection Bureau, *et al.*, <br><br>          *Defendants*. | Case No. 25-cv-381-ABJ |

**DECLARATION OF MONICA SHELTON**

I, Monica Shelton, declare as follows:

1. I am an employee of the Consumer Financial Protection Bureau, where I currently serve as the Director of Regulatory Technology in the Office of Technology & Innovation (T&I). As part of my role, I manage and oversee HMDA Operations, the team of 7 that operates the technology system necessary to collect data under the Home Mortgage Disclosure Act (HMDA) and publicly disclose certain parts of that data to the public. A few weeks ago, a staff member from the Design and Development team was assigned to fulfill the Contract Officer Representative functions of the HMDA Operations team, as well.

2. The data collected and reported under HMDA provides vital loan-level information about the home mortgage market. This data helps show whether lenders are serving the housing needs of their communities; they give public officials information that helps them make decisions and policies; and they shed light on lending patterns that could be discriminatory.

3. On April 17, I learned that all employees on the HMDA Operations team other than myself (including the assignee from Design and Development) received reduction-in-force (RIF) notices and would lose access to work systems at 6pm on April 18.

1

4. No one consulted me about the impact that these terminations would have on HMDA Operation's ability to fulfill its mandatory statutory duties.

5. Had the action been allowed to take place after 6pm Friday, April 18, the team would not have been able to perform those statutory functions.

6. The duties include:

   a. Implementing a system for mortgage lenders to report HMDA data, 12 U.S.C. § 2803(f), *id.* § 2803(h)(1).

   b. Publishing various compilations of HMDA data and "provid[ing] staff and data processing resources" necessary to accomplish this, 12 U.S.C. § 2809; *id.* § 2803(j).

   c. Making HMDA data available to other federal regulators with supervisory or enforcement jurisdiction under HMDA, 12 U.S.C. § 2804(d).

7. I lack the technical expertise to fulfill these functions on my own. For example, I do not have the development skills necessary to maintain the technology system and public website created by CFPB[1] for reporting and publishing HMDA data. Because no federal staff will be able to do the necessary technical work, mortgage lenders will not be able to report HMDA data as required under the statute and CFPB will not be able to disclose HMDA data to the public as required by the statute. The other federal regulators with HMDA jurisdiction will not be provided the HMDA data as required by the statute, either.

8. Necessary maintenance of the HMDA Platform will not occur, and it will eventually break and there will be no one to fix it. When that happens, the CFPB will lose the database of HMDA data, and the public will lose access to the data, as well. It is notable that during the work stoppage ordered by Acting Director Vought in February 2025, a skeleton team of HMDA

---

[1] Available at https://ffiec.cfpb.gov/.

Operations staff and contractors were granted an exception to perform essential maintenance on the HMDA Platform to ensure mortgage lenders could report annual HMDA data by the annual filing deadline of March 3rd, 2025. No such exception was made this time and the entire HMDA Operations team received RIF notices. In other words, all of the people that were previously told to work so that HMDA reporting would continue were included in the RIFs and told to immediately stop working on April 18th at 6pm.

9. Other functions of the HMDA Platform necessary for the mortgage industry, such as the rate spread calculator which needs to be updated weekly, will also fail to function since no HMDA Operations staff will be employed. The rate spread calculator is available to mortgage lenders to determine if their loans comply with Regulation C. If this tool is not available, it could halt or severely disrupt mortgage lending across the country.

10. HMDA data quality will be compromised because CFPB will not have the staff with the required expertise and training to identify issues in the data and have those issues corrected.

11. The HMDA Operations team implements security fixes identified by CFPB's Design and Development platform team's tools and staff to ensure the security of HMDA data, and the privacy of mortgage applicants and borrowers whose personal information is contained in HMDA data. Because all of HMDA Operations and the vast majority of CFPB's Design and Development and Cybersecurity staff also received RIF notices, HMDA data, and the personal information of millions of mortgage applicants and borrowers, will be left vulnerable to security breaches.

12. Other HMDA functions run by CFPB contractors will fail because I am not a Contract Officer's Representative and do not have the credentials necessary to administer the

HMDA development and HMDA Help Desk support contracts or to approve the contractors' invoices.

13. In any event, even if I possessed the required skills, expertise and training, I cannot fulfill the duties because of the volume of work involved.

\*   \*   \*

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed in Washington, D.C. on April 23, 2025.

Monica M. Shelton
Digitally signed by Monica M. Shelton
Date: 2025.04.23 17:15:47 -04'00'

Monica Shelton

4