IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL TREASURY
EMPLOYEES UNION, *et al.*,
      *Plaintiffs*,
  v.

RUSSELL VOUGHT, in his official capacity
as Acting Director of the Consumer Financial
Protection Bureau, *et al.*,

      *Defendants*.

Case No. 25-cv-381-ABJ

**DECLARATION OF MORGAN DOE**

I, Morgan Doe, declare as follows:

1. I am a Senior Counsel in the Consumer Financial Protection Bureau's Legal Division, in the Office of General Law and Ethics, where I have worked for more than a decade. In this role, I have personal knowledge of legal requirements that CFPB will be unable to meet if the planned reduction in force (RIF) from April 17 is implemented.

2. I am submitting this declaration pseudonymously because I fear retaliation. But if the Court would like to know my name, I am willing to provide it ex parte and under seal.

3. The Office of General Law and Ethics (GLE) operates as the in-house legal counsel for the CFPB regarding the agency's operations. GLE provides legal advice to the agency on a variety of topics, including Information Law, Ethics, Employment and Labor Law, Procurement Law, and Fiscal Law. GLE is organized into different specialty areas, and most attorneys are experts in a single area of law. Our more junior attorneys tend to begin as generalists, until they eventually gain sufficient expertise to specialize.

4. Within GLE, I am one of the lead attorneys on Information Law—a broad category that addresses the legal requirements related to how the agency collects, maintains, discloses, and

1

protects data. My specialization touches upon a wide variety of the agency's work, from agency operations, to supervision, to enforcement, to agency regulations, to research and market monitoring, to consumer complaints.

5. Prior to April 17, GLE had 27 attorneys. As far as I can tell, 24 of GLE's 27 attorneys received RIF notices on April 17, including me. Only three attorneys—one manager, one senior attorney, and one junior attorney—and one paralegal would have remained to carry the office's entire workload and cover the office's diversity of expertise.

6. Operating a federal agency is complicated. Federal agencies have a variety of legal requirements, dictated by statutes, those statutes' implementing regulations and guidance, and executive orders. For an agency to fulfill its statutory duties, it must navigate this broad array of legal requirements. That requires, among other things, attorneys with relevant expertise to advise on them.

7. It is my opinion that, if the April 17 RIF were to take effect, the CFPB would not be able to fulfill a variety of its statutorily mandated duties. This opinion is based on several observations regarding the RIF's scope and on my years of experience advising on federal agency operations.

8. Within GLE, the RIF would have eliminated an individual who serves legally required functions; it also would have eliminated full teams that provide critical legal advice to the agency. RIF decisions did not appear to take into account the diversity of expertise within GLE. I do not believe the few attorneys who remain could possibly fulfill GLE's responsibilities.

    a. The CFPB is required to have a Designated Agency Ethics Official (DAEO). 5 C.F.R. § 2638.104. The DAEO and her team provide ethics advice to the entire agency, such as on issues related to post-employment conflicts. But the DAEO was

terminated in the RIF, and as I understand it, the entire ethics team was as well. I am not aware of anyone remaining at the CFPB who has the requisite expertise to fulfill the CFPB's federal ethics requirements.

b. The CFPB is required to comply with the variety of statutes related to federal employment and labor activities. GLE attorneys provide critical advice on compliance with these requirements and represent the Bureau when disputes arise before the MSPB, EEOC, and FLRA. It is my understanding that, with the exception of one junior attorney, GLE's entire labor and employment team would have been eliminated in the RIF.

c. The CFPB is required to comply with a variety of laws related to collection, maintenance, disposition, and disclosure of information. This includes laws applicable to all Federal agencies, such as the Privacy Act, 5 U.S.C. § 552a, the Freedom of Information Act, 5 U.S.C. § 552, the E-Government Act, 44 U.S.C. § 3501 note, the Paperwork Reduction Act, 44 U.S.C. § 3501 et seq., the Federal Records Act, 44 U.S.C. § 3101 et seq., the Federal Information Security Modernization Act (FISMA), 44 U.S.C. § 3551 et seq., the Foundations for Evidence-Based Policymaking Act (Evidence Act), Pub. L. 115-435 (2019), and the Right to Financial Privacy Act, 12 U.S.C. § 3401 et seq. The Dodd-Frank Act also imposes unique requirements related to CFPB data practices and privacy protections. *See* 12 U.S.C. § 5512(c). For instance, there are data-related requirements connected to the CFPB's statutory obligation to monitor markets for risks to consumers. *See id.* GLE attorneys give critical legal advice to all corners of the Bureau to ensure that the CFPB fulfills its requirements under these statutes.

The RIF would have eliminated all attorneys that advise on these issues, save for GLE's one remaining junior attorney and one remaining managing attorney.

9. Furthermore, outside of GLE, the RIF would have eliminated individuals in the Operations Division whose positions are required by law; and it would have eliminated the teams that are needed to oversee and implement various statutory requirements.

   a. The CFPB is legally required to have a Senior Agency Official for Privacy (SAOP). *See* Executive Order 13719, OMB Memo M-16-24. The SAOP is responsible for overseeing an agency's privacy program, to ensure compliance with statutory and other legal requirements. For example, the Privacy Act imposes numerous legal requirements on agencies, such as providing notices to individuals from whom they collect information, and publishing system of records notices in the Federal Register. *See* 5 U.S.C. § 552a(e)(3)-(4). In addition, Section 208 of the E-Government Act and OMB implementing guidance require agencies to conduct privacy impact assessments. *See* 44 U.S.C. § 3501 note; OMB Circular A-130. To implement FISMA, agencies must, among other things, respond to privacy breaches. *See* OMB Memorandum M-17-12, "Preparing for and Responding to a Breach of Personally Identifiable Information." And agencies must establish a privacy program generally.  These are responsibilities of the SAOP and the CFPB's Privacy Office, but our SAOP and the entire Privacy Office would have been terminated with the RIF.

   b. The CFPB is statutorily required to have a senior agency information security officer. *See* 44 U.S.C. § 3554(a)(3)(A). Among other responsibilities, this official and her statutorily required office are required to ensure that the CFPB is complying

with FISMA and its implementing guidance. But our Chief Information Security Officer would have been terminated by the RIF.

c. The CFPB is statutorily required to comply with the Paperwork Reduction Act (PRA), *see* 44 U.S.C. § 3501 *et seq*. But our PRA Officer and his staff would have been terminated with the RIF.

d. The CFPB is statutorily required to have a Chief Data Officer. *See* 44 U.S.C. § 3520. Part of this official's responsibility is to implement the Evidence Act, which was signed into law by President Trump in his first administration. Agency obligations under the Evidence Act include maintaining a data inventory and making government data publicly available. But the acting CDO and his entire team would have been terminated with the RIF.

e. The Financial Data Transparency Act requires a multi-agency rulemaking to promulgate regulations that establish data standards across the federal financial regulators, followed by agency-specific rulemakings to implement those standards. *See* 12 U.S.C. §§ 5334, 5498. A small team, including myself, the acting Chief Data Officer, the PRA Officer, and a few attorneys in the Office of Regulations, had been working on this initiative. In March 2025, the team was authorized to work on the multi-agency rulemaking because it is statutorily required. But the RIF would have eliminated every person working on the rulemaking, with the exception of a paralegal in the Office of Regulations. I am not aware of any subject matter experts who would remain at the Bureau who could draft and implement the statutorily required regulations.

10. The list of statutory requirements that I have identified is not exhaustive. However, these examples demonstrate the challenges involved in operating a federal agency that fulfills its statutory duties, and the diversity of experts that need to be employed at that agency either because their positions are legally required or because their work is critical for compliance with the agency's statutory obligations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 25, 2025.

/s/ Morgan Doe
Morgan Doe