IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL TREASURY
EMPLOYEES UNION, *et al.*,
        *Plaintiffs*,

  v.

RUSSELL VOUGHT, in his official capacity as Acting Director of the Consumer Financial Protection Bureau, *et al.*,

        *Defendants*.

Case No. 25-cv-381-ABJ

**DECLARATION OF VERONICA SPICER**

I, Veronica Spicer, declare as follows:

1.    I am an employee of the Consumer Financial Protection Bureau, where I currently serve as a Deputy Assistant Director in the Office of Supervision Policy and Operations. I am submitting this declaration to document the impact of the April 17 planned reduction in force, and associated cutting of employee access to CFPB systems, on the Bureau's ability to fulfill its statutorily required work.

2.    The Office of Supervision Policy and Operations (OSPO) and the Office of Supervision Examinations (OSE) are the two offices that compose the Supervision Division.

3.    Prior to April 17, Supervision had 487 total employees. OSPO had 108 employees, most of whom worked directly on examinations.

4.    On April 17, I received a reduction in force notice. So did all other employees in OSPO, with the exception of the Principal Deputy Assistant Director who oversees the entire office. The RIF notices also stated that we would lose access to work systems at 6 p.m. on April 18.

1

5. My understanding is that the only employees remaining in the Supervision Division, aside from the OSPO Principal Deputy Assistant Director, would have been the OSE Principal Deputy Assistant Director, the Director for the Supervision Division's Southeast Region, four managers in the Southeast Region, and 43 examiners in the Southeast Region.

6. The Supervision Division is responsible for carrying out the CFPB's supervisory obligations over non-depository covered institutions and depository institutions and credit unions with over $10,000,000,000 in assets. 12 U.S.C. §§ 5514, 5515. The Bureau is statutorily required to conduct examinations and produce reports on the results. As I explain below, because of the cuts to OSPO staff, the Bureau would not have been able to fulfill its statutory obligations had the RIFs not been paused by court order.

7. OSPO staff are responsible for providing information necessary to identify which covered entities to examine, implementing Bureau priorities in each individual examination, and analysis of legal issues and identification and resolution of complex statutory and regulatory violations in each examination.

8. The first step in this Supervision process is identifying which entities to examine. For nondepository institutions, the Supervision Division is statutorily required to make a risk-based assessment, based on statutorily-defined criteria, to determine which entities to supervise. This requires assessing the asset size of the institution; the volume of transactions for consumer financial products and services in which it engages; the risks to consumers created by those products and services; the extent to which the institutions are subject to State oversight; and any other relevant factors identified by Bureau leadership. 12 U.S.C. § 5514(b)(2). The Dodd-Frank Act mandates that the Bureau conduct examinations and produce reports of the entities supervised under this assessment. 12 U.S.C. § 5514(b)(1).

9. This risk-based assessment involves substantial work, due to the large number of nondepository institutions potentially subject to supervision, the broad array of products and services they provide, and the availability of data. For example, the consumer mortgage market is comprised of roughly 85 million loans valued at over $12 trillion. The mortgage market involves thousands of nondepository entities, all generally subject to the Bureau's supervisory jurisdiction, which originate and/or service over half of consumer mortgages. To conduct a risk-based assessment involving markets of such magnitude, like mortgage, the OSPO data analytics team obtains large amounts of raw data from third parties, distills that data, and processes it into a useable form for analysis. This is necessary to understanding the size of entities, the nature of their products and services, and the risks to consumers created by those products and services, all of which are statutorily required criteria. Employees in OSPO run this entire process, which results in a recommendation to the head of Supervision and the Bureau Director regarding which entities to examine. This is a months-long process. This same process is also applied to the roughly 180 depository institutions under the Bureau's supervisory authority.

10. The next step in the examination process is the examination itself. OSPO staff translate Bureau priorities into a supervisory strategy. Based on this strategy, OSPO staff provide employees within OSE, who are typically generalists, with necessary tools and training.

11. To carry out that work, the OSPO Deputy Assistant Directors and the staff who work on examinations are divided into areas of subject matter expertise. I am the Deputy Assistant Director for mortgage. I have almost 20 years of experience in that area and oversee seven OSPO staff members who also have deep mortgage subject matter expertise.

12. The mortgage team I supervise in OSPO creates materials necessary for conducting mortgage examinations. This includes the examination manual that governs conducting mortgage

examinations, sample questions to elicit information needed for areas of focus under the Bureau's priorities and the supervisory strategy, and job aids to facilitate the review of materials received from entities. They also conduct training for the generalist examiners in OSE on the complex regulatory schemes that govern the origination and servicing of mortgages. Finally, OSPO staff ensure the proper functioning of data evaluation tools and calculators necessary for mortgage examinations (and those in other areas). The guidance and tools needed to conduct examinations require frequent updating as Bureau priorities shift.

13. Because OSE staff does not have the specialized expertise of OSPO staff, an OSPO staff member is assigned to each examination conducted by the Supervision Division. OSPO staff are responsible for providing subject matter expertise and necessary legal analysis for each examination. OSPO staff work with examiners on a daily basis to make sure each examination is conducted consistent with the Bureau's strategic priorities and legal positions.

14. The final step in the examination process is analyzing the information gathered to assess compliance with the laws. OSPO staff is responsible for providing the subject matter expertise necessary to perform this work.

15. On April 16, Chief Legal Officer Mark Paoletta issued a memo outlining the Bureau's new supervision and enforcement priorities. This memo noted that the highest priority area for supervision is mortgages. The memo also stated that the new leadership intended to reduce the number of supervision events, but only by 50 percent.

16. The next day, we received the RIF notices.

17. Even though I lead the team responsible for what was just identified as the Bureau's highest priority area, mortgages, no one consulted me about the impact that the planned RIFs would have on the ability of Supervision to conduct this work. I am not aware that anyone

4

consulted the Principal Deputy Assistant Director (the head of OSPO), or anyone else in the Supervision Division, about the impact that these terminations would have on the Supervision Division's ability to fulfill its mandatory statutory duty.

18. The employees that would have remained had the RIFs not been paused would not be capable of fulfilling the Bureau's statutorily required duties for supervision. For example, they cannot initiate new examinations because everyone involved in the data pulling and compilation on the data analytics team, which is necessary for the statutorily required risk-based assessment, received a RIF notice. None of the remaining employees in OSPO or OSE have the technical background to do this work.

19. The remaining employees also cannot fulfill the examination and analysis tasks required to prepare the Supervision Division's statutorily-required reports. The remaining OSE staff lacks the subject matter expertise to perform the work currently done by OSPO – the creation of materials necessary to conduct examinations, the analysis of complex legal issues, and the drafting of legal documents and correspondence as necessary. It is also not possible for the sole employee left in OSPO, the OSPO Principal Deputy Assistant Director, to perform the work of all prior OSPO employees alone. And because the planned RIF would have also cut off employees' access at 6 p.m. on April 18, had it not been paused, no one in OSPO could have trained or passed along their knowledge to any of the remaining employees such that they might even try to complete pending examinations or initiate new ones.

20. Chief Legal Officer Paoletta's priorities memo expressed an intent to reduce examination events by 50 percent, but the RIFs sought to reduce staffing from 487 people to 50—approximately a 90 percent reduction—while also eliminating the data analytics team and all subject matter experts. It is not possible for the Bureau to meet leadership's stated goals, just as it

is not possible for the Bureau to comply with statutory requirements, with the planned RIFs. In my opinion, the planned RIF could not have been the result of a particularized assessment aimed at compliance with either leadership's stated goals or the Bureau's statutory requirements.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 24, 2025, in Arlington, VA.

                                                                 /s/ Veronica Spicer
                                                                  Veronica Spicer