UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL TREASURY EMPLOYEES UNION, *et al.*, <br>      Plaintiffs, <br><br> v. <br><br> RUSSELL VOUGHT, in his official capacity as Acting Director of the Consumer Financial Protection Bureau, *et al.*, <br>      Defendants. | Case No. 1:25-cv-381 |

**MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL**

For many decades, it has been blackletter administrative law that courts are "not entitled to probe the deliberations of administrative officials, oversee their relationships with their assistants, or screen the internal documents and communications they utilize" in the process of generating final agency actions. *Braniff Airways, Inc. v. Civil Aeronautics Bd.*, 379 F.2d 453, 462 (D.C. Cir. 1967) (quoting *United States v. Morgan*, 313 U.S. 409, 422 (1941)). But this Court is now primed to hold a second multi-day evidentiary hearing—on an extremely expedited basis—on the Consumer Financial Protection Bureau's (CFPB) internal deliberative decision-making processes regarding its Reduction-in-Force—a process the D.C. Circuit authorized when it granted a stay, so long as the CFPB conducted a particularized analysis first.

Pursuant to the Court's April 19, 2025 Order, Defendants produced, on a rolling basis, more than *3,700 pages* of responsive documents through Friday, April 25, as well as four additional pages of documents earlier today. Defendants asserted privilege as to a comparatively very small number of records. Specifically, Defendants withheld or redacted only 51 documents pursuant to the attorney-client privilege, work product protection, deliberative process privilege, and

1

presidential-communication privilege. Consistent with Federal Rule of Civil Procedure 26(b)(5), Defendants promptly produced privilege logs on a rolling basis identifying the individuals involved and summarizing the basis for the privilege assertions. Late last night, Plaintiffs filed the instant motion to compel (Motion to Compel). Plaintiffs' Motion does not challenge the assertion of the presidential-communications privilege at this time, and also does not challenge the propriety of any particular assertion of privilege, but instead categorically challenges the remaining withholdings on the grounds that Defendants waived the privileges or that they are outweighed by the need for the materials. Plaintiffs' motion is meritless and should be denied.

**1.** At the outset, it is worth noting that Plaintiffs do not challenge any of the withholdings on the grounds that they do not meet the requirements of the privileges invoked in the first place. That is, although Plaintiffs' motion contains a summary of the withheld materials, *id.* at 2-5, they do not object that any specific emails or other documents were wrongly withheld. Rather, Plaintiffs' motion accepts that the relevant materials *are* privileged but argues that Defendants purportedly waived the privileges through their litigation conduct or that the privilege is overcome by their need for the materials. Only those sweeping contentions are thus before the Court.

**2.** Plaintiffs principally argue that Defendants waived the privileges by representing that they conducted a "particularized assessment" of employee positions that were not necessary to the performance of CFPB's statutory duties. But Defendants were indisputably required to conduct that assessment by this Court's injunction as stayed in part by the D.C. Circuit, and were required to demonstrate compliance with that requirement in responding to Plaintiffs' motion for an order to show cause. In other words, Plaintiffs argue that Defendants broadly waived privileges, including the attorney-client privilege, simply by representing that they were in *compliance* with the D.C. Circuit's stay order—a representation and showing they were *required* to provide. That

is perverse and unsupported by legal authority. Indeed, under Plaintiffs' logic, any time a government agency seeks to comply with a court order and consults with an attorney, those communications would be discoverable. Not only would this chill attorney-client communications, it could provide a disincentive to consult with an attorney at all. Of course, neither of these outcomes is supported by the law (as reflected by the complete absence of legal authority to support Plaintiffs' novel claims) or consistent with public policy.

Plaintiffs argue that "[t]he defendants may not use the attorney-client privilege as both a sword and a shield," and contend that Defendants waived the attorney-client privilege because Mr. Paoletta stated in his Declaration that he conducted a particularized assessment. *Id.* at 8. This argument has no basis in the actual content of the Paoletta Declaration. There is no sword-shield problem here, because Mr. Paoletta testified only about the determinations that he reached and the general process he employed to reach them—he did not divulge any privileged communications relating to the same topic or the substance of any pre-decisional deliberations on the topic.

In that Declaration, Mr. Paoletta stated that he, "along with two other CFPB attorneys, conducted a particularized assessment to determine which employees are unnecessary for the Bureau to perform its statutory duties." ECF No. 109 ¶ 6. Mr. Paoletta then noted that he and the other two attorneys "went line by line through each competitive area to determine how many employees were necessary in each area." *Id.* ¶ 7. In the eleven subsequent paragraphs, Mr. Paoletta summarized his determination for each of the relevant areas. For example, in the Consumer Response Education Division, Mr. Paoletta determined that the functions of this division could be accomplished with "16 [employees] in Consumer Response, 2 in Consumer Response Education, and 2 in Financial Education." *Id.* ¶ 8. As another example, Mr. Paoletta "determined that 0 employees were necessary for" CFPB Centralized Services because "[t]his is not a statutorily

3

required function and I was informed by agency personnel that it is unnecessary to the agency's functions." *Id.* ¶ 9. As to the Enforcement Division, that division contained 248 employees and Mr. Paoletta "determined that the Enforcement Division should be significantly reduced in line with the Bureau's new policy of focusing on tangible consumer harm and deferring to State enforcement actions" and he "therefore determined that 50 employees would be sufficient to allow the Bureau to perform its statutory enforcement functions." *Id.* ¶ 11. The Declaration devotes a similar paragraph to eight other CFPB components.

As this description makes clear, Mr. Paoletta was explaining, for each identified CFPB component, his determination of the necessary number of employes and his basis for that determination. The Declaration did not discuss or invoke any legal advice; nor has Mr. Paoletta claimed as a defense that he relied on advice of counsel in making his judgments concerning his particularized assessment. Nor does the Declaration in any way place privileged legal advice "directly in controversy." Motion to Compel at 8. Plaintiffs may attempt to challenge Mr. Paoletta's testimony using the thousands of pages Defendants produced, or through the witnesses that will testify at tomorrow's hearing about the particularized assessment that was conducted. But by merely stating that he *conducted* an assessment, Mr. Paoletta did not waive privileges concerning any privileged advice that may have related to that topic.[1]

Indeed, a contrary conclusion—that merely stating that an assessment was performed and explaining how it was performed waives privilege as to any communications concerning it—not only has no basis in law but would have far-reaching consequences. Parties of course frequently

---

[1] As Defendants' privilege log reflects, Mr. Paoletta is a lawyer but also operates in a management capacity at CFPB. Privileged communications made by or to him remain privileged notwithstanding any non-privileged operational or management work he performs at CFPB. *See, e.g.*, *In re Lindsey*, 158 F.3d 1263, 1277 (D.C. Cir. 1998).

make representations that certain steps were taken; no one thinks that this common step waives privileged communications related to the relevant action. To take just one example, if a defendant agency represents that it is in compliance with a preliminary injunction more broadly, no one would seriously contend that this representation waives the privilege with respect to communications with agency attorneys (or Department of Justice attorneys) about how to comply with the injunction. And yet that is essentially what Mr. Paoletta's Declaration did here— again, the D.C. Circuit's stay allowed RIFs if the agency conducted a particularized assessment.

      **3.** Plaintiffs also contend that, due to "Paoletta's declaration that he personally conducted the necessary assessment," attorney "work product protections likewise cannot shield his assessment from scrutiny." Motion to Compel at 9. This argument likewise fails. It is true that waiver of work product protection has been found appropriate where "the privilege holder seeks to use the disclosed material for advantage in the litigation but to invoke the privilege to deny its adversary access to additional materials that could provide an important context for proper understanding of the privileged materials." *U.S. Airline Pilots Ass'n v. Pension Benefit Guaranty Corp.*, 274 F.R.D. 28, 32 (D.D.C. 2011) (quotation marks omitted); *see also* Fed. R. Evid. 502(a) ("When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together."). But again, Plaintiffs do not explain how Mr. Paoletta's representation that he *performed* an assessment, and his explanation of the basis for his determinations, requires consideration of privileged materials. It does not. Nor are Defendants trying to use those materials for litigation advantage. The thousands of pages that Defendants

produced are more than sufficient.[2]

**4.** As to both the deliberative-process privilege and the attorney work-product privilege, Plaintiffs also claim those are overcome by a sufficient showing of need. Motion to Compel at 9 n.5, 10. They argue that disclosure of this privileged information is necessary merely to determine whether Defendants in fact conducted a particularized assessment. But this argument is facially without merit. Defendants have explained in detail not only that the assessment was done but what the results of that assessment were (the number of employees at each CFPB area determined necessary) and the basis of these conclusions (discussing how this determination was reached for each CFPB area). Notably, Plaintiffs do not claim that they do not have sufficient evidence to support their claim about compliance with the injunction. Indeed, it is not at all apparent that as of the time of Plaintiffs' filing of their motion to compel that they had in fact reviewed the entirety of Defendants' extensive productions.

Plaintiffs are free to argue that Mr. Paoletta's analysis did not constitute the particularized assessment the D.C. Circuit contemplated. Defendants vigorously resist that suggestion. But either way, Plaintiffs do not explain why the Court needs privileged information to decide whether Mr. Paoletta made the determinations that he not only represented that he made but also *explained in detail*, on a component-by-component basis. And Plaintiffs have also received thousands of pages of documents and will have the opportunity to examine multiple witnesses on the assessment

---

[2] In addition on this point, the "all-or-nothing" approach of subject matter waiver has not been applied to deliberative process documents. *In re Sealed Case*, 121 F.3d at 741; *see also Ford Motor Co. v. United States*, 94 Fed. Cl. 211, 218 (Fed. Cl. 2010) ("There is no subject matter waiver associated with the deliberative process privilege."). "Instead, courts have said that release of a document only waives these privileges for the document or information specifically released, and not for related materials. *In re Sealed Case*, 121 F.3d at 741. Thus, to the extent Plaintiffs attempt to establish a waiver of deliberative process privilege through litigation conduct, any such attempt fails as a matter of law.

conducted.[3] Plaintiffs provide no persuasive or even plausible explanation why they need privileged materials for the very limited purpose of exploring whether an assessment *actually took place*.

**5.** Plaintiffs assert that Defendants redacted portions of "the document Mr. Kliger produced simply because they believe those portions are non-responsive." Motion to Compel at 11. Plaintiffs misunderstand the nature of the "document" Mr. Kliger provided to counsel. As counsel explained to Plaintiffs, the Department of Justice received Mr. Kliger's supplemental production as a single .pdf file—even though that file consisted of multiple, individual documents. A few of those documents within that PDF file were deemed to be non-responsive as they did not involve RIFs. Instead of simply removing those non-responsive documents from the PDF file, it was simpler and faster to simply redact the pages reflecting those non-responsive documents given the extremely expedited nature of Defendants' voluminous productions.

**6.** This Court's minute order this morning posed two additional questions to Defendants about the privilege assertions at issue.

In response to the Court's first request, Defendants' privilege logs identify sender or recipient attorneys with an asterisk (*).[4] Second Privilege Log Doc. 8, in addition to involving a CFPB attorney, reflects communications regarding DOJ counsel Brad Rosenberg and Liam Holland concerning litigation. And one withheld portion of Second Privilege Log Doc. 17 "reflects

---

[3] Plaintiffs also assert in a footnote that their need for work-product requires its disclosure. Even assuming the work product doctrine remains subject to balancing as Plaintiffs contend, given the discussion above, there is no basis for Plaintiffs' argument that any particular privileged material is needed merely to explore whether Defendants conducted a particularized assessment. This is far from "the extraordinary case where the plaintiffs have 'extraordinary' need" for access to work product.  Motion to Compel 9 n.5

[4] Mr. Lewin was identified as an attorney in Defendants' Second Privilege Log.  But Defendants' assertion of the privilege does not rely on Mr. Lewin's role as an attorney.

legal advice provided by an attorney" concerning litigation, even though the author of that document is not herself an attorney. *See Equal Emp. Opportunity Comm'n v. George Washington Univ.*, 502 F. Supp. 3d 62, 79 (D.D.C. 2020) (collecting cases noting that communications from or among non-attorneys can still be privileged). The clients are components within the Executive Branch or the Executive Branch itself.

In response to the Court's second request, the topic about which legal advice was sought in the referenced documents concerns the ongoing litigation before this Court and the D.C. Circuit.

**7.** At the very least before ordering production of any materials, the Court should provide the government with an opportunity to meaningfully litigate the motion to compel, including by submitting declarations if the government deems doing so appropriate. The Court should not order production of documents that even Plaintiffs do not dispute are privileged while affording them a period of mere hours to respond to a motion to compel filed late last night.

**8.** For all of the reasons above, the Court should deny Plaintiffs' motion. If, however, the Court orders production of any materials Defendants have withheld, Defendants respectfully request that the Court stay any such order for a period of seven days to give the Solicitor General an opportunity to determine whether to seek relief from the D.C. Circuit. Such a stay would allow for orderly briefing in the court of appeals if appellate relief is sought, and such a short stay would be particularly appropriate because Defendants should not be required to turn over material that Plaintiffs' motion *does not even allege* is non-privileged before the court of appeals has an adequate opportunity to consider the propriety of any such order. Such a short stay, moreover, would not prejudice Plaintiffs, particularly since, as noted, Defendants have already produced thousands of pages of documents and will be providing live witness testimony, all related to the limited question before the Court of whether a particularized assessment was in fact conducted.

Dated: April 28, 2025                    Respectfully submitted,

Respectfully submitted,

                                                   YAAKOV M. ROTH
Acting Assistant Attorney General

JOSHUA GARDNER
BRAD P. ROSENBERG
Special Counsel

*/s/ Liam C. Holland*
LIAM C. HOLLAND
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 514-4964
Fax: (202) 616-8470
Email: liam.c.holland@usdoj.gov
*Counsel for Defendants*