US District Court District of Columbia

Case No _____
To be assigned

COMPLAINT AND DEMAND FOR JURY TRIAL

Borealis S Hedling
Travelodge Plus
44 Townsend ST Rm 120
Dublin 2 (Ireland)
Plaintiff

V.

Jia Michelle Cobb (US District of Columbia Judge)
US District Court District of Columbia
333 Constitution Avenue, N.W.
Washington, DC 20001
Defendant #1

Michael Peter Shea (Chief Judge US District of Connecticut)
US District Court District of Columbia
333 Constitution Avenue, N.W.
Washington, DC 20001
Defendant #2

Sarala Vidya Nagala (Judge US District of Connecticut)
US District Court District of Columbia
333 Constitution Avenue, N.W.
Washington, DC 20001
Defendant #3

Federal Bureau of Investigations,
935 Pennsylvania Avenue, N.W.,
Washington, DC. 20535
Defendant #4

Connecticut Department of Emergency Services and Public Protection
CO Attorney General of Connecticut
165 Capitol Avenue,
Hartford, CT 06106
Defendant #5

Connecticut Department of Corrections
CO Attorney General of Connecticut
165 Capitol Avenue,
Hartford, CT 06106
Defendant #6

Connecticut Department of Social Services
CO Attorney General of Connecticut
165 Capitol Avenue,
Hartford, CT 06106
Defendant #7

Connecticut Office of Public Hearings
CO Attorney General of Connecticut
165 Capitol Avenue,
Hartford, CT 06106
Defendant #8

Todd Blanche (Interim US Attorney General)
950 Pennsylvania Avenue NW
Washington, DC 20530
Defendant #9

Jeff Sexton (Special Agent Federal Bureau of Investigations)
CO US Attorney for District of Connecticut
157 Church Street, Floor 25,
New Haven, CT 06510
Defendant #10

Edward Miner Lamont Jr ("Governor" of Connecticut)
CO Attorney General of Connecticut
165 Capitol Avenue,
Hartford, CT 06106
Defendant #11

William Tong (Attorney General of Connecticut)
CO Attorney General of Connecticut
165 Capitol Avenue,
Hartford, CT 06106
Defendant #12

Colleen Valentine
CO Attorney General of Connecticut
165 Capitol Avenue,
Hartford, CT 06106
Defendant #13

Andrea Barton-Reeves (Commissioner of the Connecticut Department of Social Services)
CO Attorney General of Connecticut
165 Capitol Avenue,
Hartford, CT 06106
Defendant #14

Astread Ferron-Poole (Chief of Staff of the Connecticut Department of Social Services)
CO Attorney General of Connecticut
165 Capitol Avenue,
Hartford, CT 06106
Defendant #15

Ronnell Higgins (Commissioner of the Connecticut Department of Emergency Services and
Public Protection)
CO Attorney General of Connecticut
165 Capitol Avenue,
Hartford, CT 06106
Defendant #16

Komla Matrevi (Human Rights Referee)
CO Attorney General of Connecticut
165 Capitol Avenue,
Hartford, CT 06106
Defendant #17

Susan Cobb (Connecticut Superior Court Judge)
CO Attorney General of Connecticut
165 Capitol Avenue,
Hartford, CT 06106
Defendant #18

James Graham (Connecticut Superior Court Judge)
CO Attorney General of Connecticut
165 Capitol Avenue,
Hartford, CT 06106
Defendant #19

Paul Doyle (Connecticut "Criminal" Court Judge)
CO Attorney General of Connecticut
165 Capitol Avenue,
Hartford, CT 06106
Defendant #20

Nuala Drony (Connecticut "Criminal" Court Judge)
CO Attorney General of Connecticut
165 Capitol Avenue,
Hartford, CT 06106
Defendant #21

Carl Schuman (Connecticut "Criminal" Court Judge)
CO Attorney General of Connecticut
165 Capitol Avenue,
Hartford, CT 06106
Defendant #22

John Doe (Correctional Officer at Hartford County Correctional)
CO Attorney General of Connecticut
165 Capitol Avenue,
Hartford, CT 06106
Defendant #23

John Doe #2 (Correctional Officer at Hartford County Correctional)
CO Attorney General of Connecticut
165 Capitol Avenue,
Hartford, CT 06106
Defendant #24

John Doe #3 (Correctional Officer at Hartford County Correctional)
CO Attorney General of Connecticut
165 Capitol Avenue,
Hartford, CT 06106
Defendant #25

Jane Doe  (Nurse at Hartford County Correctional)
CO Attorney General of Connecticut
165 Capitol Avenue,
Hartford, CT 06106
Defendant #26

Patti MacKenzie (Nurse at Hartford County Correctional)
CO Attorney General of Connecticut
165 Capitol Avenue,
Hartford, CT 06106
Defendant #27

Dr. Guzman (Psychiatrist Hartford County Correctional)
CO Attorney General of Connecticut
165 Capitol Avenue,
Hartford, CT 06106
Defendant #28

Jeanette Maldonado (Warden Garner Correctional Institution)
CO Attorney General of Connecticut
165 Capitol Avenue,
Hartford, CT 06106
Defendant #29

Tricia McNish (Deputy Warden Garner Correctional Institution)
CO Attorney General of Connecticut
165 Capitol Avenue,
Hartford, CT 06106
Defendant #30

Attorney Grievance Committee
State of New York
Supreme Court Appellate Division
First Judicial Department
180 Maiden Lane - 17th Floor
Defendant #31

**Subject Matter Jurisdiction**:
Article 4 Section 4 of the US Constitution.The Alien Tort Statute (ATS) 28 U.S.C. § 1350. Article 13 & 14 UN Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment. Bivens v. Six Unknown Named Agents, Fed, 409 F.2d 718 (2d Cir. 1969). 42 U.S.C. § 1983, 1985 (2+3), 1986.

"Article 13
Each State Party shall ensure that any individual who alleges [they] has been subjected to torture in any territory under its jurisdiction has the right to complain to, and to have [their] case promptly and impartially examined by, its competent authorities. Steps shall be taken to ensure that the complainant and witnesses are protected against all ill-treatment or intimidation as a consequence of [their] complaint or any evidence given."

Article 14

1. Each State Party shall ensure in its legal system that the victim of an act of torture obtains redress and has an enforceable right to fair and adequate compensation, including the means for as full rehabilitation as possible. In the event of the death of the victim as a result of an act of torture, [their] dependants shall be entitled to compensation."

-Article 13 & 14 UN Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment.

WHEREFORE, Plaintiff, BOREALIS S HEDLING demands judgment against Defendants, JIA MICHELLE COBB, MICHAEL PETER SHEA, SARALA VIDYA NAGALA, DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATIONS, CONNECTICUT DEPARTMENT OF EMERGENCY SERVICES AND PUBLIC PROTECTION, CONNECTICUT DEPARTMENT OF CORRECTIONS, CONNECTICUT DEPARTMENT OF SOCIAL SERVICES, CONNECTICUT OFFICE OF PUBLIC HEARINGS, TODD BLANCHE, JEFF SEXTON, EDWARD MINER LAMONT JR, WILLIAM TONG, COLEEN VALENTINE, ANDREA BARTON-REEVES, ASTREAD FERRON-POOLE, RONNELL HIGGINS, KOMLA MATREVI, SUSAN COBB, JAMES GRAHAM, PAUL DOYLE, NUALA DRONY, CARL SCHUMAN, JOHN DOE, JOHN DOE #2, JOHN DOE #3, JANE DOE, PATTI MACKENZIE, DR. GUZMAN, JEANETTE MALDONADO, TRICIA MCNISH, and the ATTORNEY GRIEVANCE COMMITTEE for damages in the form of immediate compliance with all requests made under the General Data Protection Regulation and removal from office or termination of employment for those named in individual capacities. In addition to Declaratory Relief US Officials are not Immune to International Criminal Law for participating in acts of torture. As well as interest, costs, punitive damages, attorney's fees, and such other relief as this Court may deem just and proper. The People via a Jury are the only competent authority to judge this case.

1. Per EX 1 a Motion to Reconsider, Clarify, Recuse, and Consolidate Garman et al v Patel et al US District Court District of Columbia Case No 1:26-cv-01086-JMC with this action. The lead Defendant is participating in an explicit violation of Article 13 and 14 of the UN Convention against Torture. Refusing to appropriately consider cited cases while 103 pages of the original March 31, 2026 Emergency Motion to Intervene, Appoint Counsel, for a Speedy Hearing under Federal Rule of Civil Procedure 57, and for Partial Summary Judgment at ECF 5 are omitted. To continue the 42 U.S.C. § 1983, 1985 (2+3), 1986 conspiracy to illegally operate and cover up The Domestic Violence Cash Benefit Program. Exploiting attitudinal biases around mental health and the word "conspiracy".



12:54  Sat, Apr 4

gov.uscourts.dcd.290982.10.0.pdf
storage.courtlistener.com

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMIE GARMAN, *et al.*,<br><br>   Plaintiffs,<br><br> v.<br><br>KASHYAP P. PATEL, in his official capacity as Director of the Federal Bureau of Investigation, *et al.*,<br><br>   Defendants. | Case No. 26-cv-1086 (JMC) |

### ORDER

Borealis Hedling, proceeding *pro se*, has moved to intervene in this litigation. ECF 5. Hedling has not identified any "federal statute" that provides them with a right to intervene. Fed. R. Civ. P. 24(a), (b). Hedling therefore must demonstrate that they either have an "interest relating to the . . . transaction that is the subject of the action" or "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(a)(2), (b)(1)(B). Hedling has not made either of those showings.

Although their motion is difficult to decipher, Hedling seems to be complaining about an alleged "conspiracy" to conceal something Hedling calls "The Domestic Violence Cash Benefit Program." ECF 5 at 2. Hedling also alludes to their "illegal incarceration." *Id.* This case, by contrast, is brought by former FBI employees who allege they were wrongfully terminated because they were perceived to be "political opponents" of the new Presidential administration. ECF 1 ¶ 1. The interest Hedling asserts therefore does not "relat[e] to" the events that are "the subject of the action." Fed. R. Civ. P. 24(a)(2). Nor has Hedling identified a "common question of law or fact" shared between their allegations and those at issue in this case. Fed. R. Civ. P. 24(b)(1)(B).

1





Finally, even if there were some marginal legal or factual overlap between Hedling's claims and those at issue in this case, the Court would exercise its discretion to deny permissive intervention. *See* Fed. R. Civ. P. 24(b)(1) ("[T]he court *may* permit anyone to intervene who" satisfies the subsection's requirements. (emphasis added)). "As its name would suggest, permissive intervention is an inherently discretionary enterprise." *Equal Emp. Opportunity Comm'n v. Nat'l Child.'s Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). Because Hedling's claims bare no meaningful relationship to the Plaintiffs' claims, the Court is convinced that allowing Hedling to intervene would "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Hedling therefore fails to satisfy Rule 24's requirements. Hedling's motion to intervene, ECF 5, is **DENIED**.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: April 3, 2026

2



2.  Per EX 2 respectively EX 1 in the March 31, 2026 Emergency Motion to Intervene the Department of Justice has had since April 8, 2024 to address the 42 U.S.C. § 1983,1985 (2+3),1986 conspiracy to illegally operate and cover up The Domestic Violence Cash

Benefit. Per EX 3 respectively EX 2 in the April 4, 2026 Motion to Reconsider, Clarify, Recuse, and Consolidate a February 23, 2024 EX Parte Immediate EX Parte Temporary Injunction without hearing or notice illegally. Jeremy M Lawson v. The Connecticut Department of Social Services illegally denied by Defendant #17 Hartford Superior Court Judge Susan Cobb. It is easily established the Plaintiff was an employee of the Connecticut Department of Social Services (DSS). On February 27th 2023 the Plaintiff informed Defendant # 15 Astread Ferron-Poole chief of staff for the Connecticut Department of Social Services (DSS) they were not using all allowable proof of allegations for the Domestic Violence Cash Benefit Program (DVCBP) P.A. 21-78 Section 14 (e). Per the below snippet from an email from 12/15/2022 obtained via the Connecticut Freedom of Information Act. The language of Subsection B Conn Gen § 17b-112a is "plain" and "unambiguous"not subject to statutory construction by DSS under Conn Gen § 1-2z. The issue could have been fixed with a single email.

> **17b-112a states:**
>
> For purposes of this section, allegations of domestic violence by a victim may be sufficient to establish domestic violence where the Department of Social Services has no independent, reasonable basis to find the applicant or recipient not credible. Upon alleging domestic violence an applicant or recipient may be required to provide a sworn statement or to submit to the department any evidence of such violence available to the applicant or recipient. Evidence of domestic violence may include, but is not limited to: (1) Police, government agency or court records; (2) documentation from a shelter worker, legal, medical, clerical or other professional from whom the applicant or recipient has sought assistance in dealing with domestic violence; or (3) a statement from an individual with knowledge of the circumstances which provide the basis for the claim of domestic violence. We may want to think about if/how we incorporate #3 (statement of individual with knowledge). If we do not incorporate, we need to be prepared to answer why.
>
> As for not needing a police report or restraining order, I understand the commissioner's concern about the risk of pursuing those documents, but these benefits are a LOT of money, we have to have some way of substantiating the client's claims. If they already have those documents then great, but if they don't I feel like the application would have to come from a DV shelter. Yes, the plan is to set up an application process with DV shelters. We discussed this in our previous meeting and it sounded like the shelters were on board with doing the applications for clients they are already working with. But if the purpose of the benefit is to help the person escape their DV situation, they also need to take some steps on their end to make that happen and provide us with some sort of proof that they are taking some form of action (which would be a police report OR restraining order OR seeking help from a shelter). It would be great if we could collect information on other DV supports being received by the client, even if just for reporting purposes.

3. Eventually the Plaintiff made a whistleblower complaint (WB 23-30) to the Auditor of Public Accounts in May 2023 as well. The Plaintiff resigned their employment noting DSS was violating Public Act 21-78 and Public Act 22-82 after intense gaslighting and an obviously constructive dismissal. The Attorney General Office via Defendant #13 Colleen Valentine is still as late as December 15, 2025 is lying about the existence of a Whistleblower complaint the CT Auditors of Public Accounts confirmed exists December 22, 2025 in addition to a final report the Attorney General was sent in July 2025. Regardless Defendant #17 Komla Matrevi Human Rights Referee for the Connecticut Office of Public Hearings upheld her illegal dismissal of the Plaintiff's May 2025 Whistleblower Retaliation Complaint.

**WB 23-30 Confidential**

**From:** Pardo, Maura Maura.Pardo@cga.ct.gov
**To:** Jeremy Lawson j_emt@hotmail.com
**Sent:** Tuesday, May 9, 2023, 11:54 a.m.

Hi Jeremy,
I'm sorry for what you are going through. I have summarized your allegations as follows:

Allegation 1. DSS is ignoring evidence towards substantiation of domestic violence and not applying the law as written.
Allegation 2: DSS requested a narrower set of verifications than required by state law and did not provide a proper reason for denial.

Please contact me with any questions. I can give you a call to discuss our Office's responsibilities under the Whistleblower Act further.

*Maura Pardo, CPA, CFE, CGFM*
*Administrative Auditor*
*Auditors of Public Accounts*
*State of Connecticut*
*Maura.Pardo@cga.ct.gov*



Forwarded message

From: **Maura Pardo**
<Maura.Pardo@ctauditors.gov>
Date: Mon, Dec 22, 2025, 1:32 PM
Subject: Response to your email.
To: Borealis <borealis.appeals@gmail.com>

Good Morning,

Through wbcomplaints@ctauditors.gov, you have sent this to the Auditors of Public Accounts. We do not investigate these types of matters.

Your previous complaint (WB 23-30) to our office, received on May 1, 2023, was closed on July 2, 2025, after we sent our report to the Attorney General's Office in accordance with Section 4-61dd (The Whistleblower Act).

We will file your email with your prior complaint. Thank you.



3:12  Sat, Apr 4    ⊙⊻ ⊼ ⬡ 19%

←  EX 21 7-18-23 Resignation Letter.PDF

Jeremy Lawson
4045 Zinfandel Way
Indianapolis, IN 46254
860-817-5752

To whom it may concern,

I intend to resign my employment with the State of Connecticut permanently effective 8/3/23 after relocation to Indianapolis. It has been clear to me since I made the mistake of seeking assistance from DSS as a client or employee for issues relating to domestic violence. The ability to adhere to Public Act 21-78 and Public Act 22-82 beyond just informing me of my leave approval in terms of the latter quoted act. Is the extent of what I can expect for assistance. Versus from the second I disclosed this information to agency staff I would at the least referred to EAP.

My management has not responded at all. I am tired of being ghosted, dismissed, or putting my mental health in jeopardy when the agency fails to follow the law. Especially as it pertains to helping victims of domestic violence. I was medically able to continue employment out of state. Now I am recognizing if I can't get my management to respond to serious issues like this. There is no feasible way to telework. It also becomes dangerous to continue to have these interactions of waiting for a comprehensive discussion. On how to help in a substantive way or provide me information or resources. To have to result always having to send more emails, finding answers myself, or having to involve outside agencies.

At the time I needed support the most the agency chose a policy manual over the law when I was a client. As an employee I am not being answered or heard. For my own mental health I will take the silence or lack of information provided as an answer to the question of resignation versus continued employment as an option. My hope was the latter would have been possible. With months of trying to make it one. My reasons for resignation are relocation due to domestic violence and the lack of agency response. That is now making me have very concerning mental health symptoms the more I try to hang on to this job regardless of loss of insurance or income. Thanks,
Jeremy Lawson







**STATE OF CONNECTICUT**
**COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES**
**OFFICE OF PUBLIC HEARINGS**
**450 COLUMBUS BLVD., SUITE 2, HARTFORD, CT  06103**

| | | |
|---|---|---|
| JEREMY LAWSON | : | OPH/WBR 2025-544 |
| *Complainant* | : | |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT, DEPARTMENT | : | |
| OF SOCIAL SERVICES | : | |
| *Respondent* | : | DECEMBER 15, 2025 |

<u>**RESPONDENT'S OBJECTION TO COMPLAINANT'S MOTION TO RECUSE,**</u>
<u>**RECONSIDER, AND CLARIFY**</u>

The Respondent, State of Connecticut, Department of Social Services, hereby objects to the Complainant's Motion to Recuse, Reconsider, and Clarify dated December 10, 2025.

**I.    BACKGROUND**

Complainant filed their Whistleblower Retaliation Complaint against the Respondent on May 22, 2025 alleging violations of Conn. Gen. Stat. § 4-61dd.  On June 2, 2025, the Respondent filed a Motion to Dismiss and/or Strike the Complainant's Complaint on the basis that the complaint allegations do not fall within the state's limited waiver of sovereign immunity and that the Complaint failed to state a claim for which relief could be granted.  On July 10, 2025, the Office of Public Hearings issued a ruling dismissing the Whistleblower Retaliation Complaint with prejudice.

The July 10, 2025 ruling provided the following:

1.  "The Tribunal agrees with the Respondent that the Complaint fails to plead that they were an employee of the Respondent, the Department of Social Services or the State of Connecticut during the actionable time period in this Complaint. Complainant also fails to allege that the Respondent took or threatened to take an adverse personnel action against them at any time. See *F.D.I.C. v. Peabody, N.E., Inc.*, 239 Conn. 93, 100–101 (1996) (dismissing claim on the basis of sovereign immunity where the plaintiff failed to plead essential jurisdictional

1



elements demonstrating that the claim fell within the limited waiver of immunity).

Conn. General Statutes Section 4-61dd (e)(1) provides, in relevant part: (1) No state officer or employee, as defined in section 4-141, no quasi-public agency officer or employee, no officer or employee of a large state contractor and no appointing authority shall take or threaten to take any personnel action against any state or quasi-public agency employee or any employee of a large state contractor in retaliation for (A) such employee's or contractor's disclosure of information to (i) an employee of the Auditors of Public Accounts or the Attorney General under the provisions of subsection (a) of this section; (ii) an employee of the state agency or quasi-public agency where such state officer or employee is employed; (iii) an employee of a state agency pursuant to a mandated reporter statute or pursuant to subsection (b) of section 17a-28; (iv) an employee of the Probate Court where such employee is employed; or (v) in the case of a large state contractor, an employee of the contracting state agency concerning information involving the large state contract; or (B) such employee's testimony or assistance in any proceeding under this section.

Due to Complainant's failure to plead that they are a state employee at the time the events alleged in the occurred, the Tribunal does not have subject matter jurisdiction over the Complaint."

2. "Here, the facts alleged by Complainant are not enough to constitute a protected activity under the Connecticut whistleblower statute and the jurisprudence of state courts. Complainant did not engage in whistleblowing by notifying respondents of his personal disagreement with existing state policies. Complainant filed a petition for injunctive relief at the Hartford superior asking that the Respondents be forced to take the words of domestic violence victims as true without conducting any further investigation or inquiry. That is not whistleblowing, it is activism. Complainant did not report any mismanagement, unethical conduct, or violation of law. The whistleblower statute was enacted to protect employees who report mismanagement, unethical conduct, violation of laws and state regulations.

In the Complaint, Complainant fails to identify which state laws and regulations were violated by the Respondents. Also, the Complaint does not show any allegation of mismanagement, or unethical conduct. For instance, Complainant's letter to the Attorney General for the alleged purpose blowing a whistle on the way domestic violence cases are handled by the department of social services is not what it claims to be. In fact, Complainant was requesting that the Attorney General takes on his own already withdrawn petition for temporary injunction. This is not whistleblowing.

2





Furthermore, the Complainant writing to the Governor's Office to ask them to take a political position on a specific issue does not constitute whistleblowing as he fails to prove the existence of mismanagement, unethical conduct, or violation of law.

Finally, the fact that Complainant previously filed for temporary protective order (which was denied) against the department of social services does not constitute an act of whistleblowing by itself, under the circumstances."

3. "Here, it is important to note that Complainant does not allege that he is a state employee. Even if Complainant were to be a state employee. In the Complaint, Complainant did not mention any sufficient adverse employment action taken by his employer against him personally. Instead, Complainant seems to indicate that Connecticut Coalition Domestic Violence, which is a non-profit entity had been financially coerced and intimidated by the Respondent.

Since Complainant failed to allege any act of adverse employment action directly taken or threatened against him individually, the Complaint must be dismissed for failure to state a claim upon which a relief can be granted."

(July 10, 2025 Memorandum of Decision, pp. 5-8). This case was dismissed in full on July 10, 2025.

On December 10, 2025, five months after the final decision in this matter, the Complainant filed a document titled "Emergency Motion to Recuse, Reconsider, and Clarify." In the Complainant's December 10, 2025 Motion, they do not address any of the legal bases raised and briefed by the Respondent in its Motion to Dismiss and/or Strike or the legal bases for the Tribunal's ruling granting that motion. Instead, the Complainant recycles their same allegations that the Tribunal previously determined failed to establish subject matter jurisdiction in this matter. The Complainant supplies no legal authority or analysis, whatsoever, supporting their requests for recusal, reconsideration, or clarification. The Respondent respectfully objects and requests that this Tribunal deny the Complainant's motion.





## II.    ARGUMENT

### A. Legal Standard

Pursuant to Conn. Gen. Stat. § 4-181a(a) (1): "Unless otherwise provided by law, a party in a contested case may, ***within fifteen days after the personal delivery or mailing of the final decision***, file with the agency a petition for reconsideration of the decision on the ground that: (A) An error of fact or law should be corrected; (B) new evidence has been discovered which materially affects the merits of the case and which for good reasons was not presented in the agency proceeding; or (C) other good cause for reconsideration has been shown." (Emphasis added).

"[T]he purpose of a reargument is ... to demonstrate to the court that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked, or that there has been a misapprehension of facts.  It also may be used 'to address alleged inconsistencies in the trial court's memorandum of decision as well as claims of law that the [movant] claimed were not addressed by the court. [A] motion to reargue [however] is ***not*** to be used as an opportunity to have a second bite of the apple or to present additional cases or briefs which could have been presented at the time of the original argument." *Opoku v. Grant*, 63 Conn. App. 686, 692-93 (2001) (emphasis added, internal citation and quotation omitted).

### B. The Complainant Has Provided No Reason for the Referee to Reconsider the Motion to Dismiss and/or Strike Nor Is There A Basis For Recusal or Clarification

The final decision in this case was issued on July 10, 2025.  Fifteen days after July 10, 2025 was July 25, 2025.  This Motion to Reconsider is more than four months late and must be denied for that reason.

In addition, in their Motion to Recuse, Reconsider, or Clarify, the Complainant submits no legal argument and no legal authority supporting their Motion.  Complainant has failed to provide

4





any law in support of their argument for recusal, reconsideration, or clarification. Complainant has not even identified which ruling they are requesting be reconsidered.

Complainant makes no legal argument at all. The Complainant supplies no decision or principle of law that the Tribunal overlooked. The Complainant does not allege that there has been a misapprehension of facts. The Complainant does not identify any inconsistencies in the Tribunal's decision. The Complainant references the July 10, 2025 decision only once, and then only in passing on page 2. The Complainant's motion recycles the same claims that have already been rejected as insufficient as a matter of law. This is not a proper use of a motion for reconsideration and there is no legal or factual basis to grant the Complainant's Motion for Reconsideration even if it was timely, which it is not.

Nor is there any basis to grant a motion to recuse, given that this case is closed and there are no factual allegations that would even conceivably support a motion to recuse. Nor is there a basis to grant the Complainant's motion to clarify, as this appears to amount to a request for legal advice.

## III.  CONCLUSION

For the foregoing reasons, the Respondent, Department of Social Services respectfully requests that the Human Rights Referee deny the Motion to Recuse, Reconsider, or Clarify.

5





RESPONDENT
DEPARTMENT OF SOCIAL SERVICES,

WILLIAM TONG
ATTORNEY GENERAL

BY:    /s/ Colleen Valentine
       Colleen Valentine (Juris No. 426920)
       Assistant Attorney General
       165 Capitol Avenue, Suite 5000
       Hartford, CT  06106
       Tel: (860) 808-5340
       Fax: (860) 808-5383
       Email: Colleen.Valentine@ct.gov

6



4.  Defendant #14 Commissioner of DSS Andrea-Barton-Reeves eventually after gaslighting the Plaintiff via a letter October 2024 in response to a Conn Gen. § 4-176 Petition

seeking a Declaratory Ruling to lawfully operate the Domestic Violence Cash Benefit Program. Illegally denied the Petition in December 2024. Lying about the Connecticut Coalition Against Domestic Violence supporting the way DSS operated the program.



## STATE OF CONNECTICUT
### DEPARTMENT OF SOCIAL SERVICES

Andrea Barton Reeves, J.D.
Commissioner

Ned Lamont
Governor

Susan Bysiewicz
Lt. Governor

### OFFICE OF THE COMMISSIONER

Dear Mx. Lawson,

I am reaching out in response to your email dated September 25, 2023. I appreciate you sharing your experience and feedback regarding the Domestic Violence Cash Program, your concerns around the application process, and the Department's recognition of domestic violence survivors as a protected class. I also acknowledge receipt of your Petition for Declaratory Ruling on September 18th and the Petition for Declaratory Ruling Amendment on September 26, 2023. I would also like to express my sincere sympathy for the difficult personal circumstances you are experiencing as shared. While I am unfamiliar with the details, I do hope for a successful resolution to the challenges you face.

The concerns you raised about the Domestic Violence Cash Program ("DV Cash Program") guidelines and procedures include your view that: the process unnecessarily limits the ways in which domestic violence is verified for receipt of the DV Cash Program benefit; verifications submitted with an application are not being retained by the Department; and detailed information about the DV Cash Program is not on the DSS website. The DV Cash Program application and eligibility determination procedure includes an evaluation that the applicant is currently experiencing and/or threatened by domestic violence. Aside from police reports or restraining orders, the process to determine eligibility for the DV Cash Program is one that incorporates referral to professionals at the Connecticut Coalition Against Domestic Violence ("CCADV"), who are experts in identifying domestic violence and connects those experiencing domestic violence with additional resources beyond what the DV Cash Program provides. DSS does not limit CCADV as to how domestic violence is verified. In partnering with CCADV , it is the Department's intent to provide fairness and consistency in the determinations made, minimize the need to provide verifications, and make the eligibility process as simple as possible while ensuring program requirements are met.

While the DSS website currently includes a general description of some of the domestic violence services provided, along with the CCADV's phone number, updates to the website to include a detailed description of the DV Cash Program are underway.

Verifications submitted with a DV Cash Program application were not retained to promote confidentiality and reduce exposure of sensitive information that may pose risks to applicants if disclosed but, along with improvements to the DSS website, this also will be further reviewed.

I requested a review of your application and hearing based on your report that CCADV's opinion and other items were ignored during the eligibility and hearings process. It is my understanding that you submitted a DV Cash Program application on or about July 24, 2023, and with it included verification from CCADV that your situation meets the domestic violence criteria needed to grant assistance. I also understand that your DV Cash Benefit was granted on or about July 27, 2023 and ultimately received by you.

Phone: (860) 424-5008 • Fax: (860) 424-5057
TTY: 1-800-842-4524
E-mail: Commis.DSS@ct.gov
Hartford, Connecticut 06105-3730
www.ct.gov/dss

*An Equal Opportunity/Affirmative Action Employer*

Page 2
Mx. Lawson

As for your hearing request contesting DSS' eligibility determination regarding a previously-submitted DV Cash Program application, it is my understanding that the Fair Hearings Officer ordered DSS to reopen your application which, ultimately, lead to your receipt of the benefit as noted above.   The DV Cash Program benefit is intended to be a one-time benefit.

Lastly, Public Act 22-82 passed with an effective date of October 1,2022, and DSS fully-supports and recognizes victims of domestic violence as a protected class – including the receipt of statewide training offered by the Commission on Human Rights and Opportunities.

Please note that the Department will separately respond to your Petition for Declaratory Ruling, as amended. I thank you for reaching out and hope the information provided herein helps address some of your concerns.

Best regards,

Andrea Barton Reeves, JD
Commissioner

### RE: Sen Rahman Constituent inquiry

**From:** Liza Andrews landrews@ctcadv.org
**To:** Jeremy Lawson j_emt@hotmail.com
**Cc:** Tonya Johnson tjohnson@ctcadv.org
**Sent:** Thursday, July 6, 2023, 3:33 p.m.

Hi Jeremy,

Thank you for sharing this additional information. All of your frustrations are valid and we appreciate you sharing your story with us. It points to some flaws within the state's response to domestic violence that CCADV can use to strengthen our advocacy across the system, including state law, state agency policies & procedures, and within the domestic violence service system itself. While I'm sure you understand that CCADV does not have the ability to create or approve state agency policies, procedures, or regulations, we always want programs to be as accessible as possible. And while we recognize that fiscal restraints do not always allow for that, we will continue our advocacy to ensure all survivors can access needed benefits and services. Your story and experience will help inform that work, so again, thank you. I do hope you have a positive resolution to your fair hearing.

I did discuss your case with our COO, Tonya Johnson (cc'd here), and we do have some limited funding available that we may be able to provide you to assist with something like relocation if that would be helpful. Please let us know and Tonya will be happy to discuss details.

Thank you,
Liza



**Liza Andrews, MSW**
*Pronouns:* She/Her
Director of Public Policy & Communications
(direct) 959.202.5003 | (cell) 860.919.9707
landrews@ctcadv.org | www.ctcadv.org
655 Winding Brook Drive | Suite 4050
Glastonbury, CT 06033
f ▾ ◎ ▶

5. By April 11, 2024 the Plaintiff had filed an additional even more incriminating Immediate EX Parte Temporary Injunction without hearing or notice April 3, 2024. Hartford Superior Court Docket #HHD-CV24-5082046S Jeremy M Lawson V The Connecticut Department of Social Services, The Office of the Governor of the State of Connecticut, The Office of the Attorney General, The Commission on Human Rights and Opportunities, The Office of Public Hearings, and The University of Connecticut. As noted in EX 2 the email notifying the Department of Justice April 8, 2024 DSS had lied to the General Counsel of the University of Connecticut.  As they produced an illegal training manual with a literal giant check mark reinforcing Victims of Domestic Violence must be illegally denied the benefit. While the University of Connecticut released FOIA data showing DSS trying to manufacture evidence to continue the 42 U.S.C. § 1983, 1985 (2+3), 1986. With evidence attached to the attempt March 6, 2024 showing they were lying.

# SWPD 205 Domestic Vi
## Cash Assistance Benefit Training for

---

## Content

---



**THERE IS NO DV CASH WITHOUT VERIFYING THE STATUS OF A CURRENT DOMESTIC VIOLENCE VICTIM WITHIN 90 DAYS.**

12/7/2023                                    12

This Photo by Unknown Author is licensed under CC BY-NC

---

### Verifying The Status of a Current Domestic Violence Victim

Verification of current domestic violence must be in the form of the following:

A police report within the (90) ninety days

**or**

A restraining or Protective order that was signed and executed within the (90) ninety days immediately preceding the request for assistance,

**or**

Documentation from the Connecticut Coalition Against Domestic Violence (CCADV) confirms the applicant experienced a domestic violence event within the (90)

| | |
|---|---|
| **From:** | Klase, Darleen |
| **To:** | University Compliance; kim.hill@uconn.edu; Fearney, Kimberly; Marchillo, Stephen |
| **Cc:** | Office of the General Counsel |
| **Subject:** | RE - Updated message: UConn School of Social Work OSD providing training in support of DSS not taking victims as required by law in operation of the Domestic Violence Cash Benefit Program complaint |
| **Date:** | Wednesday, March 6, 2024 10:15:22 AM |
| **Attachments:** | Dear Attorney General Tong. (1).pdf |
| | Dear Governor Lamont..pdf |
| | JL ADA Letter Updated 12.13.23 (1).pdf |
| | EX 18 CCA DV response to 7-27-23 P.A. 22-82 training.pdf |
| | image005.png |
| | image007.png |
| | image008.png |

Hi – I recalled the first message to add some text & send my communication my UConn email box – this is the most updated message. I have copied in general counsel. Thank you, Darleen

**From:** Klase, Darleen C.
**Sent:** Wednesday, March 6, 2024 9:54 AM
**To:** University Compliance universitycompliance+uconn.edu@ccsend.com; kim.hill@uconn.edu; kim.fearney@uconn.edu; Marchillo, Stephen stephen.marchillo@uconn.edu
**Subject:** FW: UConn School of Social Work OSD providing training in support of DSS not taking victims as required by law in operation of the Domestic Violence Cash Benefit Program complaint

Hello – I wanted to share some information as to why you received the communication from Borealis Hedling . I manage a training and organizational development unit at DSS. We are UConn employees and the unit is  the result of a contract between DSS and the UConn School of Social Work.  Borealis Hedling, legal name Jeremy Lawson, was an employee at DSS.  Borealis Hedling resigned from DSS some time ago.  Borealis Hedling is alleging that DSS and OSD did not provide the Domestic Violence training to employees as required by Public Act 22-82 and that the Domestic Violence Cash Benefit Program, that DSS administers, is requiring more verification than is necessary so the training is illegal.  I believe Borealis Hedling, is contacting the university because of the contract between DSS and UConn to provide training to DSS employees.

I have responded to Borealis Hedling inquiries about their own training records and a FOIA request to DSS regarding the domestic violence training delivery.  A similar email was sent to me yesterday (attached WB Complaint) and I forwarded it to the DSS legal Director and Chief of Staff.  Below is a summary of the domestic violence training and the training for the domestic violence cash benefit program.

Please let me know if you have any questions, if you would like to meet, and / or if you would like me to put you in touch with the DSS Legal Director who has been managing communications and investigations in this matter.  Thank you, Darleen

Domestic Violence Training for all DSS staff
- The deadline for training delivery for employees was 7/1/23.
- The training was created by CHRO.
- OSD contacted CHRO a few times to access the training for DSS employees. We needed to access the training to launch it from the DSS learning management system so we could track compliance, DSS employees are used to taking all training through the learning management system, and the content was to be developed by CHRO. We were told by CHRO that the training would be available in January of 2023.  We looked for the training on the CHRO web page as directed and did not see it.  If you look on their page now – it still shows the statute but does not link to the training.  https://portal.ct.gov/DAS/Statewide-HR/Employee-Development/Mandatory-Training
- We followed up with DSS in June of 2023 and to see if they wanted us to create a course as we did not yet have the CHRO course. DSS's legal department found the course – we had no received notification from CHRO that it had been launched.
- OSD placed the course in the DSS learning management system and launched the course on 8/1/23 with mandatory compliance to be complete on 8/31/23.  It took about a month to get the SCORM files to launch the course in the DSS learning management system.
- We did miss the deadline.  However, DSS employees were in compliance by 8/31/23.

Domestic Violence Cash Benefit Program for DSS staff
- The domestic violence cash benefit program training is delivered to the DSS staff that administer the program.
- The program requires the person applying to provide a police report, have referral from the CT Coalition on Domestic Violence, or have a protective order in order to establish eligibility.
- The training materials are reviewed by DSS subject matter experts and are in alignment with the program and statutory rules.

Darleen C. Klase
she, her, hers
Darleen C. Klase I  Director  I  Connecticut Department of Social Services
Office of Organizational & Skill Development in partnership with the UConn School of Social Work
55 Farmington Avenue, Hartford, CT  06105 2nd floor
darleen.klase@ct.gov
860-424-5587 phone  I  860-833-5728 cell

*OSD - Building Skills, Developing Success*

*Need help from OSD?*

   

Request OSD Services    Training Materials    Instant Insights    DSSLearnCenter

 

CONFIDENTIAL INFORMATION: The information contained in this e-mail may be confidential and protected from general disclosure. If the recipient or reader of this e-mail is not the intended recipient or a person responsible to receive this e-mail for the intended recipient, please do not disseminate, distribute or copy it. If you received this e-mail in error, please notify the sender by replying to this message and delete this e-mail immediately. We will take immediate and appropriate action to see to it that this mistake is corrected.[*LD*]

6. At that point Defendant #5 the Connecticut Department of Emergency Services and Public Protection (DESPP) decided even having on April 10, 2024 been told explicitly the Connecticut Coalition Against Domestic Violence was being intimidated into silence. Specifically noting in the police report the Plaintiff filed their only copy of into September 11, 2024 Lawson V The US District Court District of Columbia Case No 1:25-cv-02615-TNM. That DSS was illegally denying victims of domestic violence emergency benefits by not following Subsection B Conn Gen § 17b-112a. Unfortunately DESPP refuses to release the April 10, 2024 & April 11, 2024 reports and police body camera footage to the Plaintiff knowing they can't pay $32 in fees. Refused to lawfully respond within 60 days to a "Emergency Conn Gen. § 4-176 Petition Free Access to Police Records for Victims of Torture". The Plaintiff has requested the records via a General Data Protection Regulation Subject Access Request. In addition to filing a "Emergency Conn Gen. § 4-176 Petition seeking a Declaratory Ruling on the Connecticut Freedom of Information Commission's Responsibilities under Article 14 of the UN Convention against Torture and Obligations to Provide Guidance on the GDPR to State Agencies."



**State of Connecticut**
**Department of Emergency**
**Services and Public Protection**

**Remit To:**
Department of Emergency Services and Public Protection
1111 Country Club Rd
Middletown, Connecticut 06457

**Bill To:**
Borealis S. Hedling
Travelodge Plus 44 Townsend St Room 120
Dublin 2 (Ireland)

**I**

## Invoice Summary

| | |
|---|---|
| Invoice No: | INV25-R043348-1 |
| Request Reference Number: | R043348-123025 |
| Invoice Date: | 12/30/2025 |
| Due Date: | 1/29/2026 |
| Status: | Open |
| Balance Due | $16.00 |

| Category | Description | Details | Cost | Unit | Add Overhead | Total Quantity | Quantity Waived | Quantity Charged | Total |
|---|---|---|---|---|---|---|---|---|---|
| R & R Fees | Incident Report | | $16.00 | Per Quantity | ☐ | 1.00 | 0.00 | 1.00 | $16.00 |

**Comments:**

**Totals:**
| | |
|---|---|
| Total: | $16.00 |
| Payments: | $0.00 |
| Balance Due | $16.00 |

**This invoice is in reference to Request No. [REFERENCE_NUMBER] inquiring on DESPP Case Number [CASENUMBER]**
Please include your Request Reference number with your payment. If you are mailing a check or money order please make payable to
"Treasurer State of Connecticut". Thank you!

Emergency Conn Gen. § 4-176  Petition Free Access to Police Records for Victims of Torture

To Commissioner Ronnell Higgins,

Under Article 13 and 14 of the UN Convention against Torture I am requesting you take this Petition as is. Per the Supplemental materials a December 5, 2025 Emergency Complaint to the Swedish Police War Crimes Unit on April 11, 2024 the CT State Police participated in a blatant enforced disappearance of me as a Human Rights Defender. For exposing the 42 U.S.C. § 1983, 1985 (2+3), 1986 conspiracy to illegally operate and cover up The Domestic Violence Cash Benefit Program.

To charge victims of torture for records is a violation of international law. I don't have the ability to notarize the requested waiver. Even if I did per the deeds poll attached I have a very valid fear of lawyers. Please at least release the April 10, 2024 and April 11, 2024 police reports and body camera footage timely without charge. No victim of torture by the Connecticut State Police should ever be charged for a records request or made to fill in a waiver.

Respectfully submitted,
/S/ Borealis S Hedling
Petitioner
They / Them
Travelodge Plus
44 Townsend ST Rm 120
Dublin 2 (Ireland)
January 4, 2026

Emergency Conn Gen. § 4-176 Petition seeking a Declaratory Ruling on the Connecticut Freedom of Information Commission's Responsibilities under Article 14 of the UN Convention against Torture and Obligations to Provide Guidance on the GDPR to State Agencies

This Request for a Declaratory Ruling is being submitted under Article 13 and 14 of the UN Convention against Torture may not conform to FOIC's specific regulations the Petitioner could not locate.

The Petitioner seeks a Declaratory Ruling on the following issues.

1. What are the Responsibilities of the FOIC in addressing failures of DSS to Redact personal information of Borealis S Hedling (formerly Jeremy M Lawson) in the 42 U.S.C. § 1983, 1985 (2+3), 1986 conspiracy to illegally operate and cover up the Domestic Violence Cash Benefit Program?

2. What are the Responsibilities of the FOIC in failing to respond appropriately to an Emergency Complaint March 25, 2024 by the Petitioner regarding intimidation of the DSS FOIA officer citing they could not print more than 25 pages?

3. What are the Responsibilities of the FOIC to seek a Conn Gen § 4-175 Request for a Declaratory Judgment after having been informed DESPP refused to lawfully respond within 60 days to a January 4, 2026 Conn Gen § 4-176 Petition on requirements Police Records for victims of Torture be provided free of charge?

4. What are the Responsibilities of FOIC given the Legal Department for DESPP as a data controller who illegally obtained data during an effective enforced disappearance April 11, 2024. Then was listed on a March 22, 2026 request to the FBI to remove the Petitioner's illegal conviction from NCIC under Article 17 of the GDPR has not acted in good faith. Does the FOIC have a duty to Intervene?

5. Given the GDPR allows under Article 16 the Right to Rectify and Article 17 the Right to be Forgotten with fines up to €20 million or 4% of the firm's total global annual turnover the FOIC have a duty to inform State Agencies of duty to comply?

Signed on the 30th of March 2026 at Travelodge Plus 44 Townsend ST Rm 120 Dublin 2 (Ireland)
Respectfully submitted,
/s/Borealis S Hedling
Petitioner
They / Them
Travelodge Plus
44 Townsend ST Rm 120
Dauntless.peace@proton.me
+1-959-999-8957



7. The Plaintiff is particularly concerned with the April 11, 2024 body camera footage showing the Plaintiff voluntarily surrender themself with 4 stacks of conditionally under

seal evidence at the Troop H barracks in Hartford, CT. After a warrant was issued for their arrest with a $75,000 bond for Conn Gen. § 53-183a Harassment 2 of DSS and particularly apparently Astread Ferron-Poole over a single text message and cherrypicked emails in an attempt to conduct an extrajudicial killing. The Plaintiff weighed 107 lbs and had to use their handicap parking placard. Cited numerous times during their "booking" arresting them was commission of the class D Felony Conn Gen. § 53-20 "Cruelty to persons" "unlawful punishment". Noting the Plaintiff had provided the Chief Information Officer of DESPP emails proving their innocence even before knowing the warrant was issued looking to have Governor Lamont arrested via j_emt@hotmail.com to CSP.PIO@ct.gov. The Plaintiff characterizes this as an "enforced disappearance" because their 1 phone call was to Lisa Andrews at the Connecticut Coalition Against Domestic Violence. The listed intimidated witness in numerous cases.

8. After which they were transferred to Hartford County Correctional held in an incommunicado detention for 18 days in solitary confinement with no toilet paper. The last time they saw the 4 stacks of conditionally under seal evidence was 9:20pm on April 11, 2024. On April 12, 2024 without receiving any medication the Plaintiff was subjected to an illegal rushed arraignment in which they were characterized as "violent" by Defendant #20 Connecticut Criminal Court Judge Paul Doyle. Who would later give the Plaintiff effectively a trial in absentia using a Motion for a Continuance filed by a corrupt Public Defender that allowed the Plaintiff's illegal incarceration to go past the maximum 90 day sentence. The Plaintiff is not ashamed to state they expressed this Orwellian proceeding in art.



9. The Plaintiff was not taken to the Hospital as requested; they as noted were sent back to Hartford County Correctional. Where one officer did take pity on them Correctional Officer Lepinski (the name may be approximate) who opened the conditionally under seal exhibits at the Plaintiff's request and eventually got them a phone pin 18 days into their incommunicado detention. Unfortunately per Officer Lepinski the exhibits were "passed off" even though the Plaintiff authorized a search not a seizure. Speaking of seizures the Department of Corrections during this 18 days. Allowed Defendant #23-26 to participate in an attempted extrajudicial killing via forcible Ativan Withdrawal. Partially for demanding dignity as a non-binary individual and for seeking to file a PREA (Prison Rape Elimination Act) report potentially on a previous strip search that bordered on Sexual Humiliation. Secluded the Plaintiff in a separate cell next to a loud buzzing door until the Plaintiff confronted them with property records showing the missing 4 stacks of conditionally under seal evidence just labeled as "Misc paperwork". At which point they dragged the Plaintiff who expressed clear suicidal ideations down a hallway to another

cell. Stripped them naked taking the property records and putting the Plaintiff in a "turtle suit". Basically a velcro smok that leaves the wearer almost naked.

10. The next day when challenged about the extrajudicial killing while still in the "turtle suit" chained to a table in the day room as the Plaintiff had in several previous interactions with Defendant #27 Nurse Patti MacKenzie cited obvious 8th Amendment violations. Was gaslighted by Defendant #27 who stated the Plaintiff requested to be separated as a "spiritual accommodation". Offered a veiled threat not to make up more delusional allegations with one of the Correctional Officers who participated in the attempted extrajudicial killing present then presented the Plaintiff with clothing. Prescribing an anti-psychotic to discredit the allegations of torture. The Plaintiff routinely refused the anti-psychotic due to known severe akathisia caused by these drugs. Until threatened by Defendant #28 Dr. Guzman a Psychiatrist that stated with an officer who participated in the attempted extrajudicial killing present. If the Plaintiff kept mentioning their Injunction or failed to take anti-psychotic medication they would be "beaten". The Plaintiff complied with the request after a clear threat of corporal punishment. The fact even after requesting CCTV footage be reviewed and speaking briefly to a "Captain Jo" who immediately ran away when the Injunction was mentioned.

11. When later questioned by a social worker and different Corrections Officer at Hartford County Correctional the Plaintiff remained silent fearing this was a test versus a good faith effort to allow the Plaintiff to file a PREA report on the attempted extrajudicial killing and stripping. Which definitely constituted sexual humiliation and harassment based on gender identity. The Plaintiff when eventually moved to Garner Correctional Institution in Newtown, CT after Defendant #19 Judge James Graham was able to illegally deny the April 3, 2024 Immediate EX Parte Temporary Injunction without hearing or notice May 2, 2024. The Plaintiff attempted to submit what they dubbed a Public PREA report to Defendant #30 Deputy Warden McNish. Sending a copy to the Office of the Inspector General at the Department of Justice after the Plaintiff learned. The FBI had April 12, 2024 not knowing about the Plaintiff's enforced disappearance dispatched Defendant #10 to drop off a business card at the Plaintiff's house at 1 Lydall ST Manchester, CT 06042 (which is still in foreclosure see US District Court District of Columbia Case No 1:26-cv-0261-UNA Hedling V Primary Residential Mortgage Inc et al).

12. Neither Deputy Warden McNish or Defendant # 29 Warden Maldonado found any problem with holding the Plaintiff as a prisoner of conscience. As they dictated incredibly incriminating emails via a recorded line. Sending out an obscene amount of legal mail. Filing an EX Parte TRO absent a law library or Counsel against Defendant #11 Governor Ned Lamont May 22, 2024. In US District Court District of Connecticut Case No 3:24-00917-OAW.



5:54  Sat, Apr 4  📱📄🚩 •                                    👓🔇📶 45%🔋

✕  ⌄   **Lawson v. Lamont et al (3:24-cv-00917), Connecticut District Court**   ⌣  🔖  ⋮
          pacermonitor.com



PacerMonitor   A Fitch Solutions Service     Features   Plans & Pricing   About   ☑ Start Free Trial   Sign In →

## Lawson v. Lamont et al

| | | | |
|---|---|---|---|
| **Connecticut District Court** | | **Case Filed:** | May 22, 2024 |
| **Judge:** | Omar A Williams | **Terminated:** | May 29, 2024 |
| **Referred:** | Robert A Richardson | | |
| **Case #:** | 3:24-cv-00917 | | |
| **Nature of Suit** | 550 Prisoner Petitions - Habeas Corpus - Civil Rights | | |
| **Cause** | 42:1983 Prisoner Civil Rights | | |

| Docket | Parties |
|---|---|

**Docket last updated: 52 minutes ago**

### Wednesday, July 23, 2025

**13**   `order` `Order` `Wed 07/23 4:16 PM`

ORDER. The court is in receipt of Plaintiff's notice asking the court to rule on the requests for relief contained in the complaint. ECF No.12 . But this case already has been dismissed. See ECF No. 11. It appearing that Plaintiff has not received that order, though, the court asks the Clerk of Court, respectfully, to please mail the dismissal order at docket entry 11 to the plaintiff at their address of record. It is so ordered. Signed by Judge Omar A. Williams on 7/23/25. (Wagner, R)

### Tuesday, July 23, 2024

**12**   📄 `notice` `Notice (Other)` `Tue 07/23 2:32 PM`

NOTICE by Jeremy M. Lawson (Peterson, M)

### Wednesday, May 29, 2024

**11**   `order` `Order on Motion for Leave to Proceed In Forma Pauperis Order on Motion for TRO` `Wed 05/29 5:07 PM`

ORDER dismissing case. Under 28 U.S.C. § 1915(e), courts are required to dismiss any action that is frivolous or that fails to state a claim upon which relief can be granted. After careful review of the complaint, the court cannot find a clear federal claim amongst the few factual allegations therein. Plaintiff's motion for a temporary restraining order contains more detail, but the court is unable to discern what specific actions Plaintiff alleges the defendants to have committed, or what specific injuries Plaintiff is alleged to have sustained. Plaintiff is a self-described whistleblower, but it is not clear what wrongdoing has been exposed. The court gleans that Plaintiff objected to the manner in which state agencies provide emergency benefits to victims of domestic violence, but there is no allegation that these agencies are acting unlawfully. Plaintiff declares to have no access to the courts, but also admits that they had a court appearance on a pending criminal charge scheduled for last week. Plaintiff also accuses various state actors of violating the Americans with Disabilities Act because that court hearing was not scheduled to be held remotely, but there is no alleged disability or apparent reason why Plaintiff must appear remotely. And finally there are some allegations dealing with certain exhibits filed under seal (presumably in the state case), but Plaintiff does not assert a clear claim in relation to those exhibits, or indicate why the state court cannot grant whatever relief is required. Moreover, this court cannot dictate the manner in which the state court must preside over a state case, nor can the court transfer Plaintiff to the custody of the United States Marshals Service. Accordingly, the plaintiff has failed to state a cognizable claim upon which relief can be granted, and consequently, it is not clear that federal courts have jurisdiction over this matter. See Shenandoah v. Halbritter, 366 F.3d 89, 91 (2d Cir. 2004) (A party seeking to invoke the subject matter jurisdiction of a [c]ourt has the burden of demonstrating that there is subject matter jurisdiction in the case.) The motion to proceed in forma pauperis, ECF No.2 , and the motion for a temporary restraining order, ECF No.3 , are denied as moot. The Clerk of Court is asked, respectfully, to please close this case. It is so ordered. Signed by Judge Omar A. Williams on 5/29/24. (Wagner, R)

### Tuesday, May 28, 2024

**10**   `order` `Order re: Insufficiency` `Tue 05/28 4:15 PM`

NOTICE OF INSUFFICIENCY. The plaintiff has filed a motion for leave to proceed in forma pauperis ; in other words, he seeks to commence a federal lawsuit without pre-paying the filing fee. A federal law, 28 U.S.C. § 1915, permits



13. At the May 24, 2024 Hearing in the Criminal case in front of Defendant #21 Judge Nuala Drony. The Plaintiff laid out plainly they filed the April 3, 2024 Immediate EX Parte Temporary Injunction without hearing or notice. Noted yet again they made the Whistleblower Complaint to the CT Auditors of Public Accounts in May 2023 noting the case number (CV 23-30). Noting the exact law involved regarding illegally narrowing allowable proof of allegations of domestic violence against the plain text Subsection B Conn Gen § 17b-112a. To be pulled from the Court to prevent further testimony while the Judge stated "it will be noted". To as noted receive an effective trial in absentia via a Motion for a Continuance approved by Defendant #20 Judge Paul Doyle June 7, 2024. Given the maximum sentence for Conn Gen. § 53-183a a Class C Misdemeanor is 90 days. On day 91 July 12, 2024 Defendant # 22 Judge Carl Schuman approved the State's request for a competency hearing so the Plaintiff could "stand trial". All these Judges were ethically cleared by the Connecticut Judicial Review Council of all misconduct May 23, 2025. (See also Hedling v. Statewide Grievance Committee et al. District Court District of Columbia Case No 1:26-cv-00330-UNA)



14. As the Plaintiff continually notes in numerous filings the only semblance of Justice they received was August 23, 2024 when Judge Courtney Chaplin allowed the Plaintiff to make an Alford Plea under duress. While the only plea bargain the State wanted to offer having held the Plaintiff 43 days past the 90 day maximum sentence April 11, 2024-August 23, 2024. Was a 90 day suspended sentence and 1 year of probation. In this hearing Judge Chaplin allowed the Plaintiff to expressly not the attempted extrajudicial killing via forcible Ativan Withdrawal on record. Note the fact dozens of state employees had committed Conn Gen. § 53-20 "Cruelty To persons" "Unlawful Punishment". Voice their intention to either claim Asylum in Canada or go to Washington DC to sue. Obviously as covered in EX 1 and the below the Plaintiff chose the former to their detriment.

**Print email**   ✕



*[handwritten at top]* Exist. I Plead under the Alford Doctrine 8/23/24 since a Judge with integrity realized this State Artorey/

*[handwritten left]* The State of Connecticut V. Jeremy Lawson

*[handwritten]* ExParte EX3

*[handwritten]* File complaint   Docket # H14-CR24-0763184-5

*[handwritten top right]* GA# 14 Hartford Criminal Court M-10

**ASFC CBSA**

*[handwritten]* 36 (1) (b) IRPA "Serious Criminality having been convicted of an offence outside Canada that if committed in Canada would constitute an offense under an Act of Parliament punishable by a maximum term of imprisonment of at least 10 years."

ASFC Montréal – Exécution de la loi
Tuesday September 03rd, 2024

ID:                11-4195-3168
Surname:       LAWSON
First name:    Jeremy Michael
Date of birth:  March 29st, 1991
Country of birth :   United States of America

*[handwritten]* Also a Class C Misdemeanor unlawful charge ConnGen.s 53a-183 Harassment 2 has 90day Max charge or $500 fine. 1. B×ca√sis 9 h19gaP

**Admissibility Hearing : Thursday, September 5th, 2024 at 09:00**

I, Francis Letellier, of the Canada Border Services Agency (CBSA), do solemnly declare that I make this solemn declaration conscientiously believing it to be true and knowing that it is of the same force and effect as if made under oath. *[handwritten]* ←This is Perjury

This file was referred to us for follow-up at the next detention review with a view to holding an admissibility hearing. The subject is under investigation to determine whether he is a person to whom section 36(1)b of the IRPA applies.

On September 3rd, 2024, we requested my colleague Henry Kwan from the Major Crime Investigation Unit to obtain from the authorities in Connecticut, USA, all the information concerning the criminal record, including police reports. The documents should be forwarded to us shortly.

Once we receive Mr. Lawson's court documents, we will be in a position to determine whether there are grounds to compromise the eligibility of his claim and support section 58(1)(c) of the IRPA. For the moment, my colleague cannot state a position.

Mr. Lawson's refugee claim is currently on hold pending a decision by a Board Member of the Immigration Division regarding the issuance of a possible removal order following the evidence to be presented by my colleague..

Considering Mr. Lawson's criminal history in the United States of America, I recommend that the subject's detention be maintained on the grounds that he will not appear for his eventual removal from Canada and sees no reasonable alternative to it, as he represents a certain risk to Canadian society. The evidence on file indicates that he is subject to the 36(1)(b) inadmissibility category of the IRPA.

Francis LETELLIER - 18637
Agent d'exécution de la loi
ASFC Montréal – section renvois

Agence des services frontaliers du Canada   Canada Border Services Agency      **Canada**

Cancel                                    Print

15. Given EX 4 the illegally blocked January 16, 2025 Emergency Petition for a Writ of Mandamus to the 11th Circuit showing Defendant #9 Todd Blanche was aware of the 42 U.S.C. § 1983, 1985 (2+3), 1986 even prior to assuming now the Office of the Attorney General. Per the illegally denied January 24, 2025 complaint to Defendant #31 The Attorney Grievance Committee. The March 17, 2025 FOIA request regarding all the information the US Department Of Justice holds in relation to Todd Blanche and the Domestic Violence Cash Benefit Program. That per The Office of Information Policy will take an estimated 650 days. There are some problems when human rights defenders are tortured and rule of law, democracy, and human rights are disregarded to shield a morally bankrupt Legal system and profession.



2:48  Thu, Oct 10                                               46%

Jeremy Lawson
2 reviews

★★★★★  just now

The American Bar Association supports King 👑 Lamont and Attorney's like William Tong. Who enforced disappeared me for asking them to take victims of domestic violence at their word for emergency benefits. Can you read Subsection Conn Gen S 17b-112a? No "lawyers" can not even US Attorney General Merrick Garland.

♡  Press and hold to react

**17b-112a states:**

For purposes of this section, allegations of domestic violence by a victim may be sufficient to establish domestic violence where the Department of Social Services has no independent, reasonable basis to find the applicant or recipient not credible. Upon alleging domestic violence an applicant or recipient may be required to provide a sworn statement or to submit to the department any evidence of such violence available to the applicant or recipient. Evidence of domestic violence may include, but is not limited to: (1) Police, government agency or court records; (2) documentation from a shelter worker, legal, medical, clerical or other professional from whom the applicant or recipient has sought assistance in dealing with domestic violence; or (3) a statement from an individual with knowledge of the circumstances which provide the basis for the claim of domestic violence. We may want to think about if/how we incorporate #3 (statement of individual with knowledge). If we do not incorporate, we need to be prepared to answer why.

As for not needing a police report or restraining order, I understand the commissioner's concern about the risk of pursuing those documents, but these benefits are a LOT of money, we have to have some way of substantiating the client's claims. If they already have those documents then great, but if they don't I feel like the application would have to come from a DV shelter. Yes, the plan is to set up an application process with DV shelters. We discussed this in our previous meeting and it sounded like the shelters were on board with doing the applications for clients they are already working with. But if the purpose of the benefit is to help the person escape their DV situation, they also need to take some steps on their end to make that happen and provide us with some sort of proof that they are taking some form of action (which would be a police report OR restraining order OR seeking help from a shelter). It would be great if we could collect information on other DV supports being received by the client, even if just for reporting purposes.

1 of 1

6:44  Sat, Apr 4  🖼☁🖼 ·                                          👓 ✕ 📶 54%

← 2025.0275 D1PM.pdf                                    🔍  △  ⋮



**ATTORNEY GRIEVANCE COMMITTEE**
STATE OF NEW YORK
SUPREME COURT APPELLATE DIVISION
FIRST JUDICIAL DEPARTMENT
180 MAIDEN LANE - 17TH FLOOR
NEW YORK, NEW YORK 10038
(212) 401-0800
EMAIL: AD1-AGC@NYCOURTS.GOV

ROBERT J. ANELLO
ABIGAIL T. REARDON
CHAIRS

TINA M. WELLS
MILTON L. WILLIAMS, JR.
VICE CHAIRS

JORGE DOPICO
CHIEF ATTORNEY

DEPUTY CHIEF ATTORNEY
ANGELA CHRISTMAS
KEVIN P. CULLEY
VITALY LIPKANSKY
RAYMOND VALLEJO

STAFF ATTORNEYS
LOUIS J. BARA
SEAN A. BRANDVEEN
ANDREA B. CARTER
KEVIN M. DOYLE
GILLIAN C. GAMBERDELL
KELLY A. LATHAM
JUN H. LEE
NORMA I. LOPEZ
DIANA NEYMAN
GINA M. PATTERSON
ORLANDO REYES
CHRISTOPHER S. RONK
ERIC SUN

January 27, 2025

PERSONAL AND CONFIDENTIAL

Mr. Jeremy M. Lawson

Sent By Email Only:  borealis.hedling@gmail.com

Re:    Matter of Todd W. Blanche, Esq.
       Docket No. 2025.0275

Dear Mr. Lawson:

We have completed our review of your complaint against the above-named attorney.
As explained below, we have concluded that no investigation or action is warranted.

Specifically, you complained about Todd Blanche and possible "systemic transphobic
policies" of the United States government.  While we appreciate that you brought this
matter to the Committee's attention, there is an insufficient basis to find that Mr. Blanche
violated the New York Rules of Professional Conduct.

You may seek review of this decision by submitting a written request for reconsideration
to this office addressed to "Committee Chair" at the above **email** address within thirty
(30) days of the date on this letter. Please write in the subject line of your email:
"Reconsideration Request" and include the docket number. One of the Committee Chairs
will grant or deny your request; or, refer your request to one of the Committees, or a
subcommittee thereof, for whatever action it deems appropriate. We will accept regular
mail if you do not have a personal email account, but there may be a delay in processing
your matter.

Thank you.

                            Yours truly,

                            Jorge Dopico
                            Chief Attorney

LJB:cmn
D-1PM

(Rev. 7.30.2020)

**ATTORNEY GRIEVANCE COMMITTEE**
Supreme Court, Appellate Division
First Judicial Department
180 Maiden Lane, 17th Floor
New York, New York 10038
(212) 401-0800

**JORGE DOPICO**
**Chief Attorney**

Email Complaint and Attachments to: AD1-AGC-newcomplaints@nycourts.gov. In addition, please send **one copy** of your complaint and attachments **by regular mail** to the above address. (If you do not have a personal email account, please send two (2) complete sets of your complaint and all attachments. There may be a delay in processing your matter if it is not emailed. Please **do not** include any original documents because we are unable to return them.)

**Background Information**

Today's Date: 1/24/25

Your Full Name: (Mr. Ms. Mrs.) Legal name: Jeremy M Lawson They / Them

Address: 8640 Ridge RD

City: Ellicott City        State: MD        Zip Code: 21403

Cell Phone: 959-999-8957        Business/Home Phone: _____

Email Address: borealis.hedling@gmail.com

Are you represented by a lawyer regarding this complaint? Yes ☐ No ☑ If Yes:

Lawyer's Name: _____

Address: _____

City: _____ State: _____ Zip Code: _____

Business Phone: _____ Cell Phone: _____

**Attorney Information**

Full Name of Attorney Complained of: (Mr. Ms. Mrs.) Todd W. Blanche

Address: 99 WALL ST STE 4460

City: New York        State: NY        Zip Code: 10005-4301

Business Phone: (212) 716-1250        Cell Phone: _____

Email Address: toddblanche@blanchelaw.com

Date(s) of Representation/Incident: 1/8/25-present

Have you filed a civil or criminal complaint against this attorney? Yes ☐ No ☐ If Yes:

If yes, name of case (if applicable): _____

Name of Court: _____

Index Number of Case (if known): _____

Have you filed a complaint concerning this matter with another Grievance Committee, Bar Association, District Attorney's Office, or any other agency? Yes ☐ No ☑

If yes, name of agency: _____

Action taken by agency, if any: _____

**Details of Complaint**

Please describe the alleged misconduct in as much detail as possible including what happened, where and when, the names of any witnesses, what was said, and in what tone of voice, etc. Use additional sheets if necessary.

On 1/8/25 around 2;57 AM EST Todd Blanche Amicus Curiae counsel for President Trump was provided per an Amicus brief written to the 11th Circuit Court of Appeals a Petition to the Nobile officium to the Inner House of the Court of Sessions in Scotland. This had information showing then US Attorney General Merrick Garland had engaged in ensuring the complainant a human rights defender was refouled and tortured by the Icelandic Government. Foe exposing a 42 U.S.C. § 1983, 1985 (2+3), 1986 to illegally operate and cover up The Domestic Violence Cash Benefit Program.





**ATTORNEY GRIEVANCE COMMITTEE**
STATE OF NEW YORK
SUPREME COURT APPELLATE DIVISION
FIRST JUDICIAL DEPARTMENT
180 MAIDEN LANE - 17TH FLOOR
NEW YORK, NEW YORK 10038
(212) 401-0800
EMAIL: AD1-AGC@NYCOURTS.GOV

ROBERT J. ANELLO
ABIGAIL T. REARDON
CHAIRS

TINA M. WELLS
MILTON L. WILLIAMS, JR.
VICE CHAIRS

JORGE DOPICO
CHIEF ATTORNEY

DEPUTY CHIEF ATTORNEY
ANGELA CHRISTMAS
KEVIN P. CULLEY
VITALY LIPKANSKY
RAYMOND VALLEJO

STAFF ATTORNEYS
LOUIS J. BARA
SEAN A. BRANDVEEN
GILLIAN C. GAMBERDELL
KRISTEN M. LASAK
KELLY A. LATHAM
JUN H. LEE
DIANA NEYMAN
GINA M. PATTERSON
ORLANDO REYES
CHRISTOPHER S. RONK
BRIAN E. SHULMAN
ERIC SUN

July 23, 2025

PERSONAL AND CONFIDENTIAL

Jeremy M. Lawson
1 Lydall Street
Manchester, CT 06042
*Sent By Email Only* borealis.appeals@gmail.com

Re:    Matter of Sean Hecker, Esq.
       Docket No. 2025.3504

Dear Mr. Lawson:

We have completed our review of your complaint against the above named attorney.
As explained below, we have concluded that no investigation or action is warranted.

Specifically, you complain that defense attorney Sean Hecker has engaged in collusion to
maintain the illegal detainment of his client, Kilmar Abrego Garcia. While we appreciate
your bringing this matter to our attention, there is an insufficient basis to conclude that
this attorney violated the New York Rules of Professional Conduct.

You may seek review of this decision by submitting a written request for reconsideration
to this office addressed to "Committee Chair" at the above **email** address within thirty
(30) days of the date on this letter. Please write in the subject line of your email:
"Reconsideration Request" and include the docket number. One of the Committee Chairs
will grant or deny your request; or, refer your request to one of the Committees, or a
subcommittee thereof, for whatever action it deems appropriate. We will accept regular
mail if you do not have a personal email account, but there may be a delay in processing
your matter.

Thank you.

Yours truly,

Jorge Dopico
Chief Attorney

GMP/emm
D-1PM



16. Given Defendant #2 Chief Judge Michael P. Shea allowed the Department of Corrections to illegally withhold a filing fee Warden Maldonado approved July 2, 2025 with impunity for Lawson v. Tong et al US District Court District of Connecticut Case No 3:24-cv-01016-MPS. Given Defendant #3 Judge Sarala V. Nagala refused the following relief in EX 5 a February 3, 2025 EX Parte TRO in Lawson v McFadden et al US District Court District of Columbia Case No 3:25-cv-163-SVN. The Courts of the United States are not independent and under Factor 3 of Section 102 (2) of the Canadian Immigration and Refugee Protection Act the US is not legally a safe third country.

"Wherefore The Plaintiff Prays this Court:
1. Declare The University of Connecticut and Connecticut Coalition Against Domestic Violence can advocate for the civil rights of victims and survivors of domestic violence. Without fear of retaliation from the state of Connecticut. With adequate Federal intervention to do so."
2. Immediately reopens and enjoins The US District Court District of Connecticut Case No: 3:24-cv-01016-MPS Lawson V Tong et al.
3. Immediately compel the US State Department to unfoul the Plaintiff to a country of the Plaintiff's choosing. Explaining the circumstances of their arrival to that country.
4. Provide the Plaintiff Court Appointed Counsel as the legal professions blacklisting and biases. Also Plaintiff's poverty make it impossible to appropriately Litigate.
5. Compel the US Department of Education to release the records noted in FOIA 25-00652-F denied expedited processing under Appeal 25-00002-A.
-"Under the Freedom of Information Act I am requesting 4 letters sent to Dr. Miguel Cardona in July 2024 1 to him and 3 hand copies of "forgiveness letters" to Warden Maldonado at Garner Correctional Institution. Please expedite for an emergency asylum application and to end the brutal systemic practices described within."
6. End the Practice of deadnaming and misgendering of Trans and Non-binary individuals in all Government services.
7. Require all US law enforcement agents besides the US Marshal Service to have no contact with the Plaintiff
8. As the US State Department arranges unfouling the Plaintiff have the US Marshal Services provide protection.
9. Declare the Plaintiff is immune from foreclosure on their property at 1 Lydall ST Manchester, CT 06042.
10. End the Practice of whistleblower retaliation using the US Criminal Justice system.
11. Any relief this Court Deems Just and Proper"

-illegally denied relief in Lawson V McFadden et al

17. The Plaintiff has no adequate remedy at law. Given even the Secretary General of the United Nations doesn't care about human rights defenders being enforced disappeared, refouled, and tortured.



WHEREFORE, Plaintiff, BOREALIS S HEDLING demands judgment against Defendants, JIA MICHELLE COBB, MICHAEL PETER SHEA, SARALA VIDYA NAGALA, DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATIONS, CONNECTICUT DEPARTMENT OF EMERGENCY SERVICES AND PUBLIC PROTECTION, CONNECTICUT DEPARTMENT OF CORRECTIONS, CONNECTICUT DEPARTMENT OF SOCIAL SERVICES, JEFF SEXTON, EDWARD MINER LAMONT JR, WILLIAM TONG, ANDREA BARTON-REEVES, RONNELL HIGGINS, SUSAN COBB, JAMES GRAHAM, PAUL DOYLE, NUALA DRONY, CARL SCHUMAN, JOHN DOE, JOHN DOE #2, JOHN DOE #3, JANE DOE, PATTI MACKENZIE, DR. GUZMAN, JEANETTE MALDONADO, and TRICIA MCNISH for damages in the form of immediate compliance with all requests made under the General Data Protection Regulation and removal from office or termination of employment for those named in individual capacities. In addition to Declaratory Relief US Officials are not Immune to International Criminal Law for participating in acts of torture. As well as interest, costs, punitive damages, attorney's fees, and such other relief as this Court may deem just and proper. The People via a Jury are the only competent authority to judge this case.

I swear under penalty of perjury this complaint is complete and true to the best of my knowledge.

Signed on the 4th of April 2026 at Travelodge Plus 44 Townsend ST Rm 120 Dublin 2 (Ireland)
Respectfully submitted,
/s/Borealis S Hedling
Plaintiff
They / Them
Travelodge Plus
44 Townsend ST Rm 120
Dauntless.peace@proton.me
+1-959-999-8957